**David F. Sugerman, OSB No.: 86298**
Paul & Sugerman, PC
520 S.W. Sixth Ave., Ste. 920
Portland, Oregon 97204-1535
Phone: 503-224-6602
Fax: 503-224-2764
E-Mail: dfs@pspc.com

Attorneys for Plaintiff

ORIGINAL

FILED'09 JUN 8 10:28USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROCKY BIXBY; LAWRENCE ROBERTA; SCOTT ASHBY; CHARLES ELLIS; and MATTHEW HADLEY,

Plaintiffs,

vs.

KBR, INC.; KELLOGG, BROWN & ROOT SERVICE, INC.; KBR TECHINCAL SERVICES, INC.; OVERSEAS ADMINISTRATION SERVICES, LTD; and SERVICE EMPLOYEES INTERNATIONAL, INC.,

Defendants.

CV '09 632 PK
Case No.

**PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs allege:

1.

KBR, Inc., a private company, and its operating subsidiaries entered into various contracts with the United States government to provide services in Iraq. This suit arises from one of the projects KBR was charged with safely completing. KBR, Inc. and its subsidiaries undertook the



27297

restoration of the Qarmat Ali water plant in southern Iraq. The Qarmat Ali plant pumped water into Iraqi oil wells in connection with oil production operations. After major combat operations ceased in southern Iraq, KBR took responsibility for restoration of the Qarmat Ali facility, including site survey before and as work progressed. The promised work by KBR included ensuring that hazards on site were fully identified, disclosed by KBR to all affected parties, and protected against during the project. As part of its compensation for completing restoration of the Qarmat Ali project, KBR received base contract payments, plus retrospective "award" payments after Qarmat Ali was back on line.

2.

The Qarmat Ali plant was contaminated with sodium dichromate, a toxic chemical used at the site as an anti-corrosive. Sodium dichromate is almost pure hexavalent chromium, a highly toxic and long-identified carcinogen.

3.

KBR managers knew about both the site contamination and the extreme danger of hexavalent chromium. Oregon National Guard soldiers providing security for the actual work at Qarmat Ali, along with the British troops and the American civilians actually carrying on the work at Qarmat Ali, were exposed to hexavalent chromium for months, without warning or protection. When the Oregon National Guard soldiers and American civilians actually working at Qarmat Ali began experiencing the most characteristic symptom of acute hexavalent chromium poisoning, nasal excoriation (bleeding from the nose) known to toxicologists as "chrome nose," KBR managers told soldiers on site that it was simply an effect of the "dry desert air" and they must be "allergic to sand." The Oregon National Guard soldiers were repeatedly told that there was no danger on site, even after KBR managers knew that blood testing of American civilians

exposed onsite confirmed elevated chromium levels. What was not revealed until Congressional Hearings in June 2008 was the extent of knowledge of KBR managers about the danger on-site and the ongoing concealment of the exposures to the Oregon National Guard soldiers and others. As outlined further below, KBR is apparently still withholding from the United States Army the full extent of KBR managers' knowledge of the dangers to the soldiers and others onsite, dangers directly impacting the current and future health evaluations of the soldiers exposed at Qarmat Ali.

4.

Plaintiffs have already manifested respiratory system injuries characteristically associated with hexavalent chromium exposure, and many of the Oregon National Guard soldiers continue to experience chemical sensitivities and rashes consistent with the impacts of hexavalent chromium poisoning. As has become clear only recently, the Oregon National Guard soldiers and other exposed persons now require ongoing, expensive follow-up health care for the health impacts of these exposures, as well as compensation for the reasonably anticipated manifestations over time, including the cancers, potential impact on their offspring, and heightened reaction to chromium salts in the environment.

**PARTIES**

5.

The Oregon National Guard soldiers deployed to Iraq, and members of the Guard were assigned to duty at the Qarmat Ali facility. Each plaintiff was on site at the Qarmat Ali facility in 2003 and each was exposed to sodium dichromate. Rocky Bixby lives in Hillsboro, Oregon and served in Bravo Company. His rank upon discharge was Staff Sergeant. Scott Ashby lives in Lake Oswego, Oregon. He served in Charlie Company. At discharge, his rank was Specialist E-

4. Lawrence Roberta lives in Aumsville, Oregon. He served in Charlie Company. His rank at discharge was Sergeant. Charles Ellis lives in Junction City, Oregon and served in Alpha Company. He remains in the Guard and has redeployed to Iraq. His rank is Captain. Matthew Hadley lives in Aloha, Oregon and served in Bravo Company. His rank at discharge was E-5. Lawrence Roberta is from Aumsville and served in Charlie Company. His rank at discharge was Sergeant.

6.

Defendant, KBR, INC. is a foreign corporation with its principal place of business in the State of California, registered to do business in Oregon. KBR, Inc. maintains a registered agent for service of process in Salem, Oregon.

7.

KELLOGG, BROWN & ROOT SERVICES INC., is a foreign corporation with its principal place of business in the State of Texas, registered to do business in Oregon. KELLOGG, BROWN & ROOT SERVICES INC., maintains a registered agent for service of process in Salem, Oregon.

8.

Based on information and belief, Defendant, KBR TECHNICAL SERVICES, INC., is a foreign company with its principal place of business in the State of Texas.

9.

Based on information and belief, defendants OVERSEAS ADMINISTRATION SERVICES, LTD. and SERVICE EMPLOYEES INTERNATIONAL INC. were incorporated by KBR's managers in the Cayman Islands, but managed from KBR's offices at 4100 Clinton Avenue, Houston, Texas 77020. Based on information and belief, these defendants were incorporated in

the Cayman Islands to hire American workers but done so that KBR could avoid paying payroll taxes.

## VENUE & JURISDICTION

10.

The Oregon National Guard soldiers are citizens of the State of Oregon. The KBR Defendants were not incorporated in Oregon and do not maintain principal places of business in Oregon. Each plaintiff seeks damages well in excess of $75,000. Jurisdiction is therefore proper before this Court pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as one or more of the KBR Defendants reside in the District of Oregon for venue purposes, including, but not limited to, doing business in Oregon, employing citizens of Oregon, and directing activity into the state with the knowledge that their actions would have an effect and an impact in Oregon.

## FACTUAL BACKGROUND

11.

When they enlisted, members of the Oregon National Guard agreed to undertake service to the State and the country, including serving in times of war. However, Oregon National Guard members did not volunteer for duty to have private contractors directly and continuously expose them to serious health hazards that were hidden from the civilians and soldiers exposed.

12.

Based on information and belief, KBR's managers knew about the dangerous contamination of the Qarmat Ali site before the Oregon National Guard members arrived.

Specifically, KBR's southern Iraq Health Safety Environment (HSE) manager Johnny Morney knew in May 2003 that the site was contaminated with sodium dichromate.

13.

By early August 2003, 60 percent of the workers onsite reported symptoms of acute poisoning, and yet the work activities and attendant exposures were not stopped until September 2003.

14.

During the spring and summer of 2003, KBR's managers received repeated notice of the sodium dichromate contamination at the site, including the nature of the hazard and the need for protective equipment. KBR and its managers did not warn the U.S. Army of the hazard, even though KBR's managers knew that the Oregon National Guard soldiers were working

15.

A month before KBR managers shut down the contaminated site in September 2003, senior KBR managers left their offices to inspect the Qarmat Ali site. KBR managers conducted the inspection in full "Level C" environmental protection, even avoiding skin exposure. Despite the protection KBR manages afforded themselves, they left the soldiers and civilian workers onsite unprotected and exposed.

16.

As part of its work for the U.S. government, KBR conducted a full-site analysis identifying the hazards at Qarmat Ali in April 2003. It billed the U.S. government for the work and received payment for the site analysis.

17.

KBR's HSE manager for Iraq, Chuck Adams, has claimed he did not receive written documentation or notes of the results of the site assessment conducted by KBR's site assessment conducted in April 2003. The work, and Plaintiffs' exposure, continued either in the absence of this critical safeguard or with it concealed from those who needed it.

18.

In late July, Ed Blacke, an American civilian medic at Qarmat Ali, found widespread evidence of common symptom complexes in civilian and military personnel including continuous bloody noses, spitting up blood, coughing, irritation, of the nose, eyes, throat and lungs, and shortness of breath. To ascertain the nature of the medical problems, Mr. Blacke learned through his Iraqi interpreter learned that burst bags in the site's Injection Building including bags of sodium dichromate, which contains hexavalent chromium. In the course of his medical investigations, Mr. Blacke learned from his interpreter that Sodium Dichromate was injected into the water supply system for the oil fields as an anti-corrosive. Mr. Blacke learned from his interpreter that Baath party members had opened the bags and spread the contents across the plant. Mr. Blacke subsequently reviewed MSDS information on sodium dichromate. A colleague he knew from Chad provided Mr. Blacke with a copy of an internal memo written by a KBR industrial hygienist. Mr. Blacke reported his findings to the HSE and site manager in Kuwait.

19.

Within days, KBR health, safety and environmental managers came to Qarmat Ali to assess the situation. Safety Manager Tommy Mornay and Medical Supervisor Ray Garcia met with and told the workers that the sodium dichromate was a mild irritant at worst, that the plant had been thoroughly checked out and was safe, and that they were to get back to work. In the meeting,

Mr. Blacke pointed out that NIOSH/CDC documents regarding sodium dichromate directly contradicted their statements to the workers. At this point, Mr. Garcia, who was one of Mr. Blacke's superiors, directed Blacke to be quiet and to leave. Garcia escorted Blacke out of the meeting. Garcia advised Blacke that Blacke was being insubordinate, disruptive, and that my input was not appreciated. Blacke later attempted to pursue the complaint with higher-ups in KBR's HSE department in Kuwait, and upon attempting to do so, Mr. Blacke was told that his presence in Iraq and Kuwait was no longer appreciated and that I would be better off going home.

20.

Hexavalent chromium is a highly potent carcinogen. Humans exposed to hexavalent chromium often exhibit the nasal bleeding associated with "chrome nose," confirming the specific injurious impact on the exposed individual. It can produce any type of cancer depending upon genetic susceptibility, quantity and route of exposure. The carcinogen poses a risk through inhalation, ingestion and dermal contact. Hexavalent Chromium can cause severe damage to the liver and kidneys, depress the immune system, and can enter every cell of the body and potentially produce widespread injury to every major organ in the body. Human cells treat hexavalent chromium in they same way they treat sulfate and phosphate, taking it into cells through the same pathways used to transport these essential nutrients. Studies show elevations of stomach, brain, GI, prostate, leukemia, lymphoma, urinary track, renal, bladder and bone cancers in worker exposed to hexavalent chromium by inhalation. Lung cancer is the most common risk associated with hexavlanet chromium. Generally these cancers develop with a latency period of about 5 years for the blood cancers up to 15-20 years for the other types of

cancers. Hexavalent chromium also causes birth defects during pregnancy and has also been reported to have effects on sperm in experimental animals.

21.

Based upon the best scientific evidence, persons exposed to injurious levels of hexavalent chromium have an expected 1 in 5 cancer rate. Once hexavalent chromium has damaged the body, and in particular at the cellular level, there is no "fix." Instead, vigilant health care and early treatment, if possible, is the only protection that medical science can afford exposed individuals from the anticipated future consequences.

**FIRST CLAIM FOR RELIEF AGAINTS ALL DEFENDANTS—NEGLIGENCE**

22.

Plaintiffs re-allege and incorporate each allegation ¶¶1-21.

23.

By virtue of its contracts with the United States, KBR, Inc. and the KBR agreed to take control of the Qarmat Ali site. The KBR defendants agreed to clean up the facility and in return received substantial money and profit for their work. The KBR defendants also were required to undertake site assessments and monitoring of air quality and soil contamination. The KBR defendants either failed to conduct site assessments, including soil and air quality monitoring and testing, or the KBR defendants destroyed documentation of the assessments, testing, and monitoring.

24.

By operation of contract, the KBR defendants assumed a duty to inspect the site, direct the work, and control the clean-up work at the site where the Oregon National Guard soldiers worked and were exposed.

25.

In order to complete its work under the contract, the KBR sought the service and protection of U.S. military forces, including troops from the Oregon National Guard. Oregon National Guard troops entered the site to perform their work, which consisted of protecting private contractors on site.

26.

The KBR defendants were negligent in one or more of the following ways that caused injury to the Oregon Guard soldiers:

A. In suppressing information about the hazardous nature of the site by either failing to complete environmental assessment information or by destroying or secreting test results;

B. In failing to accurately assess the hazard to soldiers and others invited on to the site posed by sodium dichromate contamination of the site;

C. In failing to remove the sodium dichromate from the site so that it would not pose a health hazard to soldiers and others invited on to the site;

D. In failing to isolate the sodium dichromate on the site so that it would not pose a health hazard to soldiers and others invited on to the site; and

E. In failing to warn the Oregon Guard soldiers and others invited on to the site of the hazards posed by sodium dichromate on the site.

27.

As a result of defendants' negligence, the Oregon Guard soldiers suffered physical injury while on-site at the Qarmat Ali location. As more fully described below, each plaintiff suffered physical injury and—due to the nature of the exposure—each has suffered and will suffer worsening of their initial physical injuries, with substantially increased risk of cancers caused by the exposure.

28.

The KBR defendants acted with wanton disregard for the health and safety of the plaintiffs in that they suppressed information regarding the hazard and knowingly allowed the plaintiffs and others to expose themselves to toxic substances. Plaintiffs are entitled to recover punitive damages in an amount to be proved at trial.

29.

As a result of his exposures at the Qarmat Ali facility, Rocky Bixby suffered shortness of breath and chest pain at the site and suffers recurrent sinus pain and irritation, shortness of breath, chest pain and discomfort. He is at risk for future disease, including all manner of cancers. He is at risk for future loss of earning capacity to his economic damage. He has incurred medical expenses to date and will in the future, to his economic damage. He has suffered pain, disability, loss of enjoyment of life, and distress from the injuries to date, and the future risk of cancer caused by exposures, all to his non-economic damage.

30.

As a result of his exposures at the Qarmat Ali facility, Scott Ashby suffered physical injury while on site, including shortness of breath, wheezing, and stomach pain. He has developed esophageal ulcers and continues to have shortness of breath. He is at risk for future disease, including all manner of cancers. He is at risk for future loss of earning capacity to his economic damage. He has incurred medical expenses to date and will in the future, to his economic damage. He has suffered pain, disability, loss of enjoyment of life, and distress from the injuries to date, and the future risk of cancer caused by exposures, all to his non-economic damage.

31.

As a result of his exposures at the Qarmat Ali facility, Lawrence Roberta suffered physical

injury while on site. He had stomach and breathing difficulties. He has since been diagnosed with reactive airway disorder and suffers from permanent chest pain and discomfort and shortness of breath. He is fully disabled. He is at risk for future disease, including all manner of cancers. He has incurred a loss of wages and lost future earning capacity, all to his economic damage. He has incurred past medical expenses and will incur medical expenses in the future, all to his economic damage. He has suffered pain, disability, loss of enjoyment of life, and distress from the injuries to date and the future risk of cancer caused by exposures, all to his non-economic damage.

32.

As a result of his exposures at the Qarmat Ali facility, Charles Ellis suffered nosebleeds, eye irritation, rashes on face, feet and hands, sore throat, chest pain, headaches, sleeplessness and fatigue on site. He continues to suffer from sleeplessness, fatigue, chest pain and headaches. He is at risk for future disease, including all manner of cancers. He is at risk for future loss of earning capacity to his economic damage. He has incurred medical expenses to date and will in the future, to his economic damage. He has suffered pain, disability, loss of enjoyment of life, and distress from the injuries to date, and the future risk of cancer caused by exposures, all to his non-economic damage.

33.

As a result of his exposures at the Qarmat Ali facility, Matthew Hadley suffered nosebleeds, sinus pain and irritation, and shortness of breath beginning at the time he was on the site. He continues to suffer from sinus problems and breathing difficulties. He is partially disabled and has suffered an impairment of of earning capacity to his economic damage. He has incurred medical expenses to date and will in the future, to his economic damage. He has suffered pain, disability, loss of enjoyment of life, and distress from the injuries to date, and the future risk of cancer caused

by exposures, all to his non-economic damage.

**SECOND CLAIM FOR RELIEF–FRAUD**

34.

Plaintiffs incorporate and re-allege ¶¶1-25; 28-33

35.

By at least May 2003, the KBR defendants were aware of the sodium dichromate contamination at the site and the danger posed by the contamination. The KBR defendants were in contact with the United States Army regarding the dangers present at Qarmat Ali and materially misrepresented those dangers to the United States Army by denying any knowledge of site contamination until at the earliest in late July 2003. The KBR defendants concealed evidence of sodium dichromate exposure by either failing to undertake soil and air quality testing and site assessment or by destroying records that set forth those tests and assessments.

36.

The KBR defendants made the following misrepresentations regarding the hazards posed by contamination at the site:

A. That the chemicals at the site were nothing more than a mild irritant;

B. That the chemicals at the site were commonly used in vitamins; and

C. That the chemicals at the site posed no health risk.

37.

The KBR defendants knew or had reason to know that their representations and concealments would be communicated to the Oregon National Guard soldiers and that their misrepresentations would substantially increase the danger to the Oregon National Guard soldiers.

38.

Plaintiffs relied upon the KBR misrepresentations and concealments of the condition of Qarmat Ali site. As a result of the misrepresentations, the Oregon National Guard did not take steps to protect plaintiffs from the exposures to sodium dichromate.

39.

As a result of KBR's misrepresentations and concealments, plaintiffs suffered the previously-described injuries and incurred the previously-alleged damages.

## TIMELY COMMENCEMENT OF THE ACTION

40.

As to each claim, each plaintiff could not have reasonably discovered all elements of the tort before the media reports of the exposure in January 2009 and letters sent by the Oregon National Guard to plaintiffs and others about the exposure in 2009 because one or more of the KBR defendants actively concealed the identities of the tortfeasors, their tortious conduct, the injuries, and the connection between the injuries and the KBR defendants' conduct.

**WHEREFORE,**

Plaintiffs pray for judgment in their favor and for the following relief:

1. Rocky Bixby-on both claims: economic damages in an amount to be proved at trial; non-economic damages in an amount to be proved at trial; costs and disbursements; and such other relief as the Court may deem just.

2. Scott Ashby-on both claims: economic damages in an amount to be proved at trial; non-economic damages in an amount to be proved at trial; costs and disbursements; and such other relief as the Court may deem just.

3. Lawrence Roberta-on both claims: economic damages in an amount to be proved at trial; non-economic damages in an amount to be proved at trial; costs and disbursements; and such other relief as the Court may deem just.

4. Charles Ellis-on both claims: economic damages in an amount to be proved at trial; non-economic damages in an amount to be proved at trial; costs and disbursements; and such other relief as the Court may deem just.

5. Matthew Hadley-on both claims: economic damages in an amount to be proved at trial; non-economic damages in an amount to be proved at trial; costs and disbursements; and such other relief as the Court may deem just.

Respectfully submitted this 5th day of June, 2009

PAUL & SUGERMAN, PC

By: ______________________________

David F. Sugerman, OSB No. 86298
Paul & Sugerman, PC
520 S.W. Sixth Ave., Ste. 920
Portland, Oregon 97204-1535
Phone: 503-224-6602
Fax: 503-224-2764
E-Mail: dfs@pspc.com

**JURY DEMAND**

The Plaintiffs hereby demand a trial by jury.

PAUL & SUGERMAN, PC

By: ______________________________

David F. Sugerman, OSB No. 86298