FILED

IN THE UNITED STATES DISTRICT COURT

APR 1 2 2010

FOR THE DISTRICT OF OREGON

ROCKY BIXBY, LAWRENCE ROBERTA,
SCOTT ASHBY, CHARLES ELLIS, MATTHEW
HADLEY, CARLOS AVALOS, JESUS BRUNO,
COLT CAMPREDON, STEPHEN FOSTER, BYRON
GREER, KELLY HAFER, DENNIS JEWELL,
STEPHEN MUELLER, VITO PACHECO, JOHN
RYDQUIST, KEVIN STANGER, RONALD
BJERKLUND, ADANROLANDO GARCIA, BRIAN
HEDIN, LEWIS MARTIN, and CHARLES SEAMON,
            Plaintiffs,

                                                CV 09-632-PK

                                                OPINION AND
v.                                              ORDER

KBR, INC., KELLOGG, BROWN & ROOT SERVICE,
INC., KBR TECHNICAL SERVICES, INC.,
OVERSEAS ADMINISTRATION SERVICES, LTD.,
and SERVICE EMPLOYEES INTERNATIONAL, INC.,
            Defendants.

PAPAK, Magistrate Judge:

        Plaintiffs Rocky Bixby, Lawrence Roberta, Scott Ashby, Charles Ellis, and Matthew

Hadley filed this action against defendants KBR, Inc., Kellogg, Brown & Root Service, Inc.,

KBR Technical Services, Inc., Overseas Administration Services, Ltd., and Service Employees

International, Inc., on June 8, 2009. On September 8, 2009, plaintiffs amended their complaint,

Page 1 - FINDINGS AND RECOMMENDATION AND ORDER

adding Carlos Avalos, Jesus Bruno, Colt Campredon, Stephen Foster, Byron Greer, Kelly Hafer,

Dennis Jewell, Stephen Mueller, Vito Pacheco, John Rydquist, and Kevin Stanger as additional

plaintiffs. Plaintiffs amended their pleading a second time on February 2, 2010, adding Ronald

Bjerklund, Adanrolando Garcia, Brian Hedin, Lewis Martin, and Charles Seamon as additional

plaintiffs. In their second amended complaint, plaintiffs allege defendants' liability for

negligence and for fraud arising out of plaintiffs' exposure to hexavalent chromium and

subsequent hexavalent chromium poisoning while stationed as Oregon National Guardsmen in

Iraq and assigned to duty at the Qarmat Ali water plant at defendants' behest in 2003.

Now before the court is defendants' motion (#21) to dismiss for lack of personal

jurisdiction and alternate motion to transfer for lack of venue. I have considered the motion, oral

argument on behalf of the parties, and all of the pleadings on file. For the reasons set forth

below, the motion is denied in its entirety.

## LEGAL STANDARDS

A motion to dismiss for lack of personal jurisdiction is governed by Federal Civil

Procedure Rule 12(b)(2). *See* Fed. R. Civ. P. 12(b)(2). "In opposition to a defendant's motion to

dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that

jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008), *citing Sher v.*

*Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). In evaluating the defendant's motion, "[t]he court

may consider evidence presented in affidavits to assist it in its determination and may order

discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001),

*citing Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

If the court decides the motion based on the pleadings and affidavits submitted by the parties

without conducting an evidentiary hearing, "the plaintiff need make only a *prima facie* showing

of jurisdictional facts to withstand the motion to dismiss." *Id.*, quoting *Ballard v. Savage*, 65

F.3d 1495, 1498 (9th Cir. 1995). The court accepts uncontroverted allegations contained within

the plaintiff's complaint as true, and resolves conflicts between statements contained within the

parties' affidavits in the plaintiff's favor. *See, e.g., Boschetto*, 539 F.3d at 1015 (citations

omitted).

## FACTUAL BACKGROUND

I.     **The Defendants and their Contacts with Oregon**

      A.     **KBR, Inc.**

KBR, Inc. ("KBR"), is a corporation organized under the laws of the State of Delaware

with its principal place of business in Houston, Texas. KBR is the corporate parent of defendants

Kellogg Brown & Root Services, Inc., KBR Technical Services, Inc., Overseas Administration

Services, Ltd., and Service Employees International, Inc.

KBR is not registered to do business in Oregon, maintains no offices or other facilities in

Oregon, has no mailing address in Oregon, and has no direct employees. KBR owns no Oregon

property, pays no Oregon taxes, and maintains no Oregon bank accounts. KBR does not solicit

business in Oregon, direct business activities toward Oregon residents, or advertise in Oregon

(although one of its subsidiaries, KBR Technical Services, Inc., has done so, as discussed below).


KBR has an agent for service of process in Oregon. In addition, KBR maintains a

workers' compensation insurance policy in Oregon. That policy is part of a multi-state insurance

policy that KBR purchased for the employees of certain of its subsidiaries, and includes coverage

Page 3 - FINDINGS AND RECOMMENDATION AND ORDER

in Oregon and forty-two other states.

**B.    Kellogg Brown & Root Services, Inc.**

Kellogg Brown & Root Services, Inc. ("KB&RS"), is a corporation organized under the laws of the State of Delaware with its principal place of business in Houston, Texas. KB&RS is the operating company and contracting entity for KBR's Government and Infrastructure business unit, which is an engineering, construction, and services contractor for public sector and private clients. In connection with the events discussed in the plaintiffs' complaint, KB&RS directly contracted with the United States Government to provide logistical support to the military in the Middle East.

KB&RS does not currently perform work in Oregon, nor does it have contracts to perform work in Oregon. KB&RS maintains no offices or other facilities in Oregon, has no mailing address in Oregon, and has no employees working in Oregon. KB&RS does not solicit business in Oregon, direct business activities toward Oregon residents, or advertise in Oregon. It owns no Oregon property, pays no Oregon taxes, and maintains no Oregon bank accounts.

KB&RS is registered to do business in Oregon, and it has an agent for service of process in Oregon.

**C.    KBR Technical Services, Inc.**

KBR Technical Services, Inc. ("KBRTS"), is a corporation organized under the laws of the State of Delaware with its principal place of business in Houston, Texas. KBRTS is an employment company that hires individuals who perform work domestically and abroad for KBR-related companies.

KBRTS is not registered to do business in Oregon, maintains no offices or other facilities in Oregon, has no mailing address in Oregon, and has no employees in Oregon. KBRTS does not solicit business in Oregon, direct business activities toward Oregon residents, or advertise in Oregon. It owns no Oregon property and maintains no Oregon bank accounts.

KBRTS currently employs approximately 5,800 employees, and since its formation has employed approximately 40 persons who listed themselves as Oregon residents. However, it appears that none of these Oregon residents were ever employed by KBRTS or any other KBR-related entity in Oregon.

KBRTS submits tax withholdings on behalf of its current employees who list permanent addresses in Oregon. Other than that, KBRTS does not incur tax liability or pay taxes in the State of Oregon. KBRTS has an agent for service of process in Oregon.

In deposition, KBRTS' vice-president of litigation, Mark Lowes, testified that KBRTS has made recruiting trips to Oregon, and that KBRTS employs "thousands" of employees with Oregon permanent addresses. However, following the close of his deposition, Lowes submitted a list of "errata" in which he characterized his testimony as erroneous on both of these points. According to Lowes' errata submission, document notations he interpreted as meaning that recruiters traveled to Oregon actually meant that candidates had traveled to Houston *from* Oregon. Moreover, in his errata submission Lowes indicated that he had erroneously combined job applicants and employees when stating that "thousands" of KBRTS employees had Oregon addresses.

In connection with a marketing initiative, KBRTS once approached the Oregon National Guard regarding a potential business arrangement, in the course of which KBRTS representatives

traveled to Oregon for at least one meeting. It appears that the initiative was ultimately unsuccessful and that the business arrangement never came into being. There is no evidence that KBR or any other KBR subsidiary was directly involved in this marketing initiative. It does not appear that KBRTS ever otherwise sought to do business in Oregon.

### D.    Overseas Administration Services, Ltd.

Overseas Administration Services, Ltd. ("OAS"), is a corporation organized under the laws of the Cayman Islands with its principal place of business in Dubai, United Arab Emirates. OAS is an employment company that hires employees who perform work abroad under contracts awarded by various clients to KBR-related companies. OAS currently employs approximately 1,000 persons, none in Oregon. Since its formation, OAS has hired 16 persons who listed Oregon as a permanent address. OAS has withheld federal but not state taxes on these persons' behalf, none of whom worked in Oregon.

OAS is not registered to do business in Oregon, and has no agent for service of process in Oregon. OAS maintains no offices or other facilities in Oregon or anywhere else in the United States, has no mailing address in Oregon, and has no employees working in Oregon. OAS does not solicit business in Oregon, direct business activities toward Oregon residents, or advertise in Oregon. It owns no Oregon property, pays no Oregon taxes, and maintains no Oregon bank accounts.

### E.    Service Employees International, Inc.

Service Employees International, Inc. ("SEI"), is a corporation organized under the laws of the Cayman Islands with its principal place of business in Dubai, United Arab Emirates. SEI is an employment company that hires employees who perform work abroad under contracts

Page 6 - FINDINGS AND RECOMMENDATION AND ORDER

awarded by various clients to KBR-related companies. SEI currently employs approximately

25,000 persons, none in Oregon. Since its formation, SEI has hired approximately 430 persons

who listed Oregon as a permanent address, although none of these ever worked for SEI in

Oregon. SEI has withheld federal but not state taxes on these persons' behalf.

SEI is not registered to do business in Oregon, and has no agent for service of process in

Oregon. SEI maintains no offices or other facilities in Oregon or anywhere else in the United

States, has no mailing address in Oregon, and has no employees working in Oregon. SEI does

not solicit business in Oregon, direct business activities toward Oregon residents, or advertise in

Oregon. It owns no Oregon property, pays no Oregon taxes, and maintains no Oregon bank

accounts.

## II.    Underlying Facts

The KBR defendants were performing work in southern Iraq in connection with various

government contracts in 2003. At that time, the Oregon National Guard was assigned to the

Doha Operations Center in Kuwait, and was the only military force assigned to that location. At

material times the KBR defendants, or some of them, would contact the Doha Operations Center

to request assistance with security issues on a regular, perhaps daily basis, with the knowledge

that in response to their security requests, members of the Oregon National Guard would be

dispatched. When members of the Oregon National Guard were assigned to security teams in

response to requests by KBR defendants, they would routinely identify themselves as members of

the Oregon National Guard.

On some occasions, members of the Oregon National Guard, including the plaintiffs in

this action, would receive security assignments to the Qarmat Ali water plant. The plant pumped

water into oil wells in connection with oil harvesting operations. The KBR defendants, or some of them, took control of the plant after combat operations ceased in the area.

According to the plaintiffs' allegations, the Qarmat Ali plant was contaminated with sodium dichromate, which contains high levels of hexavalent chromium, a toxic carcinogen. Plaintiffs allege that the KBR defendants were at all material times aware of the contamination and of the danger to persons exposed to it. Plaintiffs allege that some of the soldiers assigned to duty at the plant experienced characteristic effects of hexavalent chromium poisoning, including bleeding from the nose, but were advised by KBR defendants that their symptoms were caused by dry desert air or by sand allergies.

Plaintiffs allege that, during 2008 Congressional hearings, it was revealed that KBR was wholly aware of the dangers of hexavalent chromium poisoning at the plant at all material times, and actively concealed the extent of the Oregon National Guard soldiers' exposure to it. Plaintiffs have all subsequently experienced symptoms characteristic of acute hexavalent chromium poisoning.

## ANALYSIS

Before the court is the KBR defendants' challenge to the court's exercise of personal jurisdiction over each of the defendants. In the alternative, defendants move to transfer for lack of venue in this district.

### I.    Motion to Dismiss for Lack of Personal Jurisdiction

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Id.*, *citing Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Oregon's long-arm statute creates a standard co-extensive with federal jurisdictional

Page 8 - FINDINGS AND RECOMMENDATION AND ORDER

standards, *see* Or. R. Civ. P. 4L, so a federal court sitting in the District of Oregon may exercise personal jurisdiction wherever it is possible to do so within the limits of federal constitutional due process, *see, e.g., Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990).

Federal due process jurisprudence requires that, to be subject to the personal jurisdiction of a federal court, a nonresident defendant must have at least "'minimum contacts'" with the court's forum state such that "the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004), *quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Two forms of personal jurisdiction are available for application to a nonresident defendant: general personal jurisdiction and specific personal jurisdiction.

### A.    General Personal Jurisdiction

"For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in continuous and systematic general business contacts . . . that approximate physical presence in the forum state." *Schwarzenegger*, 374 F.3d at 801, *quoting Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) and *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Id., citing Brand v. Menlove*

*Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986).

It is plaintiffs' burden to establish general personal jurisdiction over each defendant. *See Boschetto*, 539 F.3d at 1015. Each defendant's contacts with Oregon must be analyzed separately, rather than collectively with the contacts of the other defendants.

### 1.     KBR, Inc.

As noted above, KBR has two cognizable contacts with Oregon: its agent for service of process and its workers' compensation policy, which is an omnibus policy covering 42 states. In addition, KBR is alleged to have relied upon and profited from the services of Oregon National Guard soldiers in Iraq.

These contacts are insufficient to meet the exacting standard for general personal jurisdiction. KBR's contacts with Oregon are, by a wide margin, too attenuated to approximate "physical presence" in Oregon. *Schwarzenegger*, 374 F.3d at 801. The court therefore lacks general personal jurisdiction over KBR in Oregon.

### 2.     Kellogg Brown & Root Services, Inc.

As noted above, KB&RS likewise has two cognizable contacts with Oregon: its agent for service of process and its registration to do business in Oregon.[1] In addition, KB&RS is alleged to have relied upon and profited from the services of Oregon National Guard soldiers in Iraq. KB&RS's contacts with Oregon, like those of KBR and for similar reasons, are insufficient to permit the exercise of general personal jurisdiction over it in this state.

### 3.     KBR Technical Services, Inc.

As noted above, KBRTS has more extensive contacts with Oregon than either of the other

---

[1] Despite being registered to do so, KB&RS does not actually do business in Oregon.

Page 10 - FINDINGS AND RECOMMENDATION AND ORDER

American defendants. KBRTS has employed approximately 40 persons who list Oregon as their state of permanent residence, although none of these persons is employed in Oregon. In addition, KBRTS sent representatives to Oregon to negotiate a business proposition with the Oregon National Guard, although the effort was ultimately unsuccessful. Finally, KBRTS is alleged to have relied upon and profited from the services of Oregon National Guard soldiers in Iraq.

Even these contacts with Oregon are insufficiently "continuous and systematic" to give rise to general personal jurisdiction. In *Schwarzenegger, supra*, the court described the defendant's general business contacts with California as follows:

> [Defendant] regularly purchases Asian-made automobiles that are imported by California entities. . . . Some of [defendant]'s sales contracts with its automobile suppliers include a choice-of-law provision specifying California law. In addition, [defendant] regularly retains the services of a California-based direct-mail marketing company; has hired a sales training company, incorporated in California, for consulting services; and maintains an Internet website accessible by anyone capable of using the Internet, including people living in California.

*Schwarzenegger*, 374 F.3d at 801. These contacts with California are more extensive than KBRTS's contacts with Oregon; nevertheless, the Ninth Circuit had no trouble concluding that "[t]hese contacts fall well short of the 'continuous and systematic' contacts" requisite to permit exercise of general personal jurisdiction, *id.*, going so far as to characterize the argument that these contacts could give rise to general jurisdiction as "quite implausibl[e]" on its face, *id.* KBRTS is not subject to general personal jurisdiction in Oregon.

### 4.    Overseas Administration Services, Ltd., and Service Employees International, Inc.

As noted above, OAS and SEI have virtually no general business contacts with Oregon, the only such contacts being a very limited number of current and former employees of the two

companies who listed Oregon as their state of permanent residence, none of whom were ever employed by either company in Oregon or, indeed, anywhere else in the United States. These contacts are not sufficient to give rise to general personal jurisdiction in Oregon.

### B.    Specific Personal Jurisdiction

The courts of the Ninth Circuit apply a three-pronged test for determining whether the exercise of specific personal jurisdiction over a nonresident defendant may be appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802, *quoting Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). The plaintiff bears the burden of satisfying the first two prongs of the test, whereupon the burden shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*, *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

In the context of cases that sound primarily in tort, courts have considered it sufficient to satisfy the first prong of the test where the *only* contact a nonresident defendant had with the forum state was "the 'purposeful direction' of a *foreign* act having *effect* in the forum state." *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986) (emphasis original), *citing Calder v. Jones*, 465 U.S. 783, 789 (1984). This "'effects' test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the

forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). "The requirement is but a test for determining the more fundamental issue of whether a 'defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.'" *Id.*, quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Under the effects test, "jurisdiction may be exercised with a *lesser showing of minimum contact* than would otherwise be required if considerations of reasonableness dictate." *Haisten*, 784 F.2d at 1397 (emphasis original), *citing Burger King*, 471 U.S. at 476-477.

The second prong of the test requires that the plaintiff's claim arise out of the nonresident defendant's forum-related activities. *See Boschetto*, 539 F.3d at 1016.

At the third prong of the test, the burden shifts to the defendant to present a "compelling case" to rebut the presumption that the exercise of specific personal jurisdiction would be reasonable. *See id.*

> In determining reasonableness, th[e] [courts of the Ninth] circuit examine[] seven factors: the extent of purposeful interjection; the burden on the defendant to defend the suit in the chosen forum; the extent of conflict with the sovereignty of the defendant's state; the forum state's interest in the dispute; the most efficient forum for judicial resolution of the dispute; the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and the existence of an alternative forum.

*Shute v. Carnival Cruise Lines*, 897 F.2d 377, 386 (9th Cir. 1990), *citing Federal Deposit Ins. Corp. v. British-American Ins. Co., Ltd.*, 828 F.2d 1439, 1442 (9th Cir. 1987). "The court[s] must balance the seven factors to determine whether the exercise of jurisdiction would be reasonable." *Id.*, *citing British-American*, 828 F.2d at 1442.

As to the purposeful direction prong of the three-pronged test for determining specific

personal jurisdiction, I agree with defendants' argument that they did not purposefully direct their activities toward Oregon when they contacted the Doha Operations Center to request military assistance, even though they may have done so with the knowledge or expectation that their requests would be answered by members of the Oregon National Guard. Nothing in the record suggests that defendants would have canceled or modified any such request had they learned that the Oregon National Guardsmen assigned to Doha had been replaced by soldiers from states other than Oregon. The fact that it was Oregon National Guardsmen who responded to defendants' requests was essentially a fortuity.

However, plaintiffs allege that each defendant, with knowledge that plaintiffs were Oregon National Guardsmen from Oregon, intentionally misrepresented conditions at the Qarmat Ali site to the plaintiffs and intentionally withheld from them the information that the site was contaminated with hexavalent chromium. Such affirmative, calculated misrepresentation clearly constitutes an intentional act, satisfying the first prong of the so-called "effects" test for determining whether purposeful direction has taken place. Given the allegation that defendants knew the persons to whom they intentionally directed their misrepresentations and failures to disclose were soldiers of the Oregon National Guard, plaintiffs have further satisfied their burden with respect to the second prong of the effects test, that the intentional act was expressly aimed at Oregon. *See, e.g., Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) ("the 'express aiming' requirement. . . is satisfied when 'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state'"), *quoting Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). Finally, defendants' alleged misrepresentations and failures to disclose caused harm to plaintiffs,

Page 14 - FINDINGS AND RECOMMENDATION AND ORDER

whom defendants are alleged to have known were residents of Oregon. Defendants' alleged knowledge that plaintiffs were all residents of Oregon, and therefore that any long-term harm suffered by plaintiffs would be felt in Oregon, satisfies the third prong of the effects test. Satisfaction of all three prongs of the effects test satisfies the first prong of the test for specific personal jurisdiction.[2]

As to the second prong of the specific personal jurisdiction test, whether the claim arises out of the defendants' alleged forum-directed activities, it is clear that plaintiffs' fraud claim arises out of defendants' alleged intentional misrepresentations and failures to disclose. But for those misrepresentations and failures, plaintiffs would not have served at Qarmat Ali without adequate protection against the hazardous chemicals stored at the site, and would not have suffered their complained-of injuries. Plaintiffs have met their burden to establish the second prong of the specific personal jurisdiction test, creating a presumption that exercise of specific personal jurisdiction would be proper.

In connection with the reasonableness prong of the specific personal jurisdiction test, the burden shifts to the defendants to present a compelling case that it would not comport with fair play and substantial justice to hale the defendants into court in Oregon in connection with their alleged misrepresentations and failures to disclose. Defendants have not met and cannot meet this burden. Any person who intentionally permits a group of persons from a particular state to

---

[2] Support for the conclusion that defendants intentionally directed their activities into Oregon may also be found in *Brainerd v. Governors of University of Alberta*, 873 F.2d 1257 (9th Cir. 1989). In *Brainerd*, a Canada resident was found to have intentionally directed an intentional tort into Arizona when he allegedly intentionally defamed an Arizona resident in the course of a telephone call initiated by a third party employed by the University of Arizona. *See Brainerd*, 873 F.2d 1259-1260. The Ninth Circuit found that this action satisfied the purposeful direction requirement both directly and under the effects test. *See id.*

Page 15 - FINDINGS AND RECOMMENDATION AND ORDER

become seriously poisoned may quite reasonably anticipate being subjected to legal action in the victims' state of residence.

The foregoing conclusion is supported by analysis of the factors the courts of the Ninth Circuit employ in determining whether the exercise of specific personal jurisdiction is reasonable. By intentionally putting Oregon National Guardsmen – persons whose health and safety directly impact Oregon's treasury as a matter of state law, *see* O.R.S. 396.366 – at risk of harm, defendants purposefully injected themselves into this forum. The purposeful interjection factor therefore weighs heavily in favor of exercising jurisdiction.

By contrast, the factor treating the inconvenience of the proposed forum to the defendants weighs at least mildly against exercise of jurisdiction. An Oregon forum would require all defendants to travel and to transmit evidence to Oregon, a forum in which no defendant has any physical presence. However, because there is no forum that could entirely mitigate defendants' inconvenience, since the defendants are not all located in any single forum, this factor cannot be accorded dispositive weight in the reasonableness analysis.

The interference with sovereignty factor is immaterial here.

As to the forum state's interest, Oregon has a clear interest in protecting the health and safety not merely of its citizens, but also of its employees, the Guardsmen, whose health concerns are specifically addressed in Oregon legislation, *see* O.R.S. 396.366. This factor therefore weighs heavily in favor of exercising jurisdiction.

As to the efficiency of the proposed forum, it is clear that not all evidence is located in Oregon. However, because all but one of the plaintiffs and much, if not all, of the plaintiffs' evidence, including their medical records, are located in Oregon, and because no single forum

Page 16 - FINDINGS AND RECOMMENDATION AND ORDER

contains all of the defendants or all of the defendants' evidence, an Oregon forum is likely somewhat more efficient than any other, assuming *arguendo* that any other is available. This factor therefore weighs slightly in favor of exercising jurisdiction here.

Because Oregon is the place of residence of all but one of the plaintiffs,[3] Oregon is clearly the forum most convenient to plaintiffs. No other forum has been shown to be more capable than this one of providing the plaintiffs with effective relief. The sixth factor therefore weighs in favor of exercising jurisdiction in Oregon.

Finally, as to the availability of an alternative forum, plaintiffs are correct that it is unclear whether any alternative forum is available in which all defendants would be subject to suit. This factor therefore weighs in favor of exercising jurisdiction here.

For the foregoing reasons, the court may properly exercise specific personal jurisdiction over each defendant, based on the allegations that each defendant intentionally withheld from the plaintiffs, whom defendants knew to be Oregon residents, the information that Qarmat Ali was contaminated with hexavalent chromium. The motion to dismiss for lack of personal jurisdiction is therefore denied.

## II.    Motion to Transfer for Lack of Venue

Defendants' sole argument in favor of transfer for lack of venue is that venue is improper in Oregon because the court lacks personal jurisdiction over the defendants here. However, venue is proper where a defendant is subject to the exercise of personal jurisdiction over it. *See* 28 U.S.C. § 1391(a). Since I conclude that the court has specific personal jurisdiction over the

---

[3] Plaintiff Mueller resides in Vancouver, Washington. All other plaintiffs are Oregon residents.

Page 17 - FINDINGS AND RECOMMENDATION AND ORDER

defendants, I likewise conclude that venue is proper in this district.  The alternative motion to transfer for lack of venue is therefore denied.

## CONCLUSION

For the reasons set forth above, defendants' motion (#21) to dismiss for lack of personal jurisdiction and alternate motion to transfer for lack of venue is denied.

Dated this 9th day of April, 2010.

Honorable Paul Papak
United States Magistrate Judge