Geoffrey L. Harrison, admitted *Pro Hac Vice*
Susman Godfrey LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 653-7807; Fax: (713) 654-6666
Email: gharrison@susmangodfrey.com
      Attorney-in-Charge for KBR Defendants

Jeffrey S. Eden, OSB #851903
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, Oregon 97204
Telephone: (503) 222-9981; Fax: (503) 796-2900
      Local Counsel for KBR Defendants

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| ROCKY BIXBY, et al, | Civil No. 3:09-cv-632-PK |
| Plaintiffs, | |
| vs. | Memorandum in Support of KBR's Motion to Exclude Dr. Arch Carson's Testimony re Genetic Transformation Injury, Remote Exposure Injury, and Medical Monitoring |
| KBR INC., et al., | |
| Defendants. | ORAL ARGUMENT REQUESTED |

Table of Contents

I.     Carson Is Unqualified to Testify about "Genetic Transformation Injury," And His
       Testimony is Irrelevant and Unreliable.............................................................................. 2

       A.     Carson is Unqualified. ................................................................................ 2

       B.     Carson's Opinion is Irrelevant. .................................................................. 3

       C.     Carson's Opinion is Unreliable................................................................... 4

       D.     Carson "Cannot Honestly Say" that Any Plaintiff Has "Genetic
              Transformation Injury," But He (and Plaintiffs' Expert Tarr) Can Say
              "Billions of People" Breathe Dangerous Amounts of Hexavalent
              Chromium ................................................................................................... 6

II.    Carson's Testimony About "Remote Exposure Injury" Is Unreliable............................... 8

III.   Carson's "Medical Monitoring" Opinion is Unreliable................................................... 12

Conclusion ............................................................................................................................ 16

2243382v1/012196

Table of Authorities

<u>Cases</u>

*Abuan v. General Elec. Co.*,
  3 F.3d 329 (9th Cir. 1993) ........................................................................................... 6

*Allgood v. General Motors Corp.*,
  2006 WL 2669337 (S.D. Ind. Sep. 18, 2006) ........................................................... 13

*Burleson v. Texas Dep't of Criminal Justice*,
  393 F.3d 577, 587 (5th Cir. 2004) .......................................................................... 4, 5

*Daubert v. Merrell Dow Pharms, Inc.*,
  113 S. Ct. 2786 (1993) ................................................................................................ 1

*Henricksen v. ConocoPhillips Co.*,
  605 F. Supp. 2d 1142 (E.D. Wash. 2009) ................................................................... 2

*Lowe v. Philip Morris USA, Inc.*,
  183 P.3d 181 (Or. 2008) ........................................................................................... 11

*Lust v. Merrell Dow Pharms., Inc.*,
  89 F.3d 594 (9th Cir. 1998) ........................................................................................ 2

*Young v. Burton*,
  567 F. Supp. 2d 121 (D.D.C. 2008) *aff'd*, 354 Fed. Appx. 432 (D.C. Cir. 2009) ..................... 12

2243382v1/012196

Under *Daubert v. Merrell Dow Pharms, Inc.*, 113 S. Ct. 2786 (1993), this court should exclude the unreliable opinion testimony of plaintiffs' expert Dr. Arch Carson on the subjects of genetic transformation injury, remote exposure injury, and medical monitoring. KBR also has filed a separate *Daubert* motion that specifically addresses the inadmissibility of Carson's opinions about causation.

Parts I and II of this memorandum discuss the unreliability and inadmissibility of Carson's opinion that each plaintiff suffered from two purported "injuries" that Carson appears to have made up for purposes of this case, "genetic transformation injury" and "remote exposure injury." The scientifically and medically unreliable and legally insufficient "basis" for Carson's opinions is simply that plaintiffs say they were "present" at Qarmat Ali for "any amount of time." It makes no difference to Carson's opinion whether a plaintiff was at Qarmat Ali for one minute, one hour, one day, one week.

Part III discusses Carson's scientifically and medically unreliable and legally insufficient opinion about medical monitoring. Carson does not provide any reliable basis for his opinion, does not tie his opinion to any particular plaintiff's circumstances or conditions, and does not cite any  scientific or medical literature or research that demonstrates the advisability of the monitoring he recommends. Carson's opinion about some of the medical monitoring he now recommends also should be excluded under this Court's December 30, 2011 order imposing sanctions on plaintiffs because several of Carson's monitoring recommendations were not timely attested or disclosed.

For the reasons discussed in this memorandum and in the pending Motion for Summary Judgment re Causation and Reply (as well as additional summary judgment motions shortly to be filed in accordance with this Court's scheduling order), Carson's opinions should be excluded

and summary judgment granted against all plaintiffs. *See Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1998) (holding that "it is the proponent of the expert who has the burden of proving admissibility"); *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1154 (E.D. Wash. 2009) ("The party presenting the expert must demonstrate that the expert's findings are based on sound principles and that they are capable of independent validation.").

I.

<u>Carson Is Unqualified to Testify about "Genetic Transformation Injury,"
And His Testimony is Irrelevant and Unreliable</u>

Carson seeks to testify that each plaintiff's genes have been damaged by sodium dichromate exposure. He dubs this condition "genetic transformation injury," but admits that each plaintiff is "completely asymptomatic."[1] Carson's "genetic transformation injury" opinion testimony is subject to a triple whammy.

- Carson is not qualified to testify on this topic.

- Carson's opinion is irrelevant.

- Carson's opinion is unreliable.

A.    <u>Carson is Unqualified.</u>

Carson is *not* an expert in genetic transformation.[2] He has *never* published work focused on mutation research or the mechanisms of genotoxicity, and has *never* done any laboratory work researching mutations.[3] In the last 25 years:  Carson has *not* done any laboratory work in the field of carcinogenicity, has *not* conducted any experiments with animals to evaluate tumorigenesis, cell damage, cytotoxicity, or genotoxicity, has *not* studied DNA damage either in

_____

[1] X-1 (Carson depo) at 263:25 – 264:6.
[2] X-3 (Rossman declaration) at ¶ 7.
[3] X-1 (Carson depo) at 254:4-12.

vivo or in vitro, has *not* looked at changes in gene expression or gene copy number, and has *not* even looked into a microscope at changes in the DNA sequence.[4]  Carson has *never* conducted any cancer research.[5]

Even if he had done some scientifically responsible work and research in this case – he has done no such thing – Carson still would not be qualified to opine about supposed "genetic transformation injury."  In fact, it may be that Carson's failure to undertake even remotely sufficient or reliable work in this case is explained by Carson simply not being sufficiently familiar with the science and medicine because he's not a specialist in genotoxicity, genetic mutations, carcinogenicity, and other closely related fields.  Carson's failures also may be explained by Carson not being willing to put in the necessary amount of work.[6]

B.    Carson's Opinion is Irrelevant.

Carson's "genetic transformation injury" testimony is irrelevant.  KBR incorporates by reference its pending Motion for Summary Judgment re Causation which amplifies these and other legally dispositive failings by Carson.  KBR also incorporates by reference the Motion for Summary Judgment re Mental Anguish, Medical Monitoring, and Genetic Transformation Injury which will be filed by May 4, 2012, in accordance with this Court's scheduling order.  That motion further will demonstrate that Carson's "genetic transformation injury" opinion is legally

---

[4] *Id.* at 254:24 – 255:17, 258:25 – 259:13.
[5] *Id.* at 253:4-6.
[6] *Id.* at 295:18 – 296:11 ("Q. So just let me make sure I understand, Dr. Carson. Are you now suggesting there's some comparison between looking at the sworn testimony of a plaintiff given four months before your report and torturing him?  A. It would be torturing me.").

invalid and irrelevant because, among other reasons, Carson admits that "genetic transformation injury" is entirely "asymptomatic" and thus, under Oregon law, is not compensable.

C.  Carson's Opinion is Unreliable.

Every time a plaintiff reported that he had been at Qarmat Ali, even for as little as one hour, Carson concluded that he had genetic transformation injury:

> Q.  Okay. Is there any plaintiff in this case whom you have concluded they did not experience a genetic transformational injury?
>
> A.  Not if they were *present* at Qarmat Ali.
>
> Q.  *For any period of time?*
>
> A.  That's correct.[7]

It doesn't make any difference to Carson's "genetic transformation injury" opinion whether a person was at Qarmat Ali for one second, one minute, one hour, one day, one week, one month, or more – for Carson, "any period of time" will do.  Carson admitted that this opinion is premised on a "no threshold" theory that *any exposure to hexavalent chromium* causes an injury:

> Q.  So you think *any exposure* to hexavalent chromium will lead to this genetic transformation injury?
>
> A.  In some cells, yes.[8]

In *Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 587 (5th Cir. 2004), the Fifth Circuit considered a similar opinion offered in that case by the same Dr. Carson.  The court rejected Carson's any-exposure-will-do, no threshold opinion. In *Burleson,* Carson opined that it was unnecessary to opine about dose because "the critical question regarding exposure 'is not the

---

[7] *Id.* at 138:19-24.
[8] *Id.* at 238:13-16.

total dose of radiation to the body, but the total dose of radiation to the one cell that was transformed into a cancer cell in two different locations in Mr. Burleson's body.'" As the Fifth Circuit noted in *Burleson*, Carson admitted that "the radiation dose to that area cannot be calculated individually, although *Carson assures us, 'it's just high*.'" *Id.*

In this case, Carson's opinion is almost identical to what Carson unreliably and unsuccessfully tried in *Burleson*. In this case, Carson admits he failed to quantify dose, but says *"It's just big."*

> *Q.*    *You don't know what the dose is for any particular individual, correct?*
>
> *A.*    *That's correct.*
>
> Q.    So how do you know it was overcome by the range of dose without knowing what the dose was?
>
> A.    Because their's was a big dose.
>
> Q.    <u>You can't quantify that in any way, can you?</u>
>
> A.    <u>No.</u>
>
> *Q.*    *It's just big?*
>
> *A.*    *It's just big.*[9]

Carson's opinion – "it's just big" or "it's just high" – did not satisfy the court in *Burleson*, does not satisfy the Ninth Circuit's or *Daubert's* standards, and it should not satisfy this Court. Carson's opinion in *Burleson* (like his opinion here) was not based on a reliable dose calculation and comparable epidemiological studies, but rather was based on speculation,

---

[9] *Id.* at 280:21 – 281:5 (all emphasis in this brief is added); *see also id.* at 146:25 – 148:3.

guesswork, and conjecture. *Id.* Carson has failed to show that his unqualified and unreliable theory of genotoxicity is accepted by anyone in the relevant scientific community.[10]

D.    Carson "Cannot Honestly Say" that Any Plaintiff Has "Genetic Transformation Injury," But He (and Plaintiffs' Expert Tarr) Can Say "Billions of People" Breathe Dangerous Amounts of Hexavalent Chromium

In *Abuan v. General Elec. Co.*, 3 F.3d 329 (9th Cir. 1993), the Ninth Circuit rejected another plaintiffs' expert's opinions about no-threshold "genetic transformation" injury. Plaintiffs in *Abuan* alleged that they were exposed to PCB's at a power plant in Guam, but their expert, like Carson here, did not quantify plaintiffs' exposure dose. *Id.* at 332.  The *Abuan* plaintiffs' expert, like Carson, tried to overcome that deficiency by testifying that "all cases of exposure to these carcinogenic chemicals inexorably lead to physical injury taking the form of present cellular damage to the genetic material (DNA). . . . Plaintiffs have sustained such physical injury to their cells."  The *Abuan* district court noted that plaintiffs' expert:

> believes that *any* exposure to a toxic substance, no matter how minute or fleeting, always places a person at increased risk and justifies medical monitoring. His personal belief is *so all-encompassing and amorphous that it is of no utility in the context of this lawsuit.*

*Id.* at 333. The Ninth Circuit agreed with the exclusion of plaintiffs' expert's opinions, affirmed, and focused on plaintiffs' experts' failure to demonstrate that plaintiffs were "exposed to harmful levels" of PCB's:

> The experts simply concluded that the workers had been exposed and, as a group, were at risk for future injury and required medical monitoring. This testimony simply *did not suffice* to meet the requirements of each chosen cause of action.

*Id.* at 334.  The Ninth Circuit's decision in *Abuan* – along with so many other fatal failings in Carson's opinions and plaintiffs' claims – should be outcome determinative here.

---

[10] X-3 (Rossman declaration) at ¶¶8-10.

Directly contrary to controlling Ninth Circuit precedent (and directly contrary to any semblance of rationality), plaintiffs' experts Carson and Jim Tarr effectively admitted that Carson's any-exposure-will-do "no threshold" approach is completely without limit and meaningless.  Carson testified:

> Q.    And your view is ***we're all getting genetic transformation injury by living in this town*** or in this city?
>
> A.    Walking into the sun, ***same deal***.[11]

Plaintiffs' air modeling expert Tarr testified that *any* inhalation of hexavalent chromium is "dangerous,"[12] and therefore *billions* of people are exposed to the same danger for which plaintiffs seek to recover money:

> Q.    Do you believe that ***billions of people by virtue of living on this planet breathe hexavalent chromium that is, as you see it, dangerous***?
>
> A.    In all probability the answer to that question is ***yes***.[13]

Even using the boundless and unreliable "no threshold" model, Carson and Tarr cannot say that hexavalent chromium exposure likely caused a genetic injury in any plaintiff.  Carson testified:

> Q.    ***Are you opining that that [genetic transformational] injury persists to this day for any particular individual***?
>
> A.    ***I cannot honestly say that***, the reason being that many of those initial injuries may well have been repaired, but it's very likely that many of them have not.  So the – I think the injury has the potential to continue to exist to this day in everyone, ***and I can't tell who is and isn't***.[14]

Tarr testified:

---

[11] X-1 (Carson depo) at 239:15-18.
[12] X-2 (Tarr depo) at 131:6-16.
[13] *Id.* at 179:15-19.
[14] X-1 (Carson depo) at 263:5-12.

Q.    Is it your belief that any exposure, any inhalation, any dermal contact, truly any exposure to hexavalent chromium likely results in a DNA or genetic level transformation or injury?

A.    *No, I won't say it likely does.*[15]

That's not all.  Carson admits that it *is possible to test* individuals "to detect the earliest signs of the result of the genetic transformation injury."[16] And he admits that he has *not done any studies or testing* to determine if any current plaintiff actually has a genetic transformation injury, or has otherwise experienced DNA damage:

Q.    Have you done any testing to term - to determine if any current plaintiff actually has a genetic transformational injury?

A.    I have not.[17]

Finally, when asked the basis for his opinion that every plaintiff who went to Qarmat Ali had genetic transformation injury, ***Carson admitted that "I'm not sure I have good scientific evidence to found that on** because that's an area of carcinogenesis that really isn't fleshed out well."*[18]

Carson's "genetic transformation injury" and "no threshold" testimony is *not* reliable, *not* scientific, is *not* been accepted by the courts, and should be excluded here as well.

II.

Carson's Testimony About "Remote Exposure Injury" Is Unreliable

Carson's "remote exposure injury" diagnosis is meaningless.  Even to Carson.  In a truly incredible admission in the context of everything that has happened in this case, Carson at his

---

[15] X-2 (Tarr depo) at 140:23 – 141:2.
[16] X-1 (Carson depo) at 273:4-7.
[17] *Id.* at 273:21-24.
[18] *Id.* at 267:10-15.

8

deposition admitted that he, himself, did not understand what remote exposure injury was, and could not distinguish it from genetic transformation injury:

> Q.    You have concluded that every plaintiff has a remote exposure injury, correct?

Mr. Hawkins: Objection form.

> A.    I concluded that every plaintiff has a genetic transformation injury who was at Qarmat Ali for any period of time. The – *I haven't satisfied myself that I understand the remote exposure injury as I used it.*
>
> . . .
>
> Q.    Well, Dr. Carson, are you including genetic transformation injury as one form of remote exposure injury in your definition of remote exposure injury?
>
> A.    I think I just told you that I don't – *I'm not clear about the basis of that remote exposure injury statement at the moment, but if I wrote it, there is a basis for it and I can come up with that basis and provide it to you, but I can't tell you right now.* That's why I'm not able to answer the question whether or not those are equivalent statements, remote exposure injury and genetic transformation injury.[19]

Carson's own lack of clarity and inability at his March 28, 2012 deposition to say what he means (or to "come up with that basis" for whatever he means) renders his opinions all the more suspect and unreliable, particularly since this Court and KBR both clearly and repeatedly have expressed this same concern. In a February 17, 2012 letter to this Court, KBR's counsel wrote:

> Putting to one side the absence of medical and scientific support for Carson's opinions and his many other failings – this will be addressed in the *Daubert* briefing – it still is unclear just what opinions Carson holds, and plaintiffs still have failed to provide the "complete statement of all opinions the witness will express and the basis and reasons for them" as FRCP 26(a)(2) requires. The Court made this point in its questioning of plaintiffs' counsel at the January 27, 2012 hearing. *See, e.g.,* Jan. 27, 2012 Hrg. Tr. at 3 ("I think I expressed some concern about what it was he was saying. It wasn't clear to me what he meant when he said remote-exposure injuries and what he meant when he said current

---

[19] *Id.* at 184:22 – 185:3, 187:1-11.

exposure-related illnesses, et cetera."), 17 ("I'm trying to put these all together, but they don't – it's like connecting dots that are on, like, four different pages."), 19 ("It doesn't seem very medical to me. It seems relatively circular. He has an injury because he was exposed, and we know what the injury was because we presume exposure."), 24 ("Again, I think Dr. Carson speaks in quite general terms."), 28 ("And if he does, he doesn't do it very clearly.")

Carson also could not explain what criteria he used to classify a plaintiff as having a "remote exposure injury":

Q.    Well, what did you use to determine whether or not they ended up in that category or not, or can you tell me today?

A.    I cannot tell you today, although I can tell you eventually because I have that information.

Q.    Okay. Why can't you tell me today?

A.    Because I don't know it.[20]

Carson could not explain "remote exposure injury" because it is not real. It is a stop-gap that he invented to ascribe injuries to uninjured plaintiffs. Thus, as with his opinion about "genetic transformation injury," Carson assigned this diagnosis to every single plaintiff who reported going to Qarmat Ali:

Q.    Was there a single plaintiff that you were aware of whose cover sheet shows exam is not consistent with remote chromium VI exposure injury?

A.    Not *if they told me they had been at Qarmat Ali* during the period of exposure.

Q.    And what period was that?

A.    Between March and September of 2003.

Q.    *Regardless of how long they said they were there, correct?*

A.    *Correct.*[21]

---

[20] *Id.* at 135:22 – 136:3.
[21] *Id.* at 132:6-10, 13-15.

2243382v1/012196

As long as a plaintiff "told [Carson] they had been at Qarmat Ali," that was enough for Carson. Carson didn't consider when, how long, where at the plant, what they did, or the weather conditions.

Further, "remote exposure injury" is not an *injury* at all. It is a misleading phrase fraught with inherent circularity that Carson invented to describe *exposure*:

> Q.    What is a remote exposure injury as you've used that term in your reports?
>
> A.    It's an encounter with hexavalent chromium of sufficient exposure to cause injury.[22]

See also Jan 27, 2012 MSJ Hrg. Transcript at 19 (COURT: "It doesn't seem very medical to me. It seems relatively circular. He has an injury because he was exposed, and we know what the injury was because we presume exposure.") Carson's testimony on this point is not reliable for so many reasons, including that *exposure is not the same as injury*. Indeed, Oregon law does not recognize a cause of action based solely upon an increased health risk, absent a manifested injury. *Lowe v. Philip Morris USA, Inc.*, 183 P.3d 181, 184 (Or. 2008).

Also, "remote exposure injury" is not a *medical* diagnosis by Carson *as a doctor*. Instead, *Carson allowed the plaintiffs to diagnose themselves*:

> Q.    Okay. And your basis for whether or not they have that injury or not – and we're going to talk about that later – is if they [the plaintiffs] indicated to you they had been present at Qarmat Ali during the period between March and September 2003, correct?
>
> A.    If they – if they endorsed any illness or symptoms that ***they believe*** were – was directly associated with their presence at Qarmat Ali, then they were in that category.[23]

Truly incredible.

_____

[22] *Id.* at 182:12-15.
[23] *Id.* at 133:7-15.

The Third Circuit addressed a similar situation in *In re TMI Litig.*, 193 F.3d 613, 698 (3d Cir. 1999), and held that the opinion of a "physician who had been retained strictly for litigation purposes" was ***not reliable when it "based pathological causation on nothing more than a plaintiff's self-report of an illness*.**" That's what Carson admits he did here. The court in *Young v. Burton*, 567 F. Supp. 2d 121, 131 (D.D.C. 2008), *aff'd*, 354 Fed. Appx. 432 (D.C. Cir. 2009), likewise excluded plaintiff's expert testimony about "mold illness" because the diagnosis was not recognized by anyone except the expert, and explained the obvious, that when an "illness" does not actually exist, the opinion is even less reliable.

This district court addressed a similar situation in *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1402 (D. Or. 1996), in which plaintiffs alleged that they were injured by silicon breast implants and premised "many of their claims on the existence of a variously-titled atypical connective tissue disease (ACTD)." The *Hall* court excluded plaintiff's expert's testimony because plaintiffs did not prove that this was a generally accepted diagnosis, and there was no uniform set of signs or symptoms of the disease. The court explained that "because ACTD is at best an untested hypothesis, there is no scientific basis for any expert testimony as to its causes and presence in plaintiffs." *Id.* at 1402.

Carson's opinions about "remote exposure injury" – whatever it means – is, at best, an untested hypothesis, and is, in fact, not one even Carson understands.

III.

Carson's "Medical Monitoring" Opinion is Unreliable

On May 4, 2012, in accordance with the Court's scheduling order, KBR will file its Motion for Summary Judgment Re Mental Anguish, Medical Monitoring, and Genetic

12

Transformation Injury.  That motion will demonstrate as a matter of law that plaintiffs cannot recover medical monitoring costs where, as here, they are uninjured by the conduct at issue.

Carson's opinions about medical monitoring for potential lung cancer are unreliable and inadmissible (and, thus, plaintiffs' medical monitoring claim is legally impermissible), because Carson has no idea the extent, if any, to which any particular plaintiff faces an increased lung cancer risk:

> Q.    Okay.   You've done no calculation of the actual quantitative risk, increased risk of lung cancer for any particular individual, correct?
>
> A.    That's correct.[24]

In jurisdictions that do recognize medical monitoring claims, a plaintiff must "prove that, by reason of increased exposure, a reasonable physician would prescribe for the plaintiff a monitoring regime different from one that would be prescribed had the exposure never occurred." *Allgood v. General Motors Corp.*, 2006 WL 2669337, at *26 (S.D. Ind. Sep. 18, 2006). ***Carson admits that he is not offering his monitoring opinion to a reasonable medical certainty.***

> **Q.    Do you be – are you expressing that opinion to a reasonable medical certainty?**
>
> **A.    *No, I'm not.*** *My <u>recommendation</u> was that everyone be screened.*
>
> Q.    Regardless of the amount of time they were there and regardless of whether or not they are in high-risk pool or not?
>
> A.    Yeah.[25]

---

[24] *Id.* at 162:8-11.
[25] *Id.* at 318:4-11.

2243382v1/012196

Carson has a "recommendation" about medical monitoring. But he expressly admits he does *not* – "No, I'm not." – have an "opinion to a reasonable medical certainty" about medical monitoring. That should be the end of it.

But there's more.

Carson has not employed any recognized methodology to derive his medical monitoring opinion. In *Allgood*, 2006 WL 2669337, at *31, the court excluded the testimony of plaintiffs' expert about medical monitoring costs because he had not considered the scientific authorities on medical monitoring.

> Dr. Carpenter testified, however, that in developing the program he was not aware of any agency that might recommend periodic screening and did not refer to any guidelines or protocols of either the American Medical Association, the Centers for Disease Control, or USPSTF. Although he testified that he is aware of the guidelines provided by the American Cancer Society and the American Heart Association, Dr. Carpenter testified that he did not refer specifically to any guidelines or recommendations of any health association or organization in developing the medical monitoring program in this case.

Like the excluded opinions of Dr. Carpenter in the *Allgood* case, Carson's opinions here are not based on any attempt by Carson to analyze the need for medical monitoring pursuant to any of the authoritative guidelines or protocols for medical monitoring by any recognized medical professional body. The only authority he points to is a single study that conditionally endorses medical monitoring only for ***smokers who smoked a pack a day of cigarettes for 30 years***.

> Q.    Okay. And are they recommending that that procedure be done on everybody in the world or on a certain population of smokers?
>
> A.    High-risk individuals that would include heavy smokers.
>
> . . .
>
> Q.    Okay. Has it been recommended for light smokers, past smokers or smokers who have had pack years of less than 30 years?

> A.    I don't believe so.[26]

Carson admitted that he had no scientific support for the idea that the type of exposure in this case – as opposed to the exposure represented by 30 years of heavy smoking – warrants medical monitoring:

> Q.    Are you aware of any other doctor or professional or scientific paper that agrees with you that this type of population warrants medical monitoring in the nature you've described?
>
> A.    Any other doctor or medical professional?
>
> Q.    Or paper.
>
> A.    I – I'm not aware of many doctors who have – who are dealing with populations like this.
>
> Q.    So the answer is no?
>
> A.    That's correct.[27]

Carson's medical monitoring opinion is unreliable, unsupported in the medical and scientific literature and research, not being offered to a reasonable medical certainty, and should be excluded under *Daubert*.[28]

---

[26] *Id.* at 315:13-17, 20-23.

[27] *Id.* at 316:18-317:2.

[28] FRCP 26(a), FRCP 37(c), and this Court's December 30, 2011 Order provide another important reason to exclude most of Carson's opinions about medical monitoring, and to exclude any damages based on such medical monitoring. On page 23 of the Order, this Court imposed sanctions on plaintiffs, including the sanction that "all damages claims or bases for calculating damages not previously attested in plaintiffs' interrogatory responses or deposition testimony or in Carson's June report and stated for the first time in the November report (if any) shall be excluded from consideration, except to the extent (if any) that plaintiffs could not have discovered such claims or bases prior to expiration of the June 10, 2011 expert disclosure deadline." Plaintiffs' claims for, and Carson's opinions on, medical monitoring all must be excluded under this Court's December 30, 2011 Order, except that Carson's June 2011 report mentioned "biannual physical examinations, biannual CAT scans and biannual sputum pathology screening" so those opinions are not excluded under this Court's order. Those opinions, like Carson's other opinions, should be excluded under *Daubert,* as discussed in this motion.

Conclusion

This Court should exclude Carson's opinions on genetic transformation injury, remote exposure injury, and medical monitoring.

Respectfully submitted,

/s/ Geoffrey L. Harrison
Geoffrey L. Harrison (Admitted *Pro Hac Vice*)
Texas State Bar No. 00785947
S.D. Admissions No. 16690
gharrison@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 653-7807
Facsimile: (713) 654-6666

Attorney-in-Charge for Defendants KBR, Inc., Kellogg Brown & Root Services, Inc., KBR Technical Services, Inc., Overseas Administration Services, Ltd., and Service Employees International, Inc.

Of Counsel:

Jeffrey S. Eden
jeden@schwabe.com
SCHWABE, WILLIAMSON & WYATT
1211 SW 5th Avenue, Suite 1900
Portland, Oregon 97204
Telephone: (503) 796-2837
Facsimile: (503) 796-2900

2243382v1/012196

Vineet Bhatia
Texas State Bar No. 00795976
S.D. Admissions No. 20187
vbhatia@susmangodfrey.com
J. Hoke Peacock III (Admitted *Pro Hac Vice*)
Texas State Bar No. 15673980
S.D. Admissions No. 13529
tpeacock@susmangodfrey.com
Johnny W. Carter (Admitted *Pro Hac Vice*)
State Bar No. 00796312
S.D. Admissions No. 21988
jcarter@susmangodfrey.com
Chanler A. Langham (Admitted *Pro Hac Vice*)
Texas State Bar No. 24053314
S.D. Admissions No. 659756
clangham@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Jordan Connors (Admitted *Pro Hac Vice*)
Washington State Bar No. 416499
jconnors@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue
Seattle, Washington 98101
Telephone: (206) 516-3880
Facsimile:  (206) 516-3883

Raymond B. Biagini (Admitted *pro hac vice*)
rbiagini@mckennalong.com
Kurt J. Hamrock
khamrock@mckennalong.com
MCKENNA LONG & ALDRIDGE LLP
1900 K Street NW, Suite 100
Washington, D.C. 20006-11808
Telephone:  (202) 496-7500
Facsimile:  (202) 496-7756

17

<u>Certificate of Compliance</u>

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 4195 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

/s/ Geoffrey L. Harrison
Geoffrey L. Harrison