IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROCKY BIXBY, LAWRENCE ROBERTA,
SCOTT ASHBY, CHARLES ELLIS, MATTHEW
HADLEY, JESUS BRUNO, COLT CAMPREDON,
STEPHEN FOSTER, BYRON GREER, KELLY
HAFER, DENNIS JEWELL, STEPHEN
MUELLER, VITO PACHECO, JOHN RYDQUIST,
KEVIN STANGER, RONALD BJERKLUND,
ADANROLANDO GARCIA, BRIAN HEDIN,
CHARLES SEAMON, RANDY KEIPER, MATT
KUHNEL, DENNIS ROSGEN, AARON
ST. CLAIR, KEVIN WILSON, JASON BLAIN,
JAMES BORJA, DEVON FIELDS, LESLIE ING,
RICHARD LAWRENCE, JAY LOUISIANA,
JAMES McGOWAN, DONALD YEARGIN,
JASON ARNOLD, and MICHAEL O'RIELLY,

   Plaintiffs,

                 3:09-CV-632-PK

v.                 OPINION AND
                  ORDER

KBR, INC., KELLOGG, BROWN & ROOT SERVICE,
INC., KBR TECHNICAL SERVICES, INC.,
OVERSEAS ADMINISTRATION SERVICES, LTD.,
and SERVICE EMPLOYEES INTERNATIONAL, INC.,

   Defendants.

PAPAK, Magistrate Judge:

   Plaintiffs Rocky Bixby, Lawrence Roberta, Scott Ashby, Charles Ellis, and Matthew Hadley filed this action against defendants KBR, Inc., Kellogg, Brown & Root Service, Inc.,

Page 1 - OPINION AND ORDER

KBR Technical Services, Inc., Overseas Administration Services, Ltd., and Service Employees International, Inc. (collectively, the "KBR defendants"), on June 8, 2009. On September 8, 2009, plaintiffs amended their complaint, adding Carlos Avalos, Jesus Bruno, Colt Campredon, Stephen Foster, Byron Greer, Kelly Hafer, Dennis Jewell, Stephen Mueller, Vito Pacheco, John Rydquist, and Kevin Stanger as additional plaintiffs. Plaintiffs amended their pleading a second time on February 2, 2010, adding Ronald Bjerklund, Adanrolando Garcia, Brian Hedin, Lewis Martin, and Charles Seamon as additional plaintiffs. On June 25, 2010, plaintiffs amended their complaint a third time, adding Randy Keiper, Matt Kuhnel, Dennis Rosgen, Aaron St. Clair, and Kevin Wilson as further additional plaintiffs. On October 27, 2010, plaintiffs amended their complaint a fourth time, adding Jason Blain, James Borja, Devin Fields, Leslie Ing, Richard Lawrence, Jay Louisiana, James McGowan, and Donald Yeargin as further additional plaintiffs, and adding Halliburton Company and Halliburton Energy Services, Inc. (collectively, the "Halliburton defendants"), as additional defendants. Plaintiffs amended their complaint a fifth time on January 10, 2011, adding as additional plaintiffs Jason Arnold, Thomas Barella, Daniel Grover, Christopher Wangelin, and Michael O'Rielly. Plaintiffs voluntarily dismissed Barella as a plaintiff in this action on the following day, January 11, 2011, and voluntarily dismissed Grover as a plaintiff in this action on February 25, 2011. On June 16, 2011, these chambers recommended that the court dismiss the plaintiffs' claims to the extent alleged against the Halliburton defendants for lack of personal jurisdiction, and on July 20, 2011, Judge Hernandez adopted that recommendation as his own opinion. The parties stipulated to the dismissal of Avalos, Martin, and Wangelin as plaintiffs in this action, on December 16, 2011, and to the dismissal of O'Rielly as a plaintiff on April 4, 2012. In their fifth amended complaint, plaintiffs

Page 2 - OPINION AND ORDER

allege defendants' liability for negligence and for fraud arising out of plaintiffs' exposure to sodium dichromate and subsequent hexavalent chromium poisoning while stationed as Oregon National Guardsmen in Iraq and assigned to duty at the Qarmat Ali water plant in May-September 2003.

Now before the court are plaintiffs' motion (#287) to compel production of documents and interrogatory responses and for imposition of sanctions against the defendants and defendants' responsive request (#315) for imposition of sanctions against the plaintiffs. I have considered the motion, oral argument on behalf of the parties, and all of the pleadings on file. For the reasons set forth below, plaintiffs' motion (#287) to compel and for sanctions and defendants' request (#315) for sanctions are each denied.

## LEGAL STANDARDS

### I. Scope of Permissible Discovery, Generally

Federal Civil Procedure Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, the district courts should limit the scope of discovery under specified circumstances, as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

## II. Motion to Compel

As noted above, Federal Civil Procedure Rule 26(b)(1) authorizes discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Rule 26(b)(1) is to be construed broadly, and encompasses any matter that bears on, or that reasonably could lead to other matters that would bear on, any issue that is or may be in the case. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 351 n. 12 (1978).

If a party elects to oppose a propounding party's discovery requests, the opposing party bears the burden of establishing that the discovery is overly broad, unduly burdensome or not relevant. *See Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-4 (S.D. Ind. 2000). "Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condominium Owners Assoc.*, 186 F.R.D. 584, 587 (C.D. Cal. 1999); *see also Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186 (C.D. Cal. 2006).

Federal Civil Procedure Rule 37(a)(3)(B) empowers a propounding party to "move for an order compelling an answer, designation, production, or inspection" if:

> (i) a deponent fails to answer a question asked under Rules 30 or 31;

Page 4 - OPINION AND ORDER

>  (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);
>
>  (iii) a party fails to answer an interrogatory submitted under Rule 33, or
>
>  (iv) a party fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34.

Fed. R. Civ. Pro. 37(a)(3)(B). Moreover, Rule 37(a)(4) provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Rule 26 provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. Pro. 26(b)(1).

## MATERIAL FACTUAL BACKGROUND

In 2002, pursuant to its contract with the U.S. Army Corps of Engineers, KBR created a document referred to by the parties as KBR's "Contingency Support Plan." Appendix 4 of Annex N of the Contingency Support Plan comprises a list of "Documents Relevant to Iraq's Energy Infrastructure." One line item contained within Annex N, Appendix 4, refers not to a single document with a single publication date, but rather refers generally to documents published during "2001-2002" in connection with "Oil Exports under the United Nations Oil for Food Programme." The United Nations maintains an archive of documents associated with its Oil for Food Programme, and that archive contains an August 1, 2001, document entitled "Distribution Plan for Phase X" of the Oil for Food Programme. The Distribution Plan for Phase X has numerous annexes, including Annex VIII (Oil Sector). Annex VIII is chiefly comprised of a document entitled "Requirements for Processing and Distribution Sector of Oil & Gas." That document is comprised of a series of spreadsheets listing Iraqi "Ministry of Oil requirements for the Phase 10 Spare Parts and Equipment." Among these spreadsheets is a spreadsheet listing

Page 5 - OPINION AND ORDER

parts and materials necessary for the maintenance and operation of Iraq's South Oil Company. One line item of that spreadsheet indicates that the South Oil Company required "water treatment chemicals comprised mainly of aluminium sulphate, zinc sulphate, poly achrymide & sodium dichromate" in (apparently aggregate) annual quantities of 4020 tons.

## DISCUSSION

Because the Contingency Support Plan contained a reference to the United Nations' archive of 2001-2002 documents relating to its Oil for Food Programme, and because that archive contained a reference to the Iraqi South Oil Company's usage of sodium dichromate at water treatment plants like Qarmat Ali, plaintiffs take the position that the Contingency Support Plan was itself responsive to the following outstanding requests for production:

> **Request for Production No. 12:** The documents identifying when [defendants] first became aware that toxic substances, including sodium dichromate, were present at Qarmat Ali.
>
> * * *
>
> **Request for Production No. 20:** The documents exchanged with government agencies or officials of . . . the United States . . . or the United Nations . . . regarding [Qarmat Ali], Project RIO, and/or the exposure of individuals to toxic substances.

In addition, plaintiffs take the position that the Contingency Support Plan should have been identified in connection with any or all of the following outstanding interrogatory requests:

> **Interrogatory Request No. 7:** What documents, (including e-mails) directly relating to [plaintiffs' exposure to sodium dichromate at Qarmat Ali] (record complaints/incidents, potential safety hazards, inspections of the site or [plaintiffs' exposure to sodium dichromate at Qarmat Ali]) have been destroyed or discarded?
>
> * * *
>
> **Interrogatory Request No. 13:** Please identify any tests, studies, or analyses of

> toxic substances, including zinc sulfate, selenium, and sodium dichromate, in the air, soil, or water at [Qarmat Ali] (including the date of such tests, the individuals/entities involved, where such testing took place, and the results of such tests).
>
> * * *
>
> **Interrogatory Request No. 19:** Please document all communications between any of the ... Defendants or the ... Defendants; employees, agents, or attorneys and the Department of the Army ... regarding [this] litigation or the [plaintiffs' exposure to sodium dichromate at Qarmat Ali]. ...

Plaintiffs argue that KBR should be ordered to produce the Contingency Support Plan, and that KBR should be sanctioned for its failure to produce or identify the document at an earlier stage of these proceedings by ordering that (i) plaintiffs be awarded the attorney fees they have incurred in discovery that they argue would not have been necessary had the Contingency Support Plan been timely produced; (ii) discovery be re-opened to permit plaintiffs to depose all KBR persons who were aware of the Contingency Support Plan, and that any attorney-client privilege be deemed waived in connection with the contingency Support Plan for purpose of such depositions; and (iii) the jury be advised of defendants' "concealment" of the Contingency Support Plan.

In response, defendants take the position that, pursuant to U.S. Army directive, prior to the inception of this litigation they destroyed or returned all copies of the Contingency Support Plan that were once in their possession. Moreover, defendants further assert that they never specifically reviewed Annex VIII of the Distribution Plan for Phase X prior to the date plaintiffs filed their motion to compel, and had no prior knowledge of its contents. Defendants point to evidence that plaintiffs may have spoken to the press regarding defendants' alleged concealment of the contingency Support Plan, and request that the court impose sanctions against the

Page 7 - OPINION AND ORDER

plaintiffs, awarding defendants the attorney fees they incurred in opposing the motion and admonishing plaintiffs to try their case in court rather than in the press.

Defendants' assertion that they have never had a copy of the Contingency Support Plan within their possession or control at any time during the pendency of this action, and lacked knowledge of the contents of Annex VIII of the Distribution Plan for Phase X, is sufficient grounds for denial of the plaintiffs' motion to compel. In addition, however, I find that the Contingency Support Plan was in any event not responsive to the discovery requests identified above. As to Request for Production No. 12, the Contingency Support Plan does not identify "when [defendants] first became aware that toxic substances, including sodium dichromate, were present at Qarmat Ali." Indeed, the Contingency Support Plan makes no mention of sodium dichromate, but rather only indirectly references a United Nations program that generated a document from which it could arguably be inferred that sodium dichromate was used at water treatment plant(s) by Iraq's South Oil Company in a possibly large but ultimately unascertainable annual amount. Particularly in light of defendants' representation, through their counsel, that they never saw the United Nations document in question prior to the filing date of plaintiffs' motion, the indirect reference to United Nations Oil for Food Programme documents does not constitute an identification of the date defendants first became aware of the presence of sodium dichromate at Qarmat Ali. The Contingency Support Plan is therefore not responsive to Request for Production No. 12.

As to Request for Production No. 20, the Contingency Support Plan is clearly not a document regarding Qarmat Ali or exposure of individuals to toxic substances, and cannot properly be cognized as a document regarding Project RIO because Project RIO did not yet exist

Page 8 - OPINION AND ORDER

in 2002 when the Contingency Support Plan issued. The Contingency Support Plan is therefore not responsive to Request for Production No. 20.

As to Interrogatory Request No. 7, the Contingency Support Plan was concededly "destroyed" by defendants, but it cannot be cognized as "directly" relating to plaintiffs' exposure to sodium dichromate at Qarmat Ali. As to Interrogatory Request No. 13, the Contingency Support Plan in no way identifies any "tests, studies, or analyses of toxic substances, including zinc sulfate, selenium, and sodium dichromate" in the air, soil, or water of Qarmat Ali or any other location. As to Interrogatory Request No. 19, the Contingency Support Plan is not a communication regarding either this litigation or plaintiffs' exposure to sodium dichromate at Qarmaat Ali. The Contingency Support Plan is therefore responsive to none of Interrogatory Requests Nos. 7, 13, or 19.

For the foregoing reasons, plaintiffs' motion (#287) to compel and for sanctions is denied. Notwithstanding the ultimate lack of merit in plaintiffs' position, however, I find that plaintiffs were substantially justified under the circumstances in bringing their motion to seek production of the Contingency Support Plan. Because the Contingency Support Plan contained an indirect reference to a document indicating a reasonable likelihood that sodium dichromate would be present at water treatment plants like Qarmat Ali, plaintiffs had a colorable justification for seeking production of the Plan. Moreover, the parties' submissions indicate that defendants may have provided misleading explanations for their failure to produce the Plan at various times during the pendency of this action, including by asserting that the Contingency Support Plan had been classified as confidential by the United States military at a time when the Plan had expressly been declassified, thereby justifying the plaintiffs' evident belief that the Plan had been actively

Page 9 - OPINION AND ORDER

concealed from them. Defendants' request (#315) for imposition of sanctions is therefore likewise denied. Each set of parties shall bear its own costs incurred in connection with litigating plaintiffs' motion to compel.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion (#287) to compel and for sanctions and defendants' request (#315) for imposition of sanctions against the plaintiffs are each denied.

Dated this 22nd day of August, 2012.

*Paul Papak*
Honorable Paul Papak
United States Magistrate Judge