IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROCKY BIXBY, LAWRENCE ROBERTA,
SCOTT ASHBY, CHARLES ELLIS, MATTHEW
HADLEY, JESUS BRUNO,COLT CAMPREDON,
STEPHEN FOSTER, BYRON GREER, KELLY
HAFER, DENNIS JEWELL, STEPHEN
MUELLER, VITO PACHECO, JOHN RYDQUIST,
KEVIN STANGER, RONALD BJERKLUND,
ADANROLANDO GARCIA, BRIAN HEDIN,
CHARLES SEAMON, RANDY KEIPER, MATT
KUHNEL, DENNIS ROSGEN, AARON
ST. CLAIR, KEVIN WILSON, JASON BLAIN,
JAMES BORJA, DEVON FIELDS,  LESLIE ING,
RICHARD LAWRENCE, JAY LOUISIANA,
 JAMES McGOWAN, DONALD YEARGIN,
JASON ARNOLD, and MICHAEL O'RIELLY,

       Plaintiffs,

                                            3:09-CV-632-PK

v.                                      OPINION AND
                                        ORDER

KBR, INC., KELLOGG, BROWN & ROOT SERVICE,
INC., KBR TECHNICAL SERVICES, INC.,
OVERSEAS ADMINISTRATION SERVICES, LTD.,
and SERVICE EMPLOYEES INTERNATIONAL, INC.,

       Defendants.

PAPAK, Magistrate Judge:

       Plaintiffs Rocky Bixby, Lawrence Roberta, Scott Ashby, Charles Ellis, and Matthew

Hadley filed this action against defendants KBR, Inc., Kellogg, Brown & Root Service, Inc.,

Page 1 - OPINION AND ORDER

KBR Technical Services, Inc., Overseas Administration Services, Ltd., and Service Employees International, Inc. (collectively, the "KBR defendants"), on June 8, 2009. On September 8, 2009, plaintiffs amended their complaint, adding Carlos Avalos, Jesus Bruno, Colt Campredon, Stephen Foster, Byron Greer, Kelly Hafer, Dennis Jewell, Stephen Mueller, Vito Pacheco, John Rydquist, and Kevin Stanger as additional plaintiffs. Plaintiffs amended their pleading a second time on February 2, 2010, adding Ronald Bjerklund, Adanrolando Garcia, Brian Hedin, Lewis Martin, and Charles Seamon as additional plaintiffs. On June 25, 2010, plaintiffs amended their complaint a third time, adding Randy Keiper, Matt Kuhnel, Dennis Rosgen, Aaron St. Clair, and Kevin Wilson as further additional plaintiffs. On October 27, 2010, plaintiffs amended their complaint a fourth time, adding Jason Blain, James Borja, Devin Fields, Leslie Ing, Richard Lawrence, Jay Louisiana, James McGowan, and Donald Yeargin as further additional plaintiffs, and adding Halliburton Company and Halliburton Energy Services, Inc. (collectively, the "Halliburton defendants"), as additional defendants. Plaintiffs amended their complaint a fifth time on January 10, 2011, adding as additional plaintiffs Jason Arnold, Thomas Barella, Daniel Grover, Christopher Wangelin, and Michael O'Rielly. Plaintiffs voluntarily dismissed Barella as a plaintiff in this action on the following day, January 11, 2011, and voluntarily dismissed Grover as a plaintiff in this action on February 25, 2011. On June 16, 2011, these chambers recommended that the court dismiss the plaintiffs' claims to the extent alleged against the Halliburton defendants for lack of personal jurisdiction, and on July 20, 2011, Judge Hernandez adopted that recommendation as his own opinion. The parties stipulated to the dismissal of Avalos, Martin, and Wangelin as plaintiffs in this action on December 16, 2011, and to the dismissal of O'Rielly as a plaintiff on April 4, 2012. In their fifth amended complaint, plaintiffs

Page 2 - OPINION AND ORDER

allege defendants' liability for negligence and for fraud arising out of plaintiffs' exposure to sodium dichromate and subsequent hexavalent chromium poisoning while stationed as Oregon National Guardsmen in Iraq and assigned to duty at the Qarmat Ali water plant in May-September 2003.

Now before the court is defendants' (renewed) motion (#340) to dismiss for lack of subject-matter jurisdiction. I have considered the motion, oral argument on behalf of the parties, and all of the pleadings on file. For the reasons set forth below, defendants' motion (#340) to dismiss is denied.

## LEGAL STANDARDS

The federal courts are courts of limited jurisdiction. *See, e.g., Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005), *citing Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). As such, the courts presume that causes of action "lie[] outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377; *see also, e.g., Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006).

A motion under Federal Civil Procedure Rule 12(b)(1) to dismiss for lack of subject-matter jurisdiction may be either "facial" or "factual." *See Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004), *citing White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack on subject-matter jurisdiction, the moving party asserts that a plaintiff's allegations are insufficient on their face to invoke federal jurisdiction, whereas in a factual attack, the moving party disputes the factual allegations that, if true, would give rise to subject-matter jurisdiction. Where a defendant raises a facial challenge to subject-matter jurisdiction, the factual allegations

Page 3 - OPINION AND ORDER

of the complaint are presumed to be true, and the motion may be granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). By contrast, where a defendant raises a factual challenge to federal jurisdiction, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," *Safe Air v. Meyer*, 373 F.3d at 1039, *citing Savage*, 343 F.3d at 1039 n.2, and "need not presume the truthfulness of the plaintiff's allegations," *id., citing White*, 227 F.3d at 1242.

"Defective allegations of jurisdiction may be amended, upon terms, in trial or appellate courts." 28 U.S.C. § 1653. It is improper to dismiss an action based on a defective allegation of jurisdiction without leave to amend "unless it is clear, upon de novo review, that the complaint could not be saved by amendment." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 n.6 (9th Cir. 2002), *citing Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001).

## MATERIAL FACTUAL BACKGROUND

Kellogg, Brown & Root Service, Inc. ("KB&RS") entered into Contract No. DACA63-03-D-0005 – known as the "Restore Iraqi Oil" or "RIO" contract – with the U.S. Army Corps of Engineers on March 8, 2003, pursuant to which KB&RS would perform tasks as ordered by the U.S. Army Corps of Engineers in connection with efforts to restore the infrastructure underlying the Iraqi oil industry.

Combat operations in Iraq began on March 19, 2003.

On March 20, 2003, the Corps of Engineers issued "Task Order 3," which governed the services to be provided by KBR and its subsidiaries at Qarmat Ali and other facilities. Under Task Order 3, the U.S. military would declare a given worksite to be "benign" before KBR would

Page 4 - OPINION AND ORDER

begin operations there. According to the deposition testimony of retired Brigadier General of the U.S. Army Corps of Engineers Robert Crear and of retired U.S. Army Corps of Engineers employee Gordon Sumner, "benign" referred to freedom from combatant activity and from nuclear or chemical weapons, and did not foreclose the possibility of environmental hazards, including hazardous (but not weaponized) chemicals. Support for this interpretation can be found in the provisions of Task Order 3, which suggest that pronouncement of a site as "benign" did not, for example, foreclose the need for environmental assessment.

It appears from the language of Task Order 3[1] that KBR was responsible for providing the Corps of Engineers with an environmental assessment of any facility in which they undertook operations. The obligation to provide such assessments included the obligation to report and evaluate any environmental hazards. According to the deposition testimony of General Crear and of Sumner, KBR was not merely permitted but required under Task Order 3 and the RIO contract to take all necessary precautions to safeguard personnel who might potentially be exposed to environmental hazards at worksites, including the wearing of protective gear and/or the closing down of operations at any unsafe site.

The RIO contract sets forth specific health and safety requirements KBR was required to comply with in performing services under the contract, including Overseas Environmental Baseline Guidance Document 4715.5-G (Mar. 2000), OHSA standards, industry standards, CERCLA requirements, environmental assessment requirements, Army safety regulations, and Army Corps of Engineers safety standards. These requirements were never waived.

---

[1] Moreover, the army briefed the Senate on December 22, 2008, that KBR was required to perform an initial site assessment of Qarmat Ali "in order to establish an environmental baseline."

Page 5 - OPINION AND ORDER

The RIO contract further provides that the U.S. government will indemnify KBR for any claims involving bodily injury or death arising out of KBR's provision of services under the contract.

In April 2003, the KBR defendants began operations at Qarmat Ali. In May 2003, the Oregon National Guard was assigned to the Doha Operations Center in Kuwait. Beginning some time after May 1, 2003, the KBR defendants, or some of them, would contact the Doha Operations Center and request assistance with security issues on a regular, perhaps daily basis, in accordance with the provisions of the RIO contract and Task Order 3. On some occasions, members of the Oregon National Guard would receive security assignments to the Qarmat Ali water plant, where they were allegedly exposed to sodium dichromate.

In an internal email, in June 2003 a KBR employee discussed sodium dichromate contamination at Qarmat Ali and recommended that remedial measures be taken, including excavating and placing in drums all contaminated soil.

Defendants did not advise the Oregon National Guard of the presence of sodium dichromate at Qarmat Ali until August 12, 2003, when KBR issued an official report to the army detailing the chemical's presence. The report indicated that sodium dichromate at Qarmat Ali constituted a serious health hazard.

The Qarmat Ali site was shut down September 9, 2003.

Plaintiffs are members of the Oregon National Guard allegedly exposed to sodium dichromate at Qarmat Ali in 2003 who have allegedly been harmed by their exposure.

## DISCUSSION

In support of their renewed motion to dismiss for lack of subject-matter jurisdiction,

defendants argue that, in light of "significant legal developments since this court's prior ruling" and the fact that the "factual record is far more developed now than it was in October 2010," the court should dismiss plaintiffs' claims pursuant to the combatant activities exception to the Federal Tort Claims Act and/or to the political question doctrine. Defendants previously moved to dismiss pursuant to precisely these same grounds (and in addition pursuant to the so-called government-contractor defense) on April 23, 2010, and on August 30, 2010, I denied that motion. On October 22, 2010, on defendants' motion, I amended my opinion and order denying the motion to dismiss for lack of subject-matter jurisdiction for the sole purpose of certifying that the order was appropriate for immediate appeal pursuant to 28 U.S.C. § 1292(b). On November 2, 2010, defendants appealed my order to the Ninth Circuit, and on December 14, 2010, the Ninth Circuit dismissed defendants' appeal.

I incorporate by reference herein the extensive discussion of case law applicable to the combatant activities exception to the Federal Tort Claims Act and to the political question doctrine contained in my Amended Opinion and Order (#110) dated October 22, 2010.

## I.    Combatant Activities Exception

The Federal Tort Claims Act (the "FCTA") provides a waiver of sovereign immunity for claims against the government sounding in tort. One exception to that waiver is the combatant activities exception, codified at 28 U.S.C. § 2680(j), which expressly preserves the United States' sovereign immunity in connection with "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j). The Ninth Circuit has specified that he combatant activities exception is to be applied neither strictly nor liberally, but rather according to its plain language. *See Johnson v. United States*, 170 F.2d

767, 769 (9th Cir. 1948).

The *Johnson* court further clarified that, for the exception to apply, the alleged tortfeasor "must not only have been actually engaged in 'combatant activities' at the time covered by the complaint, but such 'combatant activities' must be shown to have taken place 'during time of war.'" *Id.* at 769-770. The *Johnson* court analyzed the exception as follows:

> 'Combat' connotes physical violence; 'combatant,' its derivative, as used here, connotes pertaining to actual hostilities; the phrase 'combatant activities,' of somewhat wider scope, and superimposed upon the purpose of the statute, would therefore include not only physical violence, but **activities both necessary to and in direct connection with actual hostilities**. The act of supplying ammunition to fighting vessels in a combat area during war is undoubtedly a 'combatant activity,' but this fact does not make necessary a conclusion that all varied activities having an incidental relation to some activity directly connected with previously ended fighting on active war fronts must, under the terms of the Act, be regarded as and held to be a 'combatant activity.' To so hold might lead to results which need not here be considered.

> The rational test would seem to lie in the degree of connectivity. Aiding others to swing the sword of battle is certainly a 'combatant activity,' but the act of returning it to a place of safekeeping after all of the fighting is over cannot logically be cataloged as a 'combat activity.'

*Id.* at 770 (footnotes omitted; emphasis supplied).

In addition to *Johnson*, in the course of my Amended Opinion and Order (#110) dated October 22, 2010, I discussed, in connection with the combatant activities exception, the Ninth Circuit's opinion in *Koohi v. United States*, 976 F.2d 1328 (9th Cir. 1992), the Eleventh Circuit's opinion in *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331 (11th Cir. 2007), the D.C. Circuit's opinion in *Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009), and district court cases including *McMahon v. Presidential Airways, Inc.*, 460 F. Supp. 2d 1315, 1330 (M.D. Fla. 2006), *Taylor v. Kellogg Brown & Root Servs.*, Case No. 09-341, 2010 U.S. Dist. LEXIS 50610 (E.D.

Va. Apr. 16, 2010), *Harris v. Kellogg, Brown & Root Servs.*, 618 F. Supp. 2d 400 (W.D. Pa.

2009), and *Lessin v. Kellogg Brown & Root*, Case No. H-05-01853, 2006 U.S. Dist. LEXIS

39403 (S.D. Tex. June 12, 2006). The sole "legal development[]" bearing on the combatant

activities exception that defendants identify, other than the cases discussed in my Amended

Opinion and Order (#110) dated October 22, 2010, is an *amicus curiae* brief filed by the United

States on January 13, 2012, in connection with a case currently pending in the Fourth Circuit, *Al*

*Shimari v. CACI Int'l, Inc.*, Case No. 09-1335 (4th Cir.).[2]  In its *amicus curiae* brief, the United

States summarized much the same body of case law I discussed in my Amended Opinion and

Order (#110) dated October 22, 2010, as collectively providing that:

> state tort law claims against contractors are generally preempted if similar claims
> brought against the United States would come within the FTCA's combatant
> activities exception and if the alleged actions of the contractor and its personnel
> occurred within the scope of their contractual relationship with the government,
> particularly if the conduct occurred while contractor personnel were integrated
> with the military in its combat-related activities.[3]

On the basis of the United States' position as advocated in its *Al Shimari amicus curiae* brief,

defendants argue that I erred in my disposition of defendants' first-filed motion to dismiss for

lack of subject-matter jurisdiction by viewing the combatant activities exception too narrowly,

---

[2] In addition, defendants assert that the "recent developments" in political question
doctrine jurisprudence they cite in support of their renewed motion to dismiss – such as they are,
*see infra* – have had "ripple effects" on the jurisprudence governing the combatant activities
exception. Notwithstanding this assertion, defendants cite no cases indicating that any such
"ripple effect[]" has taken place, and my own research does not indicate that recent political
question doctrine cases have had any impact on the analytical framework governing the
combatant activities exception.

[3] Although the United States took the position in its *amicus curiae* brief that such
preemption could apply under appropriate circumstances, it urged the Fourth Circuit to find that
such preemption was not appropriate on the facts before it, expressly arguing that "[e]ven if all of
those circumstances exist" there should be no preemption where a contractor acts unlawfully.

Page 9 - OPINION AND ORDER

specifically by focusing improperly on whether defendants' activities were in direct support of combat operations rather than on whether the claims would have fallen within the scope of the exception had they been brought against the United States.

Defendants' argument is unpersuasive. Whether in connection with a claim brought directly against the United States or a claim brought against a government contractor, the *sine qua non* of the combatant activities exception remains the same: the exception applies only to tortious conduct undertaken in the course of or in direct connection with combatant activities. The position advocated in United States' *Al Shimari amicus curiae* brief is not to the contrary (and even if it were, a position taken by the United States in an *amicus curiae* brief could not properly serve as grounds for rejecting or modifying applicable statutory law or precedential case law). As I found in connection with my previous disposition, operations at Qarmat Ali were in connection with the restoration of infrastructure rather than in connection with combatant activities. In consequence, the combatant activities exception is inapplicable to plaintiffs' claims against the defendants in this action, and the United States' *Al Shimari amicus curiae* brief provides no grounds for disturbing my previous denial of defendants' motion.

In addition, I find that further grounds exist for rejecting defendants' combatant activities exception argument, beyond those stated in connection with my disposition of defendants' first-filed subject-matter jurisdiction motion. There can be no serious argument that, under the terms and provisions of the RIO contract, defendants' operations at Qarmat Ali were integrated into combatant activities "over which the military retain[ed] command authority." *Saleh*, 580 F.3d at 9. Absent such integration, tort claims against a government contractor do not fall within the combatant activities exception. *See id.* at 8-9; *see also id.* at 10 (the combatant activities

Page 10 - OPINION AND ORDER

exception "does not apply when a *performance-based statement of work* is used in a services contract, because the Government does not, in fact, exercise specific control over the actions and decisions of the contractor [and] [b]ecause . . . by definition, the military could not retain command authority nor operational control over contractors working on that basis. . . .") (emphasis original). Because the RIO contract and Task Order 3 constitute a performance-based statement of work clearly sufficient to establish that KBR's operations at Qarmat Ali were not under the United States military's command authority or operational control, the combatant activities exception is necessarily inapplicable to plaintiffs' claims as a matter of law. Defendants' renewed motion to dismiss is therefore denied to the extent premised on the combatant activities exception.

## II.    Political Question Doctrine

Disputes involving certain political questions lie outside the jurisdiction of the federal courts. *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974); *Corrie v. Caterpillar*, 503 F.3d 974, 982 (9th Cir. 2007). The Supreme Court has set forth six independent tests for determining whether the presence of a political question deprives the federal courts of jurisdiction over a particular case:

> Prominent on the surface of any case held to involve a political question is found [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Page 11 - OPINION AND ORDER

> **Unless one of these formulations is inextricable from the case at bar, there should be no dismissal for nonjusticiability on the ground of a political question's presence.** The doctrine of which we treat is one of "political questions," not one of "political cases." The courts cannot reject as "no law suit" a bona fide controversy as to whether some action denominated "political" exceeds constitutional authority. **The cases we have reviewed show the necessity for discriminating inquiry into the precise facts and posture of the particular case, and the impossibility of resolution by any semantic cataloguing.**

*Baker v. Carr*, 369 U.S. 186, 217 (1962) (emphasis supplied). The Supreme Court has opined that the six *Baker* tests are "probably listed in descending order of both importance and certainty." *Vieth v. Jubelirer*, 541 U.S. 267, 278 (2004).

In addition to *Schlesinger*, *Corrie*, *Baker* and *Vieth*, in the course of my Amended Opinion and Order (#110) dated October 22, 2010, I discussed, in connection with the political question doctrine, the Ninth Circuit's opinion in *Koohi v. United States*, 976 F.2d 1328 (9th Cir. 1992), the Eleventh Circuit's opinion in *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331 (11th Cir. 2007), the Fifth Circuit's decision in *Lane v. Halliburton*, 529 F.3d 548, 554 (5th Cir. 2008), and district court cases including *Lessin v. Kellogg Brown & Root*, Case No. H-05-01853, 2006 U.S. Dist. LEXIS 39403 (S.D. Tex. June 12, 2006), *Harris v. Kellogg, Brown & Root Servs.*, 618 F. Supp. 2d 400 (W.D. Pa. 2009), *Norwood v. Raytheon Co.*, 455 F.Supp.2d 597 (W.D. Tex. 2006), *Flanigan v. Westwind Technologies*, Case No. 07-1124, 2008 U.S. Dist. LEXIS 82203 (W.D. Tenn. Sept. 15, 2008), *Al Shimari v. CACI Premier Technology, Inc.*, Case No. 08-827, 2009 U.S. Dist. LEXIS 29995 (E.D. Va. Mar. 18, 2009), *Carmichael v. Kellogg, Brown & Root Services, Inc.*, 564 F.Supp.2d 1363 (N.D. Ga. 2008), *Whitaker v. Kellogg, Brown & Root, Inc.*, 444 F. Supp. 2d 1277 (M.D. Ga. 2006), and *Bentzlin v. Hughes Aircraft Co.*, 833 F. Supp. 1486 (C.D. Cal. 1993). The only "legal development[]" in the political question

jurisprudence identified by defendants as having taken place subsequent to my disposition of

defendants' first-filed subject-matter jurisdiction motion is the issuance of the Fifth Circuit's

decision in *Fisher v. Halliburton*, 667 F.3d 602 (5th Cir. 2012), a case arising out of the *Lane*

consolidated cases discussed extensively in my Amended Opinion and Order (#110) dated

October 22, 2010. In *Fisher*, the Fifth Circuit concluded that the plaintiffs' tort claims arising out

of the deaths of two civilian contractors killed in the course of an attack on a U.S. military

convoy in Iraq were preempted under the federal Defense Base Act. In *dicta*, however, the court

stated as follows:

> Whether this case presents a nonjusticiable political question is a significant issue,
> particularly since KBR sought to have the role of the United States considered
> under section 33.004(i) of Texas Civil Practice and Remedies Code not as a party
> to the litigation, but as a responsible third party. Chapter 33 of that Code allows a
> defendant to designate a responsible third party and, once the party is so
> designated and there is evidence sufficient to submit a question to the jury
> regarding the conduct of the party, requires the trier of fact to determine the
> percentage of responsibility for a plaintiff's harm attributable to the plaintiff, the
> defendant, any settling persons, and the responsible third party. The designation
> of a person as a responsible third party or a finding of fault against that person
> "does not by itself impose liability on the person" and "may not be used in any
> other proceeding . . . to impose liability on the person." Even parties "who are not
> subject to the court's jurisdiction or who are immune from liability to the
> claimant" can be designated responsible third parties under the statute. We do
> not, however, reach these issues.

*Fisher*, 667 F.3d at 621-622. In addition, defendants note that the parties have developed the

factual record significantly since October 2010, including, defendants argue, by establishing that

the U.S. military failed to make a contractually required environmental assessment of Qarmat Ali

before directing defendants to begin operations there, that the U.S. military had actual knowledge

of the presence of sodium dichromate at Qarmat Ali by not later than June 2003, and that a report

issued by the United States Department of Defense Office of Inspector General concluded that

Page 13 - OPINION AND ORDER

actions and decisions of the U.S. military did not effectively address the environmental hazards at Qarmat Ali.

On the basis of the foregoing, defendants argue that plaintiffs' claims are necessarily barred under the political question doctrine because their resolution would inevitably call into question "sensitive" military decisions. Defendants make this argument without identifying which of the six *Baker* formulations is inextricable from plaintiffs' claims in light of the recent development of the factual record. Instead, defendants take the position that I erred in my previous disposition by analyzing the six *Baker* tests in connection only with plaintiffs' claims, without taking into account defendants' anticipated defenses to plaintiffs' claims. Specifically, defendants advise the court that they anticipate opposing plaintiffs' claims in part based on the purported contributory negligence of the U.S. military, and characterize the question of the military's potential negligence as a "sensitive political question."

Taking express account of defendants' anticipated defense provides no grounds for disturbing my previous disposition of defendants' political question argument. As I found in my Amended Opinion and Order (#110) dated October 22, 2010, plaintiff's claims do not implicate the first *Baker* test (a textually demonstrable constitutional commitment of the issue to a coordinate political department) in any degree, because there has been no constitutional commitment of issues raised by plaintiffs' claims to any political department other than the judiciary. That conclusion clearly applies with equal force to defendants' anticipated contributory negligence defense. Similarly, defendants' anticipated defense is without impact on my analysis of the second *Baker* test (a lack of judicially discoverable and manageable standards), in that traditional principles of tort law provide manageable standards for evaluating whether the

Page 14 - OPINION AND ORDER

military was materially contributorily negligent, or of the third *Baker* test (the impossibility of deciding the case without an initial policy determination of a kind clearly for nonjudicial discretion), in that the question whether the military was in any way contributorily negligent in connection with plaintiffs' exposure to sodium dichromate may be resolved without addressing policy determinations.

As to the fourth *Baker* test (the impossibility of undertaking resolution of the claims without expressing lack of the respect due coordinate branches of government), I note that the Ninth Circuit has opined that this test is relevant only where "judicial resolution of a question would contradict prior decisions taken by a political branch in those limited contexts where such contradiction would seriously interfere with important governmental interests." *Sarei v. Rio Tinto, PLC*, 671 F.3d 736, 756 (9th Cir. 2011), *quoting Kadic v. Karadzic*, 70 F.3d 232, 249 (2d Cir. 1995). In light of this gloss on the test, it is clear that a finding that military personnel were negligent in connection with the plaintiffs' exposure to sodium dichromate at Qarmat Ali would not constitute an expression of lack of respect of a coordinate branch of government for purposes of the political question doctrine.

The parties agree that the fifth *Baker* test (an unusual need for unquestioning adherence to a political decision already made) is inapplicable to plaintiffs' claims and to defendants' anticipated defense, so I need not address that test here. Finally, defendants' anticipated defense is without impact on my analysis of the sixth *Baker* test (the potential for embarrassment due to multiple pronouncements by various departments on one question), in that the anticipated defense creates no significant risk of multiple pronouncements by various departments.

As I concluded in connection with my disposition of defendants' first-filed subject-matter

Page 15 - OPINION AND ORDER

jurisdiction motion, because none of the *Baker* formulations is inextricable from the issues raised

by plaintiffs' claims, the political question doctrine does not deprive this court of subject-matter

jurisdiction. *See Baker*, 369 U.S. at 217.  Defendants' renewed motion to dismiss is therefore

denied to the extent premised on the political question doctrine.

**CONCLUSION**

For the reasons set forth above, defendants' renewed motion (#340) to dismiss for lack of

subject-matter jurisdiction is denied.


Dated this 29th day of August, 2012.

Honorable Paul Papak
United States Magistrate Judge