**Geoffrey L. Harrison**, admitted *Pro Hac Vice*
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 653-7807; Fax: (713) 654-6666
Email: gharrison@susmangodfrey.com
      Attorney-in-Charge for KBR Defendants

**Jeffrey S. Eden**, OSB #851903
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, Oregon 97204
Telephone:  (503) 222-9981; Fax:  (503) 796-2900
      Local Counsel for KBR Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ROCKY BIXBY, et al, | CIVIL NO. 3:09-cv-632-PK |
|     Plaintiffs, | |
| | KBR'S RESPONSE TO PLAINTIFFS' RENEWED ATTEMPT TO ESTABLISH A FOUNDATION FOR THEIR CSP-RELATED EXHIBITS AND ARGUMENTS |
| vs. | |
| KBR INC., et al., | |
|     Defendants. | |
| | ORAL ARGUMENT REQUESTED |

This responds to plaintiffs' most recent attempt in yesterday afternoon's Dkt. 563 to

fabricate a foundation for the "inferential" argument plaintiffs keep trying to make based on their

PAGE 1 - KBR'S RESPONSE TO PLAINTIFFS' RENEWED ATTEMPT TO ESTABLISH A
FOUNDATION FOR THEIR CSP-RELATED EXHIBITS AND ARGUMENTS

misreading of the Contingency Support Plan ("CSP").  This was plaintiffs' third and presumably best attempt to establish the legally requisite foundation, and they again failed to do so.  Even at this late stage of the proceedings, plaintiffs intentionally tried to mislead the Court through their intensely selective and misleading citations (and purported paraphrasing) from the deposition of Robert Reeves.   As shown below, Reeves repeatedly rejected plaintiffs' counsel's hostile questioning and rejected the inferential "foundation" plaintiffs ask this Court to draw.

This Court should sustain KBR's MIL 2 and should sustain KBR's objections to PX numbers 13, 15, 15-A, 18, 19, 19-A, 27, 27-A, 118, 146, 147, 147-A, 148, 149, 150, 151, and 152.  Plaintiffs' CSP-related arguments and innuendo is a foundationless and prejudicial side-show, as exemplified by the large number of CSP-related exhibits plaintiffs seek to introduce, the large number of plaintiffs' CSP-related demonstratives, and the large amount of CSP-related testimony they have designated.

At page 44 of the September 18, 2012 pretrial conference, the Court gave the following clear guidance about the link and foundation that plaintiffs had to establish in order to introduce the CSP and the 176-page spreadsheet that plaintiffs' counsel's paralegal found surfing the internet.  The highlighting is added.[1]

---

[1] X-1, September 18, 2012 Hearing Transcript at 44.

PAGE 2 - KBR'S RESPONSE TO PLAINTIFFS' RENEWED ATTEMPT TO ESTABLISH A FOUNDATION FOR THEIR CSP-RELATED EXHIBITS AND ARGUMENTS

2432869v1/012196

```
 1          THE COURT:  Well, I think you presume the
 2    conclusion perhaps the plaintiffs presumed at the outset
 3    that there's relevance.  If there is a link, if the
 4    plaintiffs establish a link that somebody knew and had in
 5    their possession, saw, read, should have known because they
 6    were opening these documents, there seems to be an
 7    inference -- not a powerfully strong one -- that someone
 8    would know that a large volume of chemicals was used, one of
 9    which was sodium dichromate, and that could have influenced
10    KBR's decision.
11          Absent that link, absent some foundational showing
12    of that link, the document doesn't come in, and its
13    relevance isn't established for consideration by the jury in
14    the abstract.  If there is some document out there -- and so
15    what I'm saying to the plaintiffs is I'm not going to grant
16    this motion, but the contingency support plan and the
17    inferences that you drew from it to information about sodium
18    dichromate will only be for the jury if an adequate
19    foundation as to its linkage to KBR's knowledge is drawn.
20    Absent that, it won't come in, or if it comes in
21    inadvertently, there will be an instruction that makes it
22    clear to the jury that this was not an appropriate thing for
23    them to consider.  So I'm going to deny it with that
24    explanation.
```

Almost everything in plaintiffs' brief is designed to mislead this Court as plaintiffs try to

invert and shift their burden of establishing a foundation they know they cannot establish.

PAGE 3 - KBR'S RESPONSE TO PLAINTIFFS' RENEWED ATTEMPT TO ESTABLISH A
FOUNDATION FOR THEIR CSP-RELATED EXHIBITS AND ARGUMENTS

Plaintiffs' lengthy block quote on pages 3-4 of their brief is more than a little misleading. The quoted questions and answers do not relate to Qarmat Ali. There is a reason for that. The testimony comes from pages 122-23, 143-45, and 148 of Reeves' deposition. But plaintiffs' counsel was not asking about Qarmat Ali. Reeves' second deposition started on page 114, but the very first time counsel asked a question specifically about Qarmat Ali was at page 169 line 18, just a few pages before he passed the witness at page 177 line 12. Why? Only through improper innuendo and legerdemain can plaintiffs hope to confuse and mislead enough to fabricate a foundation where none exists.

On pages 5-6 of their brief, plaintiffs cite testimony from KY Tseng, who plaintiffs speculate was "possibly" among KBR's "CSP engineers." Plaintiffs don't cite any support for their speculation, and they know it is wrong. Tseng testified on the first three pages of his deposition (taken by Mr. Doyle) that he was first assigned to Project RIO in March 2003 – months *after* the CSP was completed – and that he was "given zero information by anyone about a facility called Qarmat Ali before [he] left the United States."[2]

On pages 7-8 of their brief, plaintiffs ignore the Court's ruling and try to invert their burden of proof by saying that it is up to KBR to "rebut this inference" about the 176-page spreadsheet (which plaintiffs now refer to as "UN Oil-for-Food documentation"). Plaintiffs are wrong – they're rather obviously trying to shift the focus away from the fact that they have, but cannot meet, the burden of establishing a proper foundation for their proffered exhibits and inferential arguments. Although, as the Court recalls, KBR *did* rebut and reject plaintiffs arguments in connection with the motion to compel and cross-motion for sanctions briefing, and KBR did so with evidence and affidavits. *See* KBR's briefing at Dkt. 315, 375.

---

[2] X-2, Deposition of KY Tseng at 5.23-7.8.

PAGE 4 - KBR'S RESPONSE TO PLAINTIFFS' RENEWED ATTEMPT TO ESTABLISH A FOUNDATION FOR THEIR CSP-RELATED EXHIBITS AND ARGUMENTS

Reeves also rejected plaintiffs' attempt to create a foundation in his recent deposition, although plaintiffs failed to share that information with the Court.  At page 156, plaintiffs lead counsel (Mr. Doyle) finally shows Reeves a copy of PX 27 (the 176-page spreadsheet plaintiffs' paralegal found surfing the internet) and plaintiffs' counsel begins his unsuccessful attempt to get Reeves to say that KBR possessed, saw, or read the document during the CSP work.[3]

> 16    Q.  The particular -- you have in front of you
> 17  what's been marked as Plaintiff Exhibit 27, have you
> 18  seen that document before?
> 19    A.  Yes.
> 20    Q.  Tell us what it is.
> 21    A.  It's a Ministry of Oil listing of equipment for
> 22  all the various portions of -- of the facilities.

At page 159, below, Reeves rejects plaintiffs' suggestions about the 176-page spreadsheet.  Reeves points out that the 176-spreadsheet does *not* even fit the description of the UN document plaintiffs are trying to use as their hook – Table 4 on page 20 of Appendix 4 to Annex X of the CSP has a line item that refers to "***Oil Exports*** under the United Nations Oil-For-Food Programme  2001-2002  United Nations."  Reeves points out that the 176-page spreadsheet is *not* and has nothing to do with the "Oil Exports" although, as plaintiffs' counsel knows, there *is* an Oil Exports document from 2001-2002 on the UN's website that reports on Iraq's oil exports.  The Oil Exports document, of course, bears no resemblance whatsoever to the 176-page spreadsheet which, in turn, does not contain any information about oil exports.

---

[3] X-3, Deposition of Robert Reeves

PAGE 5 - KBR'S RESPONSE TO PLAINTIFFS' RENEWED ATTEMPT TO ESTABLISH A FOUNDATION FOR THEIR CSP-RELATED EXHIBITS AND ARGUMENTS

> 7    Q. Okay. So you can't say it's not this other
> 8    document or it's this document because you've never seen
> 9    it?
> 10    A. But I'm telling you what it says, it says, oil
> 11    exports, which would mean to me, it says how much oil is
> 12    being exported from Iraq in that program.

At page 160, Reeves continues to reject plaintiffs' counsel's insinuations.

> 16    Q. (BY MR. DOYLE) I want to focus on what you can
> 17    tell us under oath. The UN materials available on the
> 18    Iraqi oil infrastructure, whatever was reviewed or not
> 19    reviewed by engineers during this prewar assessment,
> 20    you, program manager, can't tell us what documents are
> 21    in that whole category because you never --
> 22    A. Yes, I can. I can tell you they used the
> 23    United Nations Expert Report because I remember that.
> 24    And this one says above that we got a listing of the oil
> 25    exports from the United -- from the United -- under the

> 161
> 1    United Nations Oil-for-Food Programme, and that says,
> 2    oil exports, and that's -- what that says to me is that
> 3    says how much oil was being produced in that timeframe,
> 4    so we knew how much oil was coming out and what we had
> 5    to try and get back to.
> 6    MR. DOYLE: Nonresponsive.

At page 163, Reeves again rejects plaintiffs' counsel's argument.

> 13    Q. All right. So for example, can you under oath
> 14    say, because you don't know exactly what was part of
> 15    that today, whether or not this document we see as
> 16    Plaintiffs' Exhibit 27 was part of it or not?
> 17    A. Not.
> 18    Q. And the reason you say, not, is you remember it
> 19    page-by-page?
> 20    A. Because this is Ministry of Oil and it's --
> 21    it's a listing from the oil companies of what they need,
> 22    has nothing to do with the United Nations.

PAGE 6 - KBR'S RESPONSE TO PLAINTIFFS' RENEWED ATTEMPT TO ESTABLISH A
FOUNDATION FOR THEIR CSP-RELATED EXHIBITS AND ARGUMENTS

At page 166, Reeves again rejects plaintiffs' counsel's burden-inverting question and explains that "I don't think it was part of the UN documents that we had."

At page 8 of their brief, plaintiffs also say that the CSP and the 176-page spreadsheet are "relevant as a publically-available document that KBR should have reviewed to determine what chemicals were likely to be present...." Plaintiffs are wrong, and they know it. The November 8, 2002 Statement of Work for the CSP expressly provided in ¶ 9.0, titled "Government Furnished Information (GFI)," that "*The U.S. Government will provide the contractor with pertinent information on the Iraqi energy infrastructure to enable the contractor to prepare a plan* that reflects the latest USG knowledge of the existing infrastructure and potential post-hostility situations." And Reeves explained at page 130 that KBR in fact was restricted from "looking for publicly available documents during this assessment."

```
 3    Q.  All right.  Was there any restriction on
 4  looking for publicly available documents during this
 5  assessment?
 6    A.  Yes.
 7    Q.  What was that?
 8    A.  We were restricted to use the information given
 9  to us by the -- by the government to develop the plan,
10  and we were not allowed to go outside for other
11  information.
```

Finally, KBR's counsel asked just a few questions of Reeves at pages 177-179 and Reeves' testimony further undermines plaintiffs' attempt at establishing a foundation where none exists.

PAGE 7 - KBR'S RESPONSE TO PLAINTIFFS' RENEWED ATTEMPT TO ESTABLISH A FOUNDATION FOR THEIR CSP-RELATED EXHIBITS AND ARGUMENTS



21    Q.  May I ask you just a few questions about the

22  Contingency Support Plan that KBR prepared for the U.S.

23  government back in late 2002, early 2003?

24    **A.  Yes.**

25    Q.  Do the words sodium dichromate appear anywhere

6                             178

1  in the 2000-plus page Contingency Support Plan?

2    MR. DOYLE:  Leading, form.

3    **A.  To the best of my knowledge, no.**

4    Q.  (BY MR. HARRISON)  Do the words sodium

5  dichromate relating to Qarmat Ali or any other Iraqi oil

6  infrastructure facility appear anywhere in the

7  Contingency Support Plan?

8    **A.  To the best of my knowledge, no.**

9    MR. DOYLE:  Mr. Reeves, just a moment

10  pause; I don't want to talk over you.

11    Form; leading.  Go ahead.

12    Q.  (BY MR. HARRISON)  From where did KBR receive

13  the information it used to come up with the Contingency

14  Support Plan?

15    **A.  From our client, the U.S. government.**

16    Q.  Okay.  Was KBR allowed to do research beyond

17  the information provided by the U.S. government?

18    **A.  No.**

19    MR. DOYLE:  Leading, form.

20    Q.  (BY MR. HARRISON)  Why not?

21    **A.  Because it was a classified --**

22    MR. DOYLE:  Form.

23    **A.  -- project and doing research outside of the**

24  **information given to us would be breaching that**

25  **classification, and it also, the information given to us**

                                179

1  **to the best of our knowledge was the latest information**

2  **that the government had on the situation and the**

3  **infrastructure.**

Page 179-180

PAGE 8 - KBR'S RESPONSE TO PLAINTIFFS' RENEWED ATTEMPT TO ESTABLISH A
FOUNDATION FOR THEIR CSP-RELATED EXHIBITS AND ARGUMENTS

2432869v1/012196

13      Q. (BY MR. HARRISON)  Did the Plaintiff lawyer in

14    his questioning of you show you any document or evidence

15    indicating that KBR knew anything about sodium

16    dichromate at Qarmat Ali during the contingency planning

17    work?

18         A. No --

19              MR. DOYLE:  Leading, form.

20         A. -- he didn't.

21      Q. (BY MR. HARRISON)  Did he have the opportunity

22    to do that?

23              MR. DOYLE:  Leading, form.

24         A. Yes.

25      Q. (BY MR. HARRISON)  Have you read the

                                                              180

1    Plaintiffs' legal papers on the subject of the

2    Contingency Support Plan and sodium dichromate?

3         A. Yes.

4      Q. Did the Plaintiffs in their legal papers have

5    any indication of sodium dichromate being known to KBR?

6              MR. DOYLE:  Leading, form.

7         A. No.

Plaintiffs have failed to establish the legally and factually requisite foundation for their

false and prejudicial inferential arguments based on the CSP and the 176-spreadsheet that is not

mentioned or referenced anywhere in the CSP.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

PAGE 9 - KBR'S RESPONSE TO PLAINTIFFS' RENEWED ATTEMPT TO ESTABLISH A
FOUNDATION FOR THEIR CSP-RELATED EXHIBITS AND ARGUMENTS

<u>Conclusion</u>

This Court should sustain KBR's MIL 2 and should sustain KBR's objections to PX numbers 13, 15, 15-A, 18, 19, 19-A, 27, 27-A, 118, 146, 147, 147-A, 148, 149, 150, 151, and 152.

Dated October 5, 2012.

Respectfully submitted,

/s/ Geoffrey L. Harrison
Geoffrey L. Harrison (Admitted *Pro Hac Vice*)
Texas State Bar No. 00785947
S.D. Admissions No. 16690
gharrison@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 653-7807
Facsimile:  (713) 654-6666

Attorney-in-Charge for Defendants KBR, Inc.,
Kellogg Brown & Root Services, Inc.,
KBR Technical Services, Inc.,
Overseas Administration Services, Ltd.,
and Service Employees International, Inc.

Of Counsel:

Jeffrey S. Eden
jeden@schwabe.com
SCHWABE, WILLIAMSON &WYATT
1211 SW 5th Avenue, Suite 1900
Portland, Oregon 97204
Telephone:  (503) 796-2837
Facsimile:  (503) 796-2900

PAGE 10 - KBR'S RESPONSE TO PLAINTIFFS' RENEWED ATTEMPT TO ESTABLISH A
FOUNDATION FOR THEIR CSP-RELATED EXHIBITS AND ARGUMENTS

Vineet Bhatia
Texas State Bar No. 00795976
S.D. Admissions No. 20187
vbhatia@susmangodfrey.com
J. Hoke Peacock III (Admitted *Pro Hac Vice*)
Texas State Bar No. 15673980
S.D. Admissions No. 13529
tpeacock@susmangodfrey.com
Johnny W. Carter (Admitted *Pro Hac Vice*)
State Bar No. 00796312
S.D. Admissions No. 21988
jcarter@susmangodfrey.com
Chanler A. Langham (Admitted *Pro Hac Vice*)
Texas State Bar No. 24053314
S.D. Admissions No. 659756
clangham@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666

Jordan Connors (Admitted *Pro Hac Vice*)
Washington State Bar No. 416499
jconnors@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue
Seattle, Washington 98101
Telephone:  (206) 516-3880
Facsimile:  (206) 516-3883

Raymond B. Biagini (Admitted *pro hac vice*)
rbiagini@mckennalong.com
Kurt J. Hamrock
khamrock@mckennalong.com
MCKENNA LONG & ALDRIDGE LLP
1900 K Street NW, Suite 100
Washington, D.C. 20006-11808
Telephone:  (202) 496-7500
Facsimile:  (202) 496-7756

PAGE 11 - KBR'S RESPONSE TO PLAINTIFFS' RENEWED ATTEMPT TO ESTABLISH A
FOUNDATION FOR THEIR CSP-RELATED EXHIBITS AND ARGUMENTS

Warren W. Harris (Admitted *pro hac vice*)
warren.harris@bgllp.com
BRACEWELL & GIULIANI LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2770
Telephone:  (713) 221-1490
Facsimile:  (713) 221-2199

PAGE 12 - KBR'S RESPONSE TO PLAINTIFFS' RENEWED ATTEMPT TO ESTABLISH A
FOUNDATION FOR THEIR CSP-RELATED EXHIBITS AND ARGUMENTS