Geoffrey L. Harrison, admitted *Pro Hac Vice*
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 653-7807; Fax: (713) 654-6666
Email: gharrison@susmangodfrey.com
     Attorney-in-Charge for KBR Defendants

Jeffrey S. Eden, OSB #851903
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, Oregon 97204
Telephone: (503) 222-9981; Fax: (503) 796-2900
     Local Counsel for KBR Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ROCKY BIXBY, et al, | CIVIL NO. 3:09-cv-632-PK |
| Plaintiffs, | |
| vs. | KBR'S RESPONSE TO PLAINTIFFS' "MEMORANDUM IN OPPOSITION TO CONTINUED GAG ORDER" |
| KBR INC., et al., | |
| Defendants. | |
| | ORAL ARGUMENT REQUESTED |

     Plaintiffs have not provided this Court with a valid factual or legal basis to rescind or modify the Court's order restricting the parties, counsel, and their representatives from making public comments about this litigation, from publicly disseminating documents and testimony, and from posting this and other case-related information on internet websites. This Court should maintain its current order.

I.

PAGE 1 - KBR'S RESPONSE TO PLAINTIFFS' "MEMORANDUM IN OPPOSITION TO CONTINUED GAG ORDER"

2486763v1/012196

Court's Authority to Control and Manage this Litigation

FRCP 16 confers on this Court considerable authority and discretion in deciding how to manage and control this litigation. This Court also has the inherent power to manage and control this litigation. In *Clackamas County v. Midwest Employers Casualty Co.,* 2010 WL 5391577 (Dec. 22, 2010) (Papak, J.), this Court explained that:

> It is well established that the district courts enjoy an inherent power to manage and control their own dockets. *See, e.g., Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936) (affirming "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). It is clear that this inherent power includes the authority to sanction procedural impropriety in an appropriate manner. *See, e.g., Chambers v. NASCA, Inc.,* 501 U.S. 32, 44-45 (1991) (noting that "[a] primary aspect" of the courts' inherent power "is the ability to fashion an appropriate sanction for conduct which abuses the judicial process;" holding that because "outright dismissal of a lawsuit. . . is within the court's discretion," in consequence less severe sanctions are "undoubtedly within a court's inherent power as well"); *Atchison, T. & S.F Ry. v. Hercules Inc.,* 146 F.3d 1071, 1074 (9th Cir. 1998) ("well established that district courts have inherent power to control their dockets and may impose sanctions, including dismissal, in the exercise of that discretion") (citations, internal quotation marks omitted); *see also Lamos v. Astrue,* 2008 U.S. App. LEXIS 9143 (9th Cir. 2008) (unpublished disposition) (affirming inherent power of the courts to strike documents other than pleadings from the docket); *Centillium Communs., Inc. v. Atl. Mut. Ins. Co.,* 2008 U.S. Dist. LEXIS 20719 (D. Cal. 2008) (striking a procedurally improper motion pursuant to the court's inherent power).

*See also Cohen v. Carreon*, 94 F. Supp. 2d 1112, 1115 (D. Or. 2000); *Thompson v. Housing Auth. of City of Los Angeles*, 782 F. 2d 829, 831 (9th Cir. 1986) (affirming dismissal due to plaintiff's counsel's history of inexcusable delay and neglect and stating "District courts have inherent power to control their dockets." (citing *Link v. Wabash Railroad Co.,* 82 S.Ct. 1386 (1961))); *see also Ferdik v. Bonzalet,* 963 F.2d 1258, 1260 (9th Cir. 1992) ("District courts have the inherent power to control their dockets…."); *Journal Pub. Co. v. Mechem,* 801 F.2d 1233, 1236 (10th Cir. 1986) ("trial courts have a wide discretion in being able to protect the judicial process from influences that pose a danger to effective justice").

CONTINUED GAG ORDER"

2486763v1/012196

In *Robinson v. Cannard,* 2009 WL 4042914 (D. Or. Nov. 19, 2009) (Brown, J.), this district court granted a stay of trial and explained that:

> A federal district court has the inherent power to control its own docket and calendar. *Mediterranean Enter., Inc. v. Ssangyong Constr. Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983). *See also* FRCP 16. The district court should weigh the following competing interests to determine whether to exercise its discretion to stay proceedings:
>
>> [T]he possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of simplifying or complicating issues, proof, and questions of law which could be expected from a stay.

(Citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)).[1]

II.

Restrictions on Parties and Counsel are Common, Proper, and Constitutional

In *Patterson v. Colorado*, 205 U.S. 454, 462 (1907), the U.S. Supreme Court explained that "The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *See also U.S. v. Weisman*, 736 F.2d 421, 424 (7th Cir. 1984) ("It is a fundamental principle of our jurisprudence that 'the jury's verdict must be based on evidence

---

[1] This Court's power to manage and control this litigation extends to the decision about whether to stay subsequent trials pending the appeal of the first trial group. In *In Re Korean Air Lines Co., Ltd.*, 642 F. 3d 685, 698-700 (9th Cir. 2011), the Ninth Circuit explained in the MDL context that "To promote efficiency in a context involving the juggling of dozens or thousands of independent cases, a 'district court needs to have broad discretion to administer the proceeding as a whole.' It can hold some cases in abeyance while proceeding with others. In discretionary matters going to the phasing, timing, and coordination of the cases, the power of the MDL court is at its peak." (quoting *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1232 (9th Cir.2006)); *Clinton v. Jones,* 520 U.S. 681, 706-07 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket. *See, e.g., Landis* v. *North American Co.*, 299 U. S. 248, 254 (1936).").

PAGE 3 - KBR'S RESPONSE TO PLAINTIFFS' "MEMORANDUM IN OPPOSITION TO CONTINUED GAG ORDER"

received in open court, and not from outside sources.'" (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 351 (1966))).

In *Latiolais v. Whitley*, 93 F.3d 205, 207 (5th Cir. 1996), the Fifth Circuit explained that "There is a constitutional right to a fair trial in a civil case." (quoting *Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993)). In *Bailey v. Systems Innovation, Inc.*, 852 F.2d 93, 97 (3rd Cir. 1998), the Third Circuit note that "The Supreme Court has recognized that conflict between freedom of speech and the right to a fair trial is no less troubling in the non-criminal context."

Without case-specific support or citation, plaintiffs incorrectly say at page 9 that "as the first trial of this case demonstrated, any pretrial and trial knowledge of publicity (which now has reached the arena of public record) can be handled with appropriate voir dire." To the contrary, the facts undermine plaintiffs' unsupported assertion. During the voir dire in this case, multiple potential and actual jurors – including the man who would become the jury foreman – were poisoned by prejudicial comments made by members of the venire panel based on "pretrial and trial knowledge" almost certainly including plaintiffs' counsel's prodigious and prejudicial work creating and fomenting publicity.

The case law also undermines plaintiffs' unsupported assertions. Indeed, plaintiffs got it 180 degrees wrong in their mis-citation of the Ninth Circuit's decision in *Levine v. U.S. District Court,* 764 F.2d 590, 595 (9th Cir. 1985). Plaintiffs incorrectly told this Court at page 5 that *Levine* stands for the notion that "A higher standard of review is employed when the order is challenged by those whose speech is directly restrained, e.g. trial participants." (The quote is from plaintiffs' brief, not from *Levine*.) In fact, the *Levine* Ninth Circuit held the opposite:

> We note that the district court's order applies only to trial participants. The Supreme Court has suggested that it is appropriate to impose greater restrictions on the free speech rights of trial participants than on the rights of nonparticipants. *Sheppard v. Maxwell,* 384 U.S. 333, 360-63, 16 L. Ed. 2d 600, 86 S. Ct. 1507

PAGE 4 - KBR'S RESPONSE TO PLAINTIFFS' "MEMORANDUM IN OPPOSITION TO CONTINUED GAG ORDER"

> (1966); *see Nebraska Press Association,* 427 U.S. at 564. The case for restraints on trial participants is especially strong with respect to attorneys.
>
> …
>
> We also note that several courts have considered similar restraining orders. The overwhelming majority of those courts have upheld the restraining orders.

764 F.2d. at 595-96 (citing many cases).

In *U.S. v. Brown*, 218 F.3d 415, 420 (5th Cir. 2000), the Fifth Circuit affirmed the district court's refusal to vacate or modify its "gag order that prohibits attorneys, parties, or witnesses from discussing with 'any public communications media" anything about the case "which could interfere with a fair trial,' including statements 'intended to influence public opinion regarding the merits of this case,' with exceptions for matters of public record and matters such as assertions of innocence." The Fifth Circuit explained in that criminal case that:

> This duty comports with the constitutional status of all First Amendment freedoms, which are not absolute but must instead be "applied in light of the special characteristics of the [relevant] environment." *Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969). Indeed, "[a]lthough litigants do not 'surrender their First Amendment rights at the courthouse door,' those rights may be subordinated to other interests that arise" in the context of both civil and criminal trials. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 2207-08 n. 18, 81 L.Ed.2d 17 (1984).

*Id.* at 424.

In *Marceaux v. Lafayette City-Parish Consolidated Gov't,* 2012 WL 4194521 (W.D. La. Sept 19, 2012), the court cited the Fifth Circuit's decision in *Brown* and applied it to the civil case before it, found that "a gag order is appropriate," and ordered that plaintiffs' website be taken down "because the website not only contains comments and information that would violate Rule 4.4, it is and has been used as a vehicle by which to disseminate inappropriate information to the media and the public." *See also U.S. v. Hill,* 420 Fed.Appx. 407 (5th Cir. April 1, 2011) (affirming convictions for criminal contempt for violating a gag order, and finding that

underlying gag order limiting the parties' and counsel's extra-judicial statements was sufficiently specific).

In *In re Application of Dow Jones & Company, Inc.,* 842 F.2d 603, 605 (2d Cir. 1988), the Second Circuit affirmed the district court's gag order "restraining trial participants in a criminal case from speaking with the press" for several months before trial. The court noted that "Although the restraining order in this case limits the flow of information readily available to the news agencies – and for that reason might have an effect similar to that of a prior restraint – the fact that the order is not directed at the news agencies and that they therefore cannot be haled into court for violating its terms deflates what would otherwise be a serious concern regarding judicial censorship of the press. For this reason the order is considerably less intrusive of First Amendment rights than one directly aimed at the press." *Id.* at 608.

In *U.S. v. Scrushy*, 2004 WL 848221 (N.D. Ala. April 13, 2004), the court imposed a gag order "restricting extrajudicial statements by participants in this case" and "conclude[d] that the best approach to 'curing' the effects of pretrial publicity involves 'those remedial measures that will prevent the prejudice at its inception.' *Sheppard,* 384 U.S. at 362-63. While the court anticipates a rigorous voir dire and 'emphatic' jury instructions, the prophylactic measure of a restraint on extra-judicial comments by the trial participants plays an essential role in ensuring a fair trial in this case." In this case, in connection with its current and prior order, this Court considered the parties' arguments and other possible approaches, including those noted in *Sheppard v. Maxwell,* 86 S.Ct. 1507, 1522 (1966), such as change of venue, jury sequestration, "searching voir dire," and "emphatic" jury instructions. Still "the prophylactic measure of a restraint on extra-judicial comments by the trial participants" is proper and essential in this case.

This Court's order restricting the parties, counsel, and their representatives from making extrajudicial statements and internet postings is a proper and constitutional exercise of this Court's authority to manage and control this litigation and protect against further prejudice of the jury pool in the event of a new trial or subsequent trials.

III.

Rule of Professional Conduct 3.6

Plaintiffs incorrectly say at page 7 that Oregon Rule of Professional Conduct 3.6 (and ABA Model Rule of Professional Conduct 3.6) "prohibit restraint against counsel disseminating information of public record." Wrong. Those rules impose a default prohibition on lawyers from making extrajudicial statements they "reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." Nothing in Rule 3.6 prohibits a court from imposing restrictions on what parties and counsel may say or publish, particularly when there is a legitimate concern about prejudicing the jury pool. Plaintiffs did not cite any case from any jurisdiction applying Rule 3.6 in that way, and we are not aware of any.

Plaintiffs acknowledge as they must that their attempted reliance on the phrase "information contained in a public record" offers this Court, the jury pool, and the parties little comfort or guidance. Plaintiffs admit at page 10 that "there is no settled definition of 'information contained in a public record,'" but then plaintiffs cite exactly one case – *Attorney Grievance Commission v. Gansler,* 835 A.2d 548 (Md. 2003) – for the proposition that, plaintiffs say, "the phrase should be construed 'in its broadest form' to include anything in the public domain, including public court documents, media reports, and comments made by police officers."

PAGE 7 - KBR'S RESPONSE TO PLAINTIFFS' "MEMORANDUM IN OPPOSITION TO CONTINUED GAG ORDER"

2486763v1/012196

Plaintiffs' pre-verdict penchant for false and misleading citations in their briefing apparently continues post-verdict as well. Just as plaintiffs' falsely misrepresented the Ninth Circuit's holding in *Levine,* plaintiff also know they are playing mighty fast and loose by telling this Court that the Maryland court's decision in *Gansler* stands for the proposition that the phrase "information contained in a public record" "should be construed in its broadest form." *Gansler* says the opposite. The *Gansler* court noted "the balance and interplay of the numerous interests, rights, and responsibilities involved" in Rule 3.6, and explained that

> One outside circumstance that may affect a defendant's right to a fair trial and, specifically, his right to an impartial jury, occurs when an attorney makes a publicized, out-of-court statement about the defendant's case….On the other hand, when the attorney has some professional relationship to a matter, the attorney's freedom to speak about it is not as broad. For instance, inside the courtroom, the rules of evidence and principles of relevance place rigid restrictions upon what an attorney may say, and when and how he or she may speak. Even outside the courtroom, the speech of a lawyer may be curtailed to an extent greater than an ordinary citizen's.

*Id.* at 559-560. The *Gansler* court explained that the absence of pre-*Gansler* guidance on the meaning of the phrase "information contained in the public record" required it "to construe the phrase in its broadest form *as applied to Gansler in this case* and to any other extrajudicial statements made *prior to the filing of this Opinion."* *Id.* at 567. (Plaintiffs of course omitted the full sentence.) But here's the kicker. The *Gansler* court made very clear what should happen going forward:

> Additionally, lawyers who make extrajudicial statements in the future will not find shelter in the broad definition of MRPC 3.6(c)(2) that we apply here. Public policy mandates a more limited definition of "information in a public record." We believe that, to best "protect[] the right to a fair trial and safeguard the right of free expression," the phrase "information in a public record" should refer only to public government records – the records and papers on file with a government entity to which an ordinary citizen would have lawful access….Furthermore, by strictly limiting what is considered a public record, this definition enables all of the components of MRPC 3.6 to filter objectionable publicity, preventing the

PAGE 8 - KBR'S RESPONSE TO PLAINTIFFS' "MEMORANDUM IN OPPOSITION TO CONTINUED GAG ORDER"

2486763v1/012196

"public record" exception from swallowing the general rule of restricting prejudicial speech.

*Id.* at 569.  Incidentally, the Maryland court found that prosecutor Gansler violated Maryland Rule of Professional Conduct 3.6 and sanctioned him.  *Id.* at 574-575.

During last week's phone hearing, plaintiffs' counsel also misrepresented the holding of the U.S. Supreme Court's decision in *Nebraska Press*.  KBR's counsel called him on the miscitation, and the case is not cited anywhere in plaintiffs' brief.

Plaintiffs' misleading citation of the U.S. Supreme Court's 1947 decision in *Craig v. Harney,* 67 S.Ct. 1246 (1947) is more of the same.  Plaintiffs mentioned this case at the phone hearing as well, and now consign it to the second paragraph of footnote 1, and even then misrepresent the case.  In *Craig,* the Court considered a Texas state court's finding that the petitioner journalists were guilty of criminal contempt for publishing newspaper articles highly critical of the way the state trial court presided over a forcible entry case.  *Id.* at 1248-49.  The case did not involve restrictions on parties or counsel. The case did not involve a gag order.  The case did not even involve any prior restraint.  Thus, when plaintiffs cited the *Craig* case for the stand-alone proposition that "A trial is a public event.  What transpires in the court room is public property…," plaintiffs intentionally omitted the immediately preceding sentence in which the Court provides context and says "We start with the news articles."  The *Craig* Court did not hold, and the case does not stand for the notion, that trial courts are prohibited from imposing gag orders that restrict parties and counsel from disseminating information introduced at trial.

Nothing in Rule 3.6 or any other authority cited by plaintiffs undermines this Court's authority to issue its order.  And plaintiffs have not established policy or other persuasive reasons for this Court to allow plaintiffs' counsel to resume their pattern and practice of prejudicing the jury pool through public pronouncements and postings.

PAGE 9 - KBR'S RESPONSE TO PLAINTIFFS' "MEMORANDUM IN OPPOSITION TO CONTINUED GAG ORDER"

IV.

KBR's SEC Filings and Plaintiffs' Practice of Abuse

Plaintiffs say on page 11 that they are "certainly mindful of KBR's obligations, as a publically traded company, to publically report on matters germane to its stockholders," and plaintiffs do not suggest that this Court intended its gag order to trump SEC reporting requirements. Yet, in their next breath, plaintiffs seem to complain about KBR's legally required SEC filings and try to use them as a hook to avoid this Court's gag order.

KBR's SEC filings speak for themselves and are proper and accurate. Plaintiffs' temporally challenged complaint on pages 11-13 about KBR's description of this litigation in KBR's 2011 10-K ignores the fact that KBR issued its 2011 10-K nearly a year ago, many months before the Court's gag order and many months before the verdict. In making their comments about KBR's November 6 8-K and the November 2 release it references, plaintiffs overlook KBR's public reporting and SEC obligations. As well, KBR's SEC filings in the immediate wake of the verdict are in compliance with the Court's temporary abatement of the gag order to permit the parties and counsel to comment on the verdict.

Plaintiffs' counsel, however, have a demonstrated tendency to try to inflame whatever audience they can reach through misstatements, misrepresentations, and by ignoring the facts. Plaintiffs' counsel's history of misrepresentations on the Doyle Raizner website (and previously on the kbrlitigation.com website they operate) continues to this day despite and in defiance of this Court's order. As of 2.30pm PST today, the Doyle Raizner website has a clickable section titled "Military Contractor Claims" that includes this false statement: "At Doyle Raizner, our recent work pursuing claims against military contractors has focused on continuing litigation over our soldiers' exposure to the known cancer-causing chemical hexavalent chromium — also

PAGE 10 - KBR'S RESPONSE TO PLAINTIFFS' "MEMORANDUM IN OPPOSITION TO CONTINUED GAG ORDER"

known as sodium dichromate — at facilities and sites operated by the Houston-based engineering and construction company KBR, Inc." *See* http://www.doyleraizner.com/claims-against-military-contractors. This falsely states that there was sodium dichromate at multiple "facilities and sites" operated by KBR when, in fact, there is only one facility and site (Qarmat Ali) and it is not now and never was "operated by" KBR.

Doyle Raizner's website also has a section titled "What's New at DR?" with a clickable link to Doyle Raizner's own PRNewswire press release titled "Jury Awards $85 Million to Iraq Vets, KBR Negligent in Toxic Exposure Trial." *See* http://www.doyleraizner.com/qarmat-ali-sodium-dichromate-litigation. The press release contains today the same false, inflammatory, and prejudicial statements it contained when Doyle Raizner issued it on November 2.

- Doyle Raizner's November 2 press release falsely says "The trial included videotape testimony of Indiana National Guard Lt. Col. James Gentry, who died in 2009 of lung cancer linked by the Veterans Administration to the sodium dichromate exposure at Qarmat Ali." There was no evidence at trial that, as plaintiffs falsely and very publicly say, Gentry's lung cancer was "linked by the Veterans Administration to the sodium dichromate exposure at Qarmat Ali." The medical and scientific evidence from Gentry's own medical files disproves plaintiffs' counsel's false assertion. Plaintiffs' counsel's express and implied statement that the trial included such evidence is false and intentionally misleading. The evidence at trial from plaintiffs' own expert Carson was that he could *not* link anyone's cancer or cancer risk to sodium dichromate exposure, that cancer has dozens of causes unrelated to anything in this case, that he could *not* identify any plaintiff who he thought would get cancer, and that he could not say that any plaintiff had any increased risk of getting cancer in the future, not even 1/1,000,000%.

- Doyle Raizner's November 2 press release falsely says that "Sodium dichromate contains hexavalent chromium, a known carcinogen banned in the U.S." Sodium dichromate is manufactured in the United States today, is available for purchase over the internet and, as the evidence at trial showed, still is used today in many industries.

- Doyle Raizner's November 2 press release falsely says that "Trial evidence included KBR documents noting a "serious health problem" at Qarmat Ali and "almost 60% of the people now exhibit the symptoms" of sodium dichromate exposure." It is remarkable that plaintiffs' counsel chose to include this one piece of "evidence" in their press release when their own client is the source of the statement and admitted that it was "unprofessional" of him to say so and admitted he had no data to support the statement.

PAGE 11 - KBR'S RESPONSE TO PLAINTIFFS' "MEMORANDUM IN OPPOSITION TO CONTINUED GAG ORDER"

2486763v1/012196

- Doyle Raizner's November 2 press release falsely says that "The soldiers testified they have health problems, including respiratory, skin, gastrointestinal, and lung issues because of the toxic exposure." Plaintiffs' counsel are trying to propagate their false and misleading talking point that everyone who went to Qarmat Ali has health issues, like the ones they list. That's just plain wrong, and plaintiffs' counsel know it. Multiple plaintiffs, including some with the longest claimed time at Qarmat Ali, testified that they are healthy and did not have any symptoms at Qarmat Ali, and do not have any health issues today. Plaintiffs' own medical expert admitted this as well, and also admitted that many of the ailments at issue have dozens and even hundreds of other causes.

Doyle Raizner's press release is linked from the Doyle Raizner website and is available at http://www.prnewswire.com/news-releases/jury-awards-85-million-to-iraq-vets-kbr-negligent-in-toxic-exposure-trial-according-to-doyle-raizner-llp-and-co-counsel-177060021.html.

The false, inflammatory, misleading, and prejudicial nature of plaintiffs' counsel's public misstatements further demonstrate the propriety and necessity of this Court's order. Indeed, plaintiffs' counsel have flouted and violated the Court's order, and they should be sanctioned for their misconduct.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

V.

<u>Conclusion</u>

This Court should maintain its current restrictions on the parties, counsel, and their representatives with the specificity already provided in the Court's oral rulings on the record.

Dated: November 16, 2012.

                                                  Respectfully submitted,

                                                  */s/ Geoffrey L. Harrison*
                                                  Geoffrey L. Harrison (Admitted *Pro Hac Vice*)
                                                  Texas State Bar No. 00785947
                                                  S.D. Admissions No. 16690
                                                  gharrison@susmangodfrey.com
                                                  SUSMAN GODFREY L.L.P.
                                                  1000 Louisiana Street, Suite 5100
                                                  Houston, Texas 77002-5096
                                                  Telephone: (713) 653-7807
                                                  Facsimile: (713) 654-6666

                                                  Attorney-in-Charge for Defendants KBR, Inc.,
                                                  Kellogg Brown & Root Services, Inc.,
                                                  KBR Technical Services, Inc.,
                                                  Overseas Administration Services, Ltd.,
                                                  and Service Employees International, Inc.

Of Counsel:

Jeffrey S. Eden
jeden@schwabe.com
Christiane R. Fife
cfife@schwabe.com
SCHWABE, WILLIAMSON & WYATT
1211 SW 5th Avenue, Suite 1900
Portland, Oregon 97204
Telephone: (503) 796-2837
Facsimile: (503) 796-2900

PAGE 13 - KBR'S RESPONSE TO PLAINTIFFS' "MEMORANDUM IN OPPOSITION TO CONTINUED GAG ORDER"

2486763v1/012196

Vineet Bhatia
Texas State Bar No. 00795976
S.D. Admissions No. 20187
vbhatia@susmangodfrey.com

J. Hoke Peacock III (Admitted *Pro Hac Vice)*
Texas State Bar No. 15673980
S.D. Admissions No. 13529
tpeacock@susmangodfrey.com
Johnny W. Carter (Admitted *Pro Hac Vice)*
State Bar No. 00796312
S.D. Admissions No. 21988
jcarter@susmangodfrey.com
Chanler A. Langham (Admitted *Pro Hac Vice)*
Texas State Bar No. 24053314
S.D. Admissions No. 659756
clangham@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Jordan Connors (Admitted *Pro Hac Vice)*
Washington State Bar No. 416499
jconnors@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue
Seattle, Washington 98101
Telephone: (206) 516-3880
Facsimile:  (206) 516-3883

Raymond B. Biagini (Admitted *pro hac vice)*
rbiagini@mckennalong.com
Kurt J. Hamrock
khamrock@mckennalong.com
MCKENNA LONG & ALDRIDGE LLP
1900 K Street NW, Suite 100
Washington, D.C. 20006-11808
Telephone:  (202) 496-7500
Facsimile:  (202) 496-7756

PAGE 14 - KBR'S RESPONSE TO PLAINTIFFS' "MEMORANDUM IN OPPOSITION TO CONTINUED GAG ORDER"

2486763v1/012196

Warren W. Harris (Admitted *pro hac vice*)
warren.harris@bgllp.com
BRACEWELL & GIULIANI LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2770
Telephone:  (713) 221-1490
Facsimile:   (713) 221-2199

PAGE 15 - KBR'S RESPONSE TO PLAINTIFFS' "MEMORANDUM IN OPPOSITION TO CONTINUED GAG ORDER"

2486763v1/012196