**David F. Sugerman, OSB No: 86298**
David F. Sugerman Attorney, PC
707 SW Washington Street, Suite 600
Portland, Oregon 97205
Phone: 503-228-6474
Fax: 503-228-2556
E-Mail: david@davidsugerman.com

**Michael Patrick Doyle,** *Pro Hac Vice*
**Jeffrey L. Raizner,** *Pro Hac Vice*
**Patrick M. Dennis,** *Pro Hac Vice*
Doyle Raizner LLP
1221 McKinney, Suite 1400
Houston, TX 77010
Phone: 713.571.1146
Fax: 713.571.1148
E-mail: mdoyle@doyleraizner.com
       jraizner@doyleraizner.com
       pdennis@doyleraizner.com

Of Attorneys for Plaintiffs
(Additional Counsel on last page)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| Rocky Bixby, et al, | Case No. 3:09-CV-632-PK |
| Plaintiff, | **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF ADDITIONAL AUTHORITIES IN OPPOSITION TO CONTINUED GAG ORDER** |
| vs. | |
| KBR Inc., et al, | |
| Defendant. | |

Page 1 -   PLAINTIFFS' SUPPLEMENTAL MEMO OF ADDITIONAL AUTHORITIES Re GAG ORDER

### A. Overview

After filing their Reply in Opposition to Continued Gag Order (Dkt No. 625), the Veterans' counsel learned that KBR recently filed a case against the United States seeking indemnification under the RIO Contract. The case, Kellogg Brown & Root Services, Inc. v. United States, U.S. Federal Court of Claims, Case No. 1:12-cv-00780LJB, was commenced November 16, 2012. The Veterans attach a copy of the complaint (Dkt No. 1). Appendix 1.

The indemnification action raises a number of issues and highlights the uneven playing field posed by the outer reaches of the gag order. Under the terms of the gag order, it is unclear whether counsel for the Veterans may discuss the merits of the indemnification action with the government, whether they may discuss the allegations in the indemnification action or its commencement with members of Congress, whether they may post copies of public documents, like the complaint, on their websites, or whether they may comment upon the indemnification action in the press.

### B. Allegations in the Indemnification Action

There are matters of interest to the Veterans and to the public at large. In the indemnification action, KBR alleges, contrary to the evidence adduced in this case, that the U.S. was required to perform an environmental assessment before KBR could begin work. App1, p. 5, ¶¶24-25, that KBR "later discovered" that for years the Iraqis routinely used sodium dichromate at Qarmat Ali, App1, p. 2, ¶6, and that the government breached its duty to cooperate in defense of the action, App1, p. 7, ¶35. KBR also alleges that it has incurred legal fees in excess of $15 million to date. App1, p. 7, ¶36.

### C. The Problem of Vagueness

The indemnification action, which was filed by counsel of record in this case, produces unanticipated questions and issues for the parties and the Court. To be sure, the Court has authority to circumscribe speech in the courtroom; however, restraint of attorney speech is

Page 2 - PLAINTIFFS' SUPPLEMENTAL MEMO OF ADDITIONAL AUTHORITIES Re GAG ORDER

reserved for the rare case. *Gentile v. State Bar*, 501 U.S. 1030, 1053-56 (1991). Part of the problem is that the scope of prohibition is not clear to Veterans' counsel. For example, have Veterans' counsel run afoul of the Court's view of the gag order by speaking to lawyers for the government on issues of common concern? The same question arises if Veterans' counsel undertakes to speak to members of Congress or their staff, or if they answer questions from the press about this independent action commenced by KBR. To prohibit Veterans' counsel from speaking in each of these instances gives unfettered discretion to KBR to claim whatever it will, without regard to the bother of contrary information.

At bottom, this new case strongly supports the Veterans' position that the Court should limit the gag order operation to a period in advance of trial that will reasonably relate to limiting potential prejudice in the form of a tainted jury. Anything more chills the flow of information and puts the Veterans at an unfair disadvantage.

## CONCLUSION

The Court should lift the gag order until 30 days before the next trial, at which time the parties can then focus on the next trial.

DATED this 21st day of November, 2012.

_____
David F. Sugerman, OSB No: 86298
David F. Sugerman Attorney, PC
707 SW Washington Street, Suite 600
Portland, Oregon 97205
Phone: 503-228-6474
Fax: 503-228-2556
E-Mail: david@davidsugerman.com

Michael P. Doyle, *Pro Hac Vice*
Jeffrey L. Raizner, *Pro Hac Vice*
Patrick M. Dennis, *Pro Hac Vice*
Doyle Raizner LLP

Page 3 -   PLAINTIFFS' SUPPLEMENTAL MEMO OF ADDITIONAL AUTHORITIES Re GAG ORDER

1221 McKinney, Suite 1400
Houston, TX 77010
Phone: 713.571.1146
Fax: 713.571.1148
E-mail: mdoyle@doyleraizner.com
       jraizner@doyleraizner.com
       pdennis@doyleraizner.com

Amy Johnson
Amy Johnson Attorney-at-Law
2523 SE 30th Avenue
Portland, OR 97202
Phone: 503-939-2996
E-mail: amy@savagejohnson.com

Gabriel Hawkins
Cohen & Malad, LLP
One Indiania Square, Suite 1400
Indianapolis, IN 46204
Phone: 317-636-6481
Fax: 317-636-2593
E-mail: ghawkins@cohenandmalad.com

# Appendix 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

FILED
NOV 1 6 2012
U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| KELLOGG BROWN & ROOT SERVICES, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 12-780-C |

## COMPLAINT

Plaintiff, Kellogg Brown & Root Services, Inc. ("KBRSI") files its Complaint against the United States of America (the "government") appealing a contracting officer's final decision under the Contract Disputes Act ("CDA"). For its Complaint, KBRSI alleges the following:

### PARTIES

1.  KBRSI is a corporation incorporated in the State of Delaware, with its principal place of business located at 601 Jefferson Street, Houston, Texas 77002.

2.  The government is acting by and through the Department of the Army, Fort Worth District, Corps of Engineers ("USACE"), Fort Worth, Texas.

### INTRODUCTION

3.  Through Contract No. DACA63-03-D-0005 (the "RIO contract"), a cost reimbursement, award fee contract, the USACE engaged Brown & Root Services, a division of Kellogg Brown & Root, to assist in assessing, refurbishing, and rebuilding the Iraqi oil infrastructure. These services were in support of Operation Iraqi Freedom and the government's "Restore Iraqi Oil" ("RIO") program. Effective August 1, 2003, the contract was novated and transferred to KBRSI.

APPENDIX 1

4. The contract contains an indemnification provision (specified at FAR 52.250-1) in accordance with Public Law 85-804 and FAR Part 50, Subpart 50.1, under the terms of which the USACE agreed in 2003 to indemnify KBRSI against "unusually hazardous" risks arising out of KBRSI's contract performance in Iraq ("the indemnification agreement"). The actual terms of the indemnification provision are classified as "SECRET."

5. The actual work performed by KBRSI was described in various "task orders" issued by the USACE as part of the RIO contract. Task Order 3, which the USACE issued on March 20, 2003, required KBRSI to provide emergency response tasks for Iraqi oil restoration and was "intended to support immediate actions by the US and coalition forces to respond to oil well fires and oil spills, and to prevent or mitigate significant hazards or damage to oil facilities."

6. Pursuant to Task Order 3, the USACE directed KBRSI to perform work at many Iraqi oil infrastructure facilities in 2003. Because of the ongoing dangerous conditions at that time in Iraq, the government provided force protection to KBRSI personnel. One such facility was the Qarmat Ali Water Treatment Plant ("Qarmat Ali"), which was an outdated, Soviet-era facility that had suffered substantial damage from pre-invasion neglect, looting, and vandalism, only weeks following the March invasion. Hostilities were ongoing and riots and other physical threats, including unexploded ordnance, persisted while KBRSI performed its restoration work. It was later discovered that for years the Iraqis routinely had used sodium dichromate, a potentially hazardous anti-corrosive, at Qarmat Ali.

7. Beginning in late 2008, various legal actions were filed against KBRSI. Those actions included third-party tort suits brought by National Guard personnel and British military who provided force protection to KBRSI personnel and perimeter security around Qarmat Ali

respectively. The plaintiffs alleged that sodium dichromate contaminated the site and that they suffered injuries from exposure to the chemical between April and August 2003.

8. KBRSI timely notified USACE of the lawsuits as early as January 2009, and subsequently submitted a request to the USACE contracting officer ("CO") that the USACE directly participate in the lawsuits and/or assume direct responsibility for their defense as provided by the terms of the indemnification agreement.

9. KBRSI and the CO exchanged correspondence on the issue including a letter from the USACE dated November 18, 2011 denying KBRSI's request. The CO recited that "any litigation costs that [KBRSI] incurs . . . are not covered by the classified indemnity agreement," and declined KBRSI's "request that the USACE acknowledge that any recovery [by plaintiffs] will be covered by the classified immunity agreement and request [that] the Department of Justice . . . assume responsibility for defense of these suits."

10. This was an erroneous legal and factual analysis of the terms of the indemnification agreement by the CO and the USACE failed and refused to participate in, or assume direct responsibility for, defending KBRSI in the underlying tort litigations. USACE has also refused to indemnify KBRSI for the costs of defending against the various lawsuits.

11. KBRSI therefore files this Complaint regarding USACE's breach of contract and of the indemnification agreement.

## JURISDICTION

12. This Court has jurisdiction over this action pursuant to the CDA, 41 U.S.C. § 7104(b)(1), and 28 U.S.C. § 1491(a).

13. On November 18, 2011, USACE denied KBRSI's request for indemnification regarding the third-party claims.

14. KBRSI has timely appealed USACE's denial of its request.

**APPENDIX 1**

## STATEMENT OF THE CASE

A. **USACE'S Agreement to Indemnify KBRSI Under P.L. 85-804**

15. Because of the hazardous nature of the work to be performed by KBRSI under the RIO contract, as well as the wartime conditions and unknown circumstances that would surround such work, in early March 2003, representatives from KBRSI and USACE recognized the need for USACE to provide additional liability protection to KBRSI to supplement the provisions of FAR Clause 52.228-7, "Insurance—Liability to Third Persons," which had been incorporated by law into the RIO contract.

16. On March 3, 2003, prior to the award of the RIO contract and before the invasion began, KBRSI formally requested P.L. 85-804 indemnification coverage pursuant to FAR Clause 50.403-1 for the "unusually hazardous" risks that would be associated with KBRSI's performance of work under the RIO contract.

17. KBRSI's request outlined the dangers of the work to be performed, as well as the wartime circumstances that would make the work potentially even more hazardous. The request also noted that KBRSI would have no applicable insurance available to address third-party tort liabilities arising out of its work performed under the RIO contract in the Iraqi theater of operations.

18. KBRSI and USACE representatives extensively discussed the scope of the P.L. 85-804 coverage in March 2003 and reached an agreement shortly thereafter.

**APPENDIX 1**

### B. KBRSI's Request for Indemnification For Third-Party Claims

19. In response to KBRSI's initial request that the USACE participate in or assume responsibility for pending third-party injury claims against KBRSI that allegedly arose out of risks previously defined as "unusually hazardous" under the RIO contract, the USACE responded on April 6, 2011 and declined to participate directly in these lawsuits and/or assume direct responsibility for their defense.

20. Acknowledging that KBRSI operated under "less than ideal conditions," the CO nonetheless determined that "any litigation costs that [KBRSI] incurs as a result of this litigation are not covered by the indemnity agreement."

21. Despite its denial, the CO requested additional information from KBRSI such as copies of the underlying complaints and insurance-related information so that USACE could "evaluate any potential settlement and the risk of litigation."

22. In a June 9, 2011 letter, KBRSI provided the requested information to the CO to assist in USACE's further evaluation of KBRSI's indemnification request, again requesting that the USACE take an active role in the litigation.

23. After further consideration, the CO issued a November 18, 2011 letter denying KBRSI's request for indemnification of the third-party claims.

### C. The Government Caused or Contributed to the Alleged Exposure to Sodium Dichromate at Qarmat Ali

24. Under the terms of the contract, KBRSI could not begin work at Qarmat Ali or any other site until specifically directed by the military and only after the military had declared the site "benign" and free of environmental hazards.

25. Notwithstanding these contractual obligations, the U.S. military decided not to perform an initial environmental assessment at Qarmat Ali but nonetheless directed KBRSI to

5

APPENDIX 1

begin work there and assigned military personnel to provide force protection. As former Secretary of the Army Pete Geren explained to Congress in 2009, various exigencies of war made it "impracticable" for the military to conduct its contractually required environmental assessment at Qarmat Ali.

26. From April to June 2003, at least three different military personnel were aware of the potential contamination at Qarmat Ali. Nevertheless, the U.S. military, for its own purposes, directed KBRSI to proceed at the site without a complete environmental assessment and took no steps to warn the National Guard personnel or British military of any potential danger.

27. After conducting various tests on potentially exposed National Guard personnel and Department of Defense Civilians, the U.S. military concluded that the medical evaluations supported a low to negligible overall long-term health risk from any alleged exposure at the site.

## COUNT ONE – BREACH OF CONTRACT

28. KBRSI alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully set forth herein.

29. Pursuant to P.L. 85-804, as incorporated into the contract, the USACE agreed to indemnify KBRSI against claims caused by risks defined as "unusually hazardous" under the RIO contract.

30. KBRSI is entitled to indemnification by the government of all "[c]laims (including reasonable expenses of litigation or settlement) by third persons (including employees of the Contractor) for death; personal injury; or loss of, damage to, or loss of use of property." FAR Clause 52.250-1(b)(1).

31. Pursuant to P.L. 85-804 and FAR Clause 52.250-1, KBRSI submitted its request to the USACE for indemnification for claims being asserted by third persons for personal injury

APPENDIX 1

allegedly arising out of "unusually hazardous" risks associated with KBRSI's performance under the RIO contract.

32. On November 18, 2011, the USACE finally denied KBRSI's request that the government comply with its obligations under the indemnification agreement.

33. Based upon an erroneous legal and factual analysis of the terms of the indemnification agreement, USACE has refused to indemnify KBRSI for the costs of defending against the various third-party lawsuits and has refused to participate or assume direct responsibility in defending KBRSI in the underlying tort litigations.

34. The government's denial of indemnity constitutes a direct breach of the indemnification agreement.

35. The government also breached its implied duty to cooperate by failing to appear in the third-party tort litigation, through statements of interest or otherwise, to annunciate and protect the interests common to the United States and KBRSI.

36. The government's breach has damaged KBRSI. To date, KBRSI has incurred substantial legal fees, costs, and other related expenses in defending against the underlying tort suits in an amount in excess of fifteen million dollars. Such fees, costs, and other related expenses continue to be incurred, and it is possible that there may be monetary judgments in the future (e.g. arising out of the November 2, 2012 jury verdict in the *Bixby* case in the District of Oregon).

37. KBRSI is entitled to recover all such fees, costs, and other related expenses in connection with its defense of the various third-party claims arising from its work under the RIO contract, including these and other such fees, costs, expenses, and other monetary liabilities that may be incurred in the future.

APPENDIX 1

## PRAYER FOR RELIEF

WHEREFORE, KBRSI respectfully requests that the Court grant it the following relief:

A. That this Court grant KBRSI's request for indemnification because USACE's denial of KBRSI's request breached the contract and the indemnification agreement entered into pursuant to P.L. 85-804 and FAR Clause 52.250-1, and was otherwise contrary to law.

B. That this Court direct the government to indemnify KBRSI for all fees, costs, settlements, final judgments and all other damages resulting from such tort litigation.

C. That this Court award to KBRSI such other relief as the Court deems proper, including but not limited to interest, fees, and other related costs.

Dated: November 16, 2012

Respectfully submitted,

Raymond Biagini
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 496-7500
Facsimile: (202) 496-7756
rbiagini@mckennalong.com

*Attorney for Kellogg Brown & Root Services, Inc.*

OF COUNSEL:
Herbert Fenster
hfenster@mckennalong.com
McKenna Long & Aldridge LLP
1400 Wewatta Street, 7th Floor
Denver, Colorado 80202
Telephone: (303) 634-4000
Facsimile: (303) 634-4400

**APPENDIX 1**

Kurt Hamrock
khamrock@mckennalong.com
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC  20006
Telephone: (202) 496-7500
Facsimile: (202) 496-7756

APPENDIX 1