IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROCKY BIXBY, LAWRENCE ROBERTA,
SCOTT ASHBY, CHARLES ELLIS, MATTHEW
HADLEY, JESUS BRUNO, COLT CAMPREDON,
STEPHEN FOSTER, BYRON GREER, KELLY
HAFER, DENNIS JEWELL, STEPHEN
MUELLER, VITO PACHECO, JOHN RYDQUIST,
KEVIN STANGER, RONALD BJERKLUND,
ADANROLANDO GARCIA, BRIAN HEDIN,
CHARLES SEAMON, BERTHA HELMAN-SHUIT, MATT
KUHNEL, DENNIS ROSGEN, AARON
ST. CLAIR, KEVIN WILSON, JASON BLAIN,
JAMES BORJA, DEVON FIELDS,  LESLIE ING,
RICHARD LAWRENCE, JAY LOUISIANA,
 JAMES McGOWAN, DONALD YEARGIN, and
JASON ARNOLD,

                    Plaintiffs,

                                                    3:09-CV-632-PK

        v.                                          OPINION AND
                                                    ORDER

KBR, INC., KELLOGG, BROWN & ROOT SERVICE,
INC., KBR TECHNICAL SERVICES, INC.,
OVERSEAS ADMINISTRATION SERVICES, LTD.,
and SERVICE EMPLOYEES INTERNATIONAL, INC.,

                    Defendants.

PAPAK, Magistrate Judge:

        Plaintiffs Rocky Bixby, Lawrence Roberta, Scott Ashby, Charles Ellis, and Matthew

Hadley filed this action against defendants KBR, Inc., Kellogg, Brown & Root Service, Inc.,

Page 1 - OPINION AND ORDER

KBR Technical Services, Inc., Overseas Administration Services, Ltd., and Service Employees International, Inc. (collectively, the "KBR defendants"), on June 8, 2009.  On September 8, 2009, plaintiffs amended their complaint, adding Carlos Avalos, Jesus Bruno, Colt Campredon, Stephen Foster, Byron Greer, Kelly Hafer, Dennis Jewell, Stephen Mueller, Vito Pacheco, John Rydquist, and Kevin Stanger as additional plaintiffs.  Plaintiffs amended their pleading a second time on February 2, 2010, adding Ronald Bjerklund, Adanrolando Garcia, Brian Hedin, Lewis Martin, and Charles Seamon as additional plaintiffs.  On June 25, 2010, plaintiffs amended their complaint a third time, adding Randy Keiper, Matt Kuhnel, Dennis Rosgen, Aaron St. Clair, and Kevin Wilson as further additional plaintiffs.  On October 27, 2010, plaintiffs amended their complaint a fourth time, adding Jason Blain, James Borja, Devin Fields, Leslie Ing, Richard Lawrence, Jay Louisiana, James McGowan, and Donald Yeargin as further additional plaintiffs, and adding Halliburton Company and Halliburton Energy Services, Inc. (collectively, the "Halliburton defendants"), as additional defendants.  Plaintiffs amended their complaint a fifth time on January 10, 2011, adding as additional plaintiffs Jason Arnold, Thomas Barella, Daniel Grover, Christopher Wangelin, and Michael O'Rielly.  Plaintiffs voluntarily dismissed Barella as a plaintiff in this action on the following day, January 11, 2011, and voluntarily dismissed Grover as a plaintiff in this action on February 25, 2011.  On June 16, 2011, these chambers recommended that the court dismiss the plaintiffs' claims to the extent alleged against the Halliburton defendants for lack of personal jurisdiction, and on July 20, 2011, Judge Hernandez adopted that recommendation as his own opinion.  The parties stipulated to the dismissal of Avalos, Martin, and Wangelin as plaintiffs in this action, on December 16, 2011, and to the dismissal of O'Rielly as a plaintiff on April 4, 2012.

By and through their fifth amended complaint, plaintiffs alleged defendants' liability for negligence and for fraud arising out of plaintiffs' exposure to sodium dichromate and subsequent hexavalent chromium poisoning while stationed as Oregon National Guardsmen in Iraq and assigned to duty at the Qarmat Ali water plant in May-September 2003. From October 9, 2012, through November 2, 2012, trial was held in this action on the claims alleged in plaintiffs' fifth amended complaint on behalf of plaintiffs Arnold, Bixby, Bjerklund, Campredon, Ellis, Greer, Hadley, Hedin, Pacheco, Roberta, Seamon, and St. Clair. The jury resolved the claims in those plaintiffs' favor. The claims brought on behalf of all other plaintiffs remain at issue.

Effective December 21, 2012, plaintiffs amended their complaint a sixth time, substituting Bertha Helman-Shuit, personal representative of the estate of Randy Keiper, as a plaintiff in lieu of deceased plaintiff Keiper. The amendment otherwise effected no significant modification to plaintiffs' claims or to their allegations in support thereof.[1]

Now before the court is defendants' petition (#323) for award of certain attorney fees incurred by defendants over the course of litigating this action, by and through which defendants seek an award of fees and costs in the amount of $200,320.29. I have considered the motion and all of the pleadings and papers on file. For the reasons set forth below, defendants' petition is granted in part as set forth below.

## MATERIAL FACTS

By minute order (#189) dated May 31, 2011, I ordered plaintiffs to designate expert

---

[1] Plaintiffs' sixth amended complaint continues to list dismissed plaintiffs Avalos, Martin, Barella, Grover, Wangelin, and O'Rielly as plaintiffs, and continues to state allegations in support of the claims formerly brought by those dismissed plaintiffs. I disregard all such references and allegations as presumptively erroneous and unintentional.

witnesses by not later than June 10, 2011, and ordered defendants to designate their experts by not later than August 25, 2011. On June 7, 2011, plaintiffs produced to defendants the report (Carson's "June report") of their expert witness Dr. Arch Carson, a physician and toxicologist with expertise in industrial chemical exposure.

On September 30, 2011, defendants filed a motion for summary judgment as to the narrow issue of causation only. On October 11, 2011, plaintiffs requested additional time to respond to defendants' motion, without reference to any contemplated supplemental report by Carson. On October 13, 2011, I granted plaintiffs' email request by minute order (#214), resetting the deadline for plaintiffs' opposition to November 14, 2011.

On November 8, 2011, less than one week before their summary judgment opposition was due, plaintiffs provided to defendants a second report authored by Carson and signed by him on November 7, 2011 (Carson's "November report"). Plaintiffs filed their opposition to defendants' summary judgment motion on November 14, 2011, just seven days after Carson signed his November report. Plaintiffs' argument as to causation relied heavily, but not exclusively, on Carson's November report, and on Carson's declaration of November 7, 2011 (Carson's "November declaration"), which was largely duplicative of his November report. In addition, plaintiffs relied in part on Carson's June report, as well as other materials.

On November 30, 2011, defendants moved pursuant to Federal Civil Procedure Rule 37(c) for imposition of sanctions in connection with plaintiffs' untimely provision of Carson's November report, seeking in particular an order to exclude Carson's November report and November declaration from consideration. I heard oral argument in connection with defendants' motion for exclusion sanctions on December 16, 2011. On December 30, 2011, I issued an

Page 4 - OPINION AND ORDER

Opinion and Order (#244) granting defendants' motion in part and denying it in part, specifically ordering in relevant part that "all those fees and costs reasonably incurred by defendants in consequence of plaintiffs' untimely proffer of the November report shall be paid by plaintiffs." In connection with and in clarification of that order I observed that:

> The fees and costs to be shifted to plaintiffs under this order shall include all those incurred in connection with defendants' motion to exclude, and may additionally include some or all of defendants' fees and costs incurred in connection with defendants' now-pending motion for summary judgment, but shall not include any fees or costs incurred in connection with discovery or expert witnesses necessary to respond to the November report except to the extent defendants establish that such fees or costs would not have been incurred had the November report been timely produced.

In connection with the possibility that defendants might be entitled to award of some fees incurred in connection with their summary judgment motion as to the narrow issue of causation, I further clarified my order as follows:

> In their reply memorandum in support of their now-pending motion for summary judgment, defendants expressly argue that their motion is well-taken and should be granted even if the court considers the November opinion. If defendants are to be taken at their word, their motion would have been filed in comparable form even had the November report been timely produced. Nevertheless, because it seems possible if not likely that defendants' causation motion would have differed in some degree from the motion actually filed had defendants been able to consider the opinions expressed in the November report prior to filing their dispositive motion, I do not foreclose the possibility that defendants may be able to establish that some costs or fees incurred in connection with the summary judgment motion would not have been incurred had the November report been offered in compliance with plaintiffs' expert disclosure deadline.

I expressly directed the defendants "to defer filing any petition for Rule 37(c) fees in connection with [my] order until after final judgment has issued in this action."

Subsequently, on January 27, 2012, in the course of oral argument in connection with defendants' motion for summary judgment as to the narrow issue of causation, counsel for

defendants requested relief from my direction that defendants defer filing their petition for fees, expressly taking the position that the fee question was already ripe for decision at that time. On the basis of defendants' advice and request, I orally modified my order to permit defendants to file their fee petition immediately, with the proviso that I would not decide the question of when it would be appropriate to consider the petition's merits until after I had analyzed defendants' arguments in support thereof. Defendants filed their petition on April 30, 2012.[2]

## ANALYSIS

By and through their petition, defendants seek award of fees and costs in the total amount of $200,320.29. Specifically, defendants seek $93,756.50 in fees and $3,473.29 in costs in connection with litigating their Federal Civil Procedure Rule 37(c) motion for imposition of sanctions, $64,515.75 in fees in connection with litigating their motion for summary judgment of September 30, 2011, and $37,552.00 in fees and $391.25 in costs in connection with litigating this fee petition.[3]

## I.    Defendants' Entitlement to Award of Attorney Fees and Costs

As indicated above, by Opinion and Order (#244) dated December 30, 2011, I found that

---

[2] Footnote 1 to defendants' petition indicates that defendants' "fee petition is not complete and does not purport to set forth all of the fees and costs awarded to defendants by this Court in its Opinion and Order [of December 30, 2011]." Defendants purported to "reserve the right to later assert a claim for any the remainder of the costs and fees, and other relief, awarded by the Opinion and Order." Notwithstanding the foregoing, defendants subsequently advised the court via email message dated December 3, 2012, that they do not intend to file any such subsequent or supplemental claim for additional fees or costs under the Opinion and Order of December 30, 2011, and that the petition as originally filed is complete and ripe for decision.

[3] Although defendants petition the court for an award in the amount of $200,320.29, I find that the fees and costs totaled in the documents supporting their fee petition come in fact to $199,688.79. I am unable to account for the discrepancy of $631.50.

defendants are entitled to award of certain reasonably incurred attorney fees. Although plaintiffs

nevertheless challenge defendants' entitlement to such an award, specifically on the grounds that

defendants failed to confer with the plaintiffs before filing their petition, defendants filed their

petition at the direction of the court and with advance notice to plaintiffs. Moreover, there is no

indication anywhere in the record that defendants' failure to conduct more formal conferral before

filing their petition resulted (or could have resulted) in any prejudice to plaintiffs. Similarly,

although plaintiffs appear further to challenge defendants' entitlement to such an award on the

grounds that defendants engaged in conduct similar to the conduct for which the fee sanction

issued against the plaintiffs, even if the accuracy of plaintiffs' characterization of defendants'

conduct were established, such conduct would not give rise to grounds for reconsideration of my

order of December 30, 2011. In consequence, defendants are entitled to award of their

reasonably incurred attorneys fees and costs that they would not have incurred had Carson's

November report been timely offered.

## II.    Attorney Fees

### A.    The Lodestar

Determination of a reasonable attorney's fee begins with the "lodestar," which is the

"number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-64 (1986).

In connection with their Rule 37(c) motion for sanctions, defendants relied on the services of

attorneys Joe G. Conley, Jordan W. Connors, Jeffrey S. Eden, Geoffrey L. Harrison, Chanler A.

Langham, Andrew J. Lee, and Trey Peacock, and of paralegals/legal assistants Tammy D.

Armentrout and Cynthia Obuz. In connection with that motion, defendants specifically request

compensation for 4.8 hours of attorney Conley's time at an hourly rate of $300, 45.5 hours of attorney Connors' time at an hourly rate of $300, 14.5 hours of attorney Eden's time at an hourly rate of $375, 87.85 hours of attorney Harrison's time at an hourly rate of $750, 9.9 hours of attorney Langham's time at an hourly rate of $400, 1.2 hours of attorney Lee's time at an hourly rate of $320, 0.5 hours of attorney Peacock's time at an hourly rate of $650, 17.35 hours of paralegal Armentrout's time at an hourly rate of $140, and 3.5 hours of legal assistant Obuz' time at an hourly rate of $250, or a subtotal of $93,756.50.

In connection with litigating their summary judgment motion of September 30, 2011, defendants relied on the services of attorneys Vineet Bhatia, Conley, Connors, Eden, Harrison, Langham, Lee, and Peacock, and of legal assistant Obuz. In connection with that motion, defendants specifically request compensation for 3.5 hours of attorney Bhatia's time at an hourly rate of $750, 1.1 hours of attorney Conley's time at an hourly rate of $300, 89.3 hours of attorney Connors' time at an hourly rate of $300, 7.1 hours of attorney Eden's time at an hourly rate of $375 (subject to a voluntary write-down in the amount of $393.75), 69.6 hours of attorney Harrison's time at an hourly rate of $750, 9.0 hours of attorney Langham's time at an hourly rate of $400, 6.1 hours of attorney Lee's time at an hourly rate of $320, 1.3 hours of attorney Peacock's time at an hourly rate of $650, and 17.0 hours of legal assistant Obuz' time at an hourly rate of $250, or a provisional subtotal of $94,860.75. That subtotal is subject to a voluntary write-down of $30,345 (in connection with time expenditures of attorneys Bhatia, Conley, Connors, Harrison, Langham, and Peacock and of legal assistant Obuz), resulting in a final subtotal of fees requested in connection with the summary judgment motion of $64,515.75.

In connection with litigating the fee petition now before the court, defendants relied on

the services of attorneys Bhatia, William B. Crow, Eden, Christiane R. Fife, Harrison, and Langham, and of paralegal Armentrout. In connection with their petition, defendants specifically request compensation for 9.0 hours of attorney Bhatia's time at an hourly rate of $750, 3.0 hours of attorney Crow's time at an hourly rate of $400, 8.2 hours of attorney Eden's time at an hourly rate of $400, 22.4 hours of attorney Fife's time at an hourly rate of $280, an additional 37.0 hours of attorney Fife's time at an hourly rate of $335, 9.15 hours of attorney Harrison's time at an hourly rate of $750, 1.8 hours of attorney Langham's time at an hourly rate of $400, and 0.5 hours of paralegal Armentrout's time at an hourly rate of $145, or a subtotal of $37,552.00.

### 1.    Hours Reasonably Expended

Plaintiffs challenge the reasonableness of defendants' claimed time expenditures, characterizing the time billed by defense counsel on the subject matters as "excessive" in general, and all of the time billed on defendants' summary judgment motion of September 30, 2011, as "unrecoverable." In addition to plaintiffs' articulated objections, the court is obliged to scrutinize defendants' fee petition independently to determine its reasonableness. *See, e.g., Gates v. Deukmejian*, 987 F.2d 1392, 1400-1401 (9th Cir. 1992).

It is the fee claimant's burden to demonstrate that the number of hours spent was "reasonably necessary" to the litigation and that counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("plaintiffs bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their . . . claims); *Chalmers v. Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986) (district court determines numbers of hours

Page 9 - OPINION AND ORDER

reasonably expended in furtherance of the successful aspects of a litigation).  Moreover, it is likewise the fee claimant's burden to "submit evidence supporting the hours worked . . . .  Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433; *see also, e.g., Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-946 (9th Cir. 2007) (same).

For the reasons set forth below, I find that the evidence submitted by the parties supports an award of compensation for 1.6 hours of Conley's time, 15.17 hours of Connors' time, 6.90 hours of Eden's time, 21.2 hours of Harrison's time, 3.3 hours of Langham's time, 0.4 hours of Lee's time, 0.17 hours of Peacock's time, 1.12 hours of Armentrout's time, and 1.17 hours of Obuz' time expended in connection with litigating defendants' Rule 37(c) motion, for no time expended in connection with defendants' summary judgment motion, and for 9.0 hours of Bhatia's time, 3.0 hours of Crow's time, 8.2 hours of Eden's time, 47.7 hours of Fife's time, 9.15 hours of Harrison's time, 1.8 hours of Langham's time, and 10.45 hours of Armentrout's time expended in connection with preparing defendants' fee petition.

### a.    Hours Expended in Litigation of the Federal Civil Procedure Rule 37(c) Motion for Sanctions

#### i.    Preliminary Adjustment

Preliminarily, I note that the time expenditures billed by paralegal Armentrout on January 4 and 5, 2012, characterized by defendants as incurred in connection with defendants' Rule 37(c) motion, are more properly characterized as incurred in connection with the fee petition now before the court.  I thus exclude those billing entries (reflecting 9.95 hours of paralegal Armentrout's time) from consideration in connection with litigation of the Rule 37(c) motion,

and include them instead for consideration in connection with preparation of this fee petition.

### ii.    Excessive Time Expenditures

According to the time records submitted by the defendants in support of their fee petition (as adjusted following exclusion of Armentrout's billing entries of January 4 and 5, 2012. as discussed above), defendants' counsel spent a total of 175.15 hours litigating their Rule 37(c) motion. Of these hours, 149.45 were spent in conducting legal research and preparing defendants' briefing, 17.85 hours were spent in preparing for oral argument on the motion, and 7.85 hours were spent in preparing for and/or attending oral argument.

I find these time expenditures to be grossly excessive to the task of litigating a Rule 37(c) motion to exclude. Defendants' task in litigating the motion was threefold: to establish the untimeliness of plaintiffs' proffer of Carson's November report and November declaration (which was not plausibly contested in any event), to establish that Carson's November report was a new expert report rather than a supplement of his June report (which presented no complex or challenging issues, but rather a simple comparison of the contents of the two reports), and to persuade the court to exercise its discretion to impose the sanction favored by the defendants (which required neither complex legal research nor complex legal reasoning, and in which defendants were in any event unsuccessful). Plaintiffs argue, with some justification, that these tasks could have been performed by attorneys of ordinary competence in not more than 20 hours. I find that it is unreasonable in this context for defendants to seek to tax plaintiffs with fees calculated on the basis of such excessive time expenditures. Because I further find that defendants' subject time expenditures were excessive under the circumstances by a factor of at least three, I find that it is reasonable for purposes of this fee award to reduce those of defense

counsel's time expenditures that may properly be included in the lodestar calculation (with the exception of time spent attending oral argument) by two thirds, across the board.

### iii.   Unrelated Tasks

Among the legal services provided by their counsel for which defendants now seek compensation from plaintiffs are services provided by paralegal Armentrout on November 29, 2011, including time spent by Armentrout on that day engaged in "Follow up on discovery requests." It is unreasonable for defendants to seek compensation in connection with such time expenditures in light of the unrelatedness of the discovery-related services to defendants' Rule 37(c) motion. Because Armentrout listed two tasks in that time entry but did not specify how much time was expended on each, I assume that Armentrout spent 50% of the recorded time on each task. In consequence, I exclude from the lodestar calculation 0.75 of the 1.5 hours recorded by Armentrout on November 29, 2011.

### iv.   Block Billing

The courts of the District of Oregon have for many years acknowledged the problem of "block billing" attorney time expenditures for fee petition purposes. *See, e.g., Frevach Land Co. v. Multnomah County*, Case No. CV-99-1295-HU, 2001 US Dist LEXIS 22255, *29-34 (D. Or. Dec. 18, 2001). For purposes of fee petitions filed in the District of Oregon, block billing is defined as any time entry of three or more hours either containing four or more tasks, or in the alternative containing two or more tasks, where at least one of the tasks could have taken anywhere from a small to a substantial amount of time. *See, e.g., Hells Canyon Pres. Council v. United States Forest Serv.*, Case No. CV-00-755-HU, 2004 US Dist LEXIS 17113, *21-22 (D. Or. Aug. 18, 2004); *Taylor v. Albina Cmty. Bank*, Case No. CV-00-1089-ST, 2002 US Dist

Page 12 - OPINION AND ORDER

LEXIS 25580, *10-11 (D. Or. Oct. 2, 2002); *Frevach*, 2001 US Dist LEXIS 22255 at *34.

Notwithstanding the foregoing, closely related but discretely identified block-billed tasks will be

aggregated into a single task for purposes of determining whether the District of Oregon's

prohibition against block billing has been violated. *See, e.g., Oberdorfer v. Glickman*, Case No.

CV-98-1588-HU, 2001 US Dist LEXIS 14677, *14, n. 2 (D. Or. Sep. 14, 2001). Because the

practice of block billing systematically impairs the court's ability to ascertain the reasonableness

of an attorney's time expenditures, the courts of the District of Oregon have of long standing

adopted the practice of eliminating block-billed time entries in their entirety from the lodestar

calculation. *See, e.g., Hells Canyon*, 2004 US Dist LEXIS 17113 at *21-22. The facts of this

case present no compelling grounds for deviating from that practice here.

In consequence, the following block-billed time entries submitted by the defendants will

be excluded from the lodestar calculation: Armentrout's time entry of November 15, 2011

(totaling 3.3 hours), Harrison's time entry of December 12, 2011 (totaling 6.75 hours), Harrison's

time entry of December 15, 2011 (totaling 12.75 hours).

### v.   Duplicative Time Entries

The courts of this district routinely exclude from the lodestar calculation any time entries

indicating that more than one lawyer performed the same task. *See, e.g., Taylor*, 2002 US Dist

LEXIS 25580 at *11-12. Specifically, the courts of this district have held that:

> A party is certainly free to hire and pay as many lawyers as it wishes, but cannot
> expect to shift the cost of any redundancies to its opponent. Instead it can only
> shift the reasonable attorney fee expended. A fee that is "not excessive" may still
> be unreasonable. When attorneys hold a telephone or personal conference, good
> "billing judgment" mandates that only one attorney should bill that conference to
> the client, not both attorneys. The same good "billing judgment" requires
> attorneys not to bill for more than two attorneys to review pleadings or to attend

oral argument.

*Nat'l Warranty Ins. Co. v. Greenfield*, No. CV-97-1654-ST, 2001 US Dist LEXIS 7763, *14 (D. Or. Feb. 8, 2001). Scrutiny of the time records submitted in support of defendants' fee petition establishes that defendants seek compensation for the attendance of both Eden and Harrison at the hearing of December 16, 2011. Because it is always inappropriate to tax an opposing party with such duplicative expenditures of time,[4] I exclude from the lodestar calculation the hours expended in connection with preparing for and attending the hearing on December 16, 2011, by the timekeeper with the lower reasonable hourly rate, in this case, attorney Harrison (*see infra*), totaling 4.75 hours.

### b.      Hours Expended in Litigation of the Summary Judgment Motion of September 30, 2011

As noted above, it is defendants' burden to establish through argument and evidence that the time expended in connection with litigating the summary judgment motion of September 30, 2011, in connection with which defendants now seek compensation would not have been expended but for the dilatoriness of plaintiffs' proffer of Carson's November report and November declaration. As argued by the plaintiffs, defendants have not met that burden. First, defendants fail to identify with particularity any specific argument made in the opening brief in support of the summary judgment motion that would have been valid had plaintiffs relied in opposition solely on Carson's June report but was rendered unavailing in consequence of

---

[4] As noted, the inappropriateness of the request for compensation in connection with duplicative time expenditures inheres not in defendants' election to be represented by more than one attorney at the hearing – indeed, where a party is represented by both local and *pro hac vice* counsel, it is entirely appropriate for both local and out-of-state counsel to attend the same hearing on behalf of their client – but rather in the effort to shift the marginal cost of that election to the plaintiffs. *See Taylor*, 2002 US Dist LEXIS 25580 at *11-12.

Page 14 - OPINION AND ORDER

plaintiffs' reliance on Carson's November report.  Second, and perhaps more critically, as plaintiffs note, in their reply in support of their summary judgment motion – filed after this court had ruled Carson's November report and November declaration admissible – defendants continued to espouse all of the arguments articulated in their moving papers.  Moreover, defendants continued to espouse those same arguments by and through their supplemental supporting memorandum in support of that same motion, filed May 4, 2012, and continued to espouse virtually all of the same arguments in their memorandum in support of their motion for entry of judgment pursuant to Federal Civil Procedure Rule 50(b), filed November 30, 2012.  In consequence of defendants' failure to meet their burden under my Opinion and Order dated December 30, 2011, I find that it would be unreasonable to tax plaintiffs with any attorney fees incurred in connection with defendants' summary judgment motion of September 30, 2011.

> **c.**     **Hours Expended in Litigation of Defendants' Fee Petition**

Analysis of the time entries reflecting tasks relating to the preparation of defendants' fee petition indicates that defendants seek compensation for 11.7 hours expended by attorney Fife between January 30 and February 1, 2012 (3.2 hours on January 30, 5.4 hours in two separate time entries on January 31, and 3.1 hours on February 1) in connection with researching the question whether this court's attorney fee sanction should issue against plaintiffs or specifically against plaintiffs' counsel.  This question being immaterial to defendants' entitlement to award of fees or to the calculation of the amount of such an award, it would be inappropriate to tax plaintiffs with any of the time expended in connection with the tasks recorded in Fife's time records of those dates.  Those 11.7 hours are therefore excluded from the lodestar calculation.

Analysis of defendants' time records supporting their petition for fees incurred in

Page 15 - OPINION AND ORDER

connection with preparing the fee petition now before the court reveals no additional time expenditures that should be excluded from the lodestar calculation by reason of reflecting clerical or administrative tasks, inadequately specified tasks, or redundant or duplicative, or excessive expenditures of time, and no instances of impermissible block billing.

### 2.    Reasonable Rate

It is well settled within the Ninth Circuit and in this District that:

> The prevailing market rate in the community is indicative of a reasonable hourly rate. . . . The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.

*Jordan v. Multnomah County*, 815 F.2d 1258, 1262-1263 (9th Cir. 1987), *citing Blum v. Stenson*, 465 U.S. 886, 895-897, 895 n. 11 (U.S. 1984). In connection with legal services provided by attorneys Bhatia, Conley, Connors, Harrison, Langham, and Peacock (collectively, the "Susman attorneys"), defendants argue that the reasonableness of those attorneys' hourly rates should not be measured by reference to any market rate prevailing in this district, where the litigation in question took place, but rather by reference to the rates actually charged by the Susman attorneys to their clients. Defendants argue that such a metric would be appropriate here because defendants' election to hire Houston attorneys rather than Portland (or other Oregon) attorneys as primary counsel in this matter was reasonable, and because the Susman attorneys' actual hourly rates are reasonable within the Houston legal community.

I agree with defendants that, under some circumstances and for some purposes, it may be appropriate to assess the reasonableness of attorney fees by reference to market rates prevailing outside the community within which a given litigation takes place. The fee petition now before

the court does not, however, present any such circumstances. Here, defendants had no contractual entitlement to tax plaintiffs or plaintiffs' counsel with their fees, but rather were awarded their reasonably incurred fees as a sanction for plaintiffs' dilatory proffer of an expert report. The happenstance that plaintiffs' party-opponents are represented by out-of-state primary counsel did not of itself render the dilatoriness of plaintiffs' proffer more egregious than it would have been had all parties' counsel been local. In consequence, it would be unreasonable to tax plaintiffs or their counsel with fees calculated on the basis of rates higher than those prevailing in the local legal community. I therefore decline defendants' invitation to award fees for services provided by the Susman attorneys at rates in excess of those prevailing in this district.[5]

I take judicial notice that the Oregon State Bar 2012 Economic Survey provides information as to rates actually charged by Oregon attorneys in 2011, the year in which most of the legal services at issue here were provided. Moreover, because the legal issues raised by plaintiffs' untimely proffer of Carson's November report and November declaration were not particularly complex or challenging, I find that defendants may reasonably tax plaintiffs' counsel with their reasonably incurred attorney fees calculated at the median hourly rates set forth in the 2012 Economic Survey for Portland-area attorneys engaged in private practice, as broken down by years of practitioner experience. Accordingly, I find that defendants' attorneys' reasonable time expenditures may reasonably be compensated for purposes of the fee petition now before

---

[5] This discretionary decision should not be interpreted as generally applicable to the reasonableness of the hourly rates customarily charged by the Susman attorneys, of the hourly rates defendants have paid or are currently paying for legal services provided by those attorneys, or of the hourly rates at which defendants may seek reimbursement from any third party under a contractual obligation to undertake defendants' defense or otherwise under an obligation to reimburse defendants for their legal expenses incurred in the course of this litigation.

the court at the following rates:[6]

| Attorney | Years Experience[7] | Hourly Rate |
|---|---|---|
| Bhatia | 21 | $333 |
| Conley | 3 | $175 |
| Connors | 3 | $175 |
| Crow | 50 | $350 |
| Eden | 25 | $333 |
| Fife | 7 | $250 |
| Harrison | 19 | $315 |
| Langham | 7 | $250 |
| Lee | 9 | $250 |
| Peacock | 21 | $333 |

I further find that time expenditures by legal assistants and/or paralegals may reasonably be compensated for purposes of the fee petition now before the court at an hourly rate of $100.

### 3.    Calculation and Adjustment of the Lodestar Figure

#### a.    Fees for Litigation

The product of the 1.6 hours reasonably expended by Conley in connection with litigating

---

[6] In determining the reasonable rates set forth herein, I "smoothed out" an aberration in the 2012 Economic Survey results, either absent or present to a much less significant extent in the data collected by previous Oregon State Bar economic surveys, according to which the median rate charged in 2011 by attorneys (like Harrison) with 16-20 years of experience was $250, the same rate charged by attorneys in the same year with 7-9 years of experience, and a lower rate than that charged by attorneys with 10-12 or 13-15 years of experience.

[7] Years of experience are calculated as of the date the legal services are provided, and not as of the date the fee petition was filed.

defendants' Rule 37(c) motion and his reasonable hourly rate of $175 is $280.00, the product of the 15.17 hours reasonably expended by Connors in connection with litigating defendants' Rule 37(c) motion and his reasonable hourly rate of $175 is $2,654.17, the product of the 6.90 hours reasonably expended by Eden in connection with litigating defendants' Rule 37(c) motion and his reasonable hourly rate of $333 is $2,297.70, the product of the 21.2 hours reasonably expended by Harrison in connection with litigating defendants' Rule 37(c) motion and his reasonable hourly rate of $315 is $6,678.00, the product of the 3.3 hours reasonably expended by Langham in connection with litigating defendants' Rule 37(c) motion and his reasonable hourly rate of $250 is $825.00, the product of the 0.4 hours reasonably expended by Lee in connection with litigating defendants' Rule 37(c) motion and his reasonable hourly rate of $250 is $100.00, the product of the 0.17 hours reasonably expended by Peacock in connection with litigating defendants' Rule 37(c) motion and his reasonable hourly rate of $333 is $55.50, the product of the 1.12 hours reasonably expended by Armentrout in connection with litigating defendants' Rule 37(c) motion and her reasonable hourly rate of $100 is $111.67, and the product of the 1.17 hours reasonably expended by Obuz in connection with litigating defendants' Rule 37(c) motion and her reasonable hourly rate of $100 is $116.67.  Thus, the lodestar calculation results in a total of $13,118.70 in attorney fees reasonably incurred in connection with litigating the merits of defendants' Rule 37(c) motion.

### b.    Fees-on-Fees

The product of the 9.0 hours reasonably expended by Bhatia in connection with preparing defendants' fee petition and his reasonable hourly rate of $333 is $2,997.00, the product of the 3.0 hours reasonably expended by Crow in connection with preparing defendants' fee petition and

his reasonable hourly rate of $350 is $1,050.00, the product of the 8.2 hours reasonably expended by Eden in connection with preparing defendants' fee petition and his reasonable hourly rate of $333 is $2,730.60, the product of the 47.7 hours reasonably expended by Fife in connection with preparing defendants' fee petition and her reasonable hourly rate of $250 is $11,925.00, the product of the 9.15 hours reasonably expended by Harrison in connection with preparing defendants' fee petition and his reasonable hourly rate of $315 is $2,882.25, the product of the 1.8 hours reasonably expended by Langham in connection with preparing defendants' fee petition and his reasonable hourly rate of $250 is $450.00, and the product of the 10.45 hours reasonably expended by Armentrout in connection with preparing defendants' fee petition and her reasonable hourly rate of $100 is $1,045.00. Thus, the lodestar calculation results in a total of $23,079.85 in attorney fees reasonably incurred in connection with preparing the fee petition now before the court.

The Ninth Circuit has approved arithmetic reduction of an award of "fees-on-fees" by the ratio of the fees actually awarded in the underlying fee dispute to the amount therein requested. *See, e.g., Thompson v. Gomez*, 45 F.3d 1365, 1366-1368 (9th Cir. 1995). I see no reason to deviate from this reasonable procedure, and find that the lodestar figure for fees-on-fees should be reduced by the ratio of the lodestar figure calculated for merits litigation fees to the amount of fees requested therefor in defendants fee petition. Defendants asserted an entitlement to an award of $158,272.25 in compensation for attorney fees incurred in merits litigation fees, whereas the lodestar calculation yields an appropriate award of $13,118.70, or approximately 8.29% of the amount requested. I find, therefore, that the lodestar figure for fees-on-fees should be reduced by a factor of 8.29% to $1,913.02.

c.    **Adjustment**

It is the fee claimant's burden to prove the reasonableness of the lodestar amount. *See Pennsylvania*, 478 U.S. at 563-64. The factors that may properly be considered in determining and evaluating the lodestar figure include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See, e.g., Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir. 1975). Only those factors which are applicable need be addressed. *See, e.g., Sapper v. Lenco Blade, Inc.*, 704 F.2d 1069, 1073 (9th Cir. 1983).

It is within the discretion of this court to adjust the lodestar figure either: (1) downward if the plaintiff has achieved only partial or limited success or if the fee is otherwise unreasonable, *Hensley*, 461 U.S. at 435-36 (1983); or (2) upward in "rare" and "exceptional" cases, *Pennsylvania*, 478 U.S. at 565. The presumption, however, is that the lodestar figure represents a reasonable fee. *See Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987).

I do not find that any adjustment of the lodestar figure is warranted here. I therefore find that defendants are entitled to award of their reasonably incurred attorney fees in the lodestar amounts provided above, specifically $13,118.70 and $1,913.02, resulting in a total fee award of $15,031.72. I specifically find that such amount will serve adequately to sanction plaintffs'

counsel for the dilatoriness of their proffer of Carson's November report and November declaration, and that the purposes of my order resolving defendants' motion for Federal Civil Procedure Rule 37(c) sanctions would not be better served by an award of fees in any greater amount.

III.   **Costs**

Defendants claim a total of $3,864.54 in costs they characterize as compensable under my order dated December 30, 2011. Specifically, defendants claim $693.21 in computer-aided legal research costs and $2,780.08 in travel expenses incurred in connection with litigating their Rule 37(c) motion, and $391.25 in computer-aided legal research costs incurred in connection with preparing their fee petition. The courts of this district generally disallow the costs of computer-aided legal research, on various theories, including that there are no statutory provisions specifically enumerating computer research as a compensable cost, and that the costs of such research should be considered overhead, to be reflected in an attorney's hourly rate. See, e.g., *First Interstate Bank of Or. v. United States*, Case No. 94-917-HA, 1995 US Dist LEXIS 8554, *4-5 (D. Or. Jun. 3, 1995). Defendants are therefore awarded their costs in the amount of $2,780.08.

## CONCLUSION

For the reasons set forth above, defendants' petition (#323) for attorney fees and costs is granted in part, and defendants are awarded their attorney fees in the amount of $15,031.72 and their costs in the amount of $2,780.08, for a total award of $17,811.80.

Such award issues against plaintiffs' counsel rather than against plaintiffs themselves, specifically against plaintiffs' counsel of record as of November 7, 2011. Such award shall be

due and owing by plaintiffs' counsel (so defined) by not later than the date 30 days following

entry of final judgment in these proceedings or the date 30 days following resolution of the final

appeal arising out of these proceedings, if any such appeal is filed, whichever occurs later.

Dated this 12th day of February, 2013.

Honorable Paul Papak
United States Magistrate Judge